**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | NO. 3:02CR00264 (AWT) |
| v. | : | |
| | : | |
| WALTER A. FORBES and | : | |
| E. KIRK SHELTON, | : | |
| | : | |
| Defendants. | : | NOVEMBER 2, 2004 |

**ERNST & YOUNG'S REPLY MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR LEAVE OF COURT TO CONDUCT JUROR INTERVIEWS**

Ernst & Young LLP ("E&Y") respectfully submits this reply memorandum in further support of its motion for leave of Court to conduct juror interviews following the conclusion of the ongoing criminal trial of Defendants Walter A. Forbes and E. Kirk Shelton.

**PRELIMINARY STATEMENT**

The United States Attorney's Office (the "Government") opposes E&Y's request for leave of Court to conduct juror interviews because, according to the Government, E&Y's request will subject jurors to unwarranted harassment and undermine the finality of the jury's verdict. Nothing could be further from the truth. E&Y simply would like to talk with any jurors who are amenable to talking with E&Y. This request will not lead to the harassment of jurors – since under no circumstances would E&Y contact any juror who at any stage declines to participate, and any interviews could be conducted in strict compliance with any procedures that this Court might require. In addition, E&Y (a non-party) will not seek to disturb the jury's verdict, and will not ask any questions relating to the jury's deliberations, discussions, or votes. Finally, E&Y seeks these limited interviews for the important purpose of streamlining and shortening what could otherwise be a particularly lengthy civil trial.

The "HFS Parties" have filed an opposition asking the Court to deny E&Y's request for juror interviews, or, in the alternative, to grant permission to conduct their own juror interviews. The HFS Parties oppose E&Y's request based on the same "good cause" argument asserted by the Government. The HFS Parties also contend that E&Y does not have standing to conduct juror interviews pursuant to Local Rule 83.5(1). Both of these arguments fail. E&Y has demonstrated "good cause." As Local Rule 83.5(1) bars all post-verdict interviews without leave of court, including those by non-parties such as E&Y, E&Y has standing to seek leave of court to conduct such interviews.

Finally, Cendant Corporation ("Cendant") has filed a "response memorandum" that neither endorses nor opposes E&Y's motion. Rather, Cendant also seeks permission to conduct juror interviews. E&Y does not oppose the HFS Parties' or Cendant's request for juror interviews.

Accordingly, as set forth in E&Y's opening brief and below, this Court should grant E&Y's request to conduct juror interviews following the verdict in this case.

## ARGUMENT

**A.    E&Y Has Demonstrated Good Cause.**

The Government argues (at 3-5) and the HFS Parties agree (at 2-3) that E&Y has failed to advance a compelling reason to interview jurors. That is simply incorrect.

The Government contends (at 5) that E&Y fails to satisfy the "good cause" requirement of Local Rule 83.5(1) because E&Y "seeks to conduct a wide-ranging inquiry based on nothing more than a desire to gain information . . . [that] is not necessary" for the related civil litigation. But the reality here is that E&Y seeks only to conduct limited, voluntary interviews to obtain information that will assist in streamlining and shortening a complex civil trial. The limited

2

information that E&Y seeks to obtain would aid E&Y in creating a more simplified and precise presentation of evidence.**1**

The Government contends (at 3), and the HFS Parties argue similarly (at 2), that juror interviews are generally limited "to cases in which there is 'clear and incontrovertible evidence' of juror misconduct, juror incompetence, or improper influences upon the verdict." In stark contrast to the situation presented by E&Y's motion, this standard comes from cases where parties seek compulsory interviews or evidentiary hearings as part of their efforts to overturn an adverse verdict.[2] Those concerns are not at issue here, since E&Y is not seeking to disturb any verdict.

Similarly, E&Y is not seeking to intrude on the privacy of unwilling jurors. In *King* v. *United States*, 576 F.2d 432 (2d Cir. 1978), a case cited by the Government (at 3), the Second Circuit upheld the district court's refusal to grant the defendant an evidentiary hearing to question jurors about whether they had learned of negative news reports about the defendant during deliberations. The Second Circuit explained that granting the defendant's request would lead to "a deluge of post-verdict applications mostly without real merit," thereby causing harassment to jurors and potentially disturbing the certainty of otherwise valid verdicts. *Id.* at 438. Here, of course, those concerns do not exist, since E&Y does not seek to compel jurors to

---

1    The Government speculates (at 5-6 n.1) that E&Y can easily obtain the information it seeks by conducting a "focus group" of persons hired off the street. A focus group, however, is not a viable substitute for juror interviews and would not yield the information sought by E&Y. The jurors (unlike a focus group) are ideally situated to provide the precise insight required to simplify and streamline the civil trial – as they listened closely to the relevant witnesses and evidence during the actual trial. In addition, E&Y lacks much of the needed materials to conduct a focus group because the Government obtained a stay preventing E&Y from deposing many of the key witnesses.

2    *See, e.g., United States v. Davila*, 704 F.2d 749, 754 (5th Cir. 1983) (describing the "principal purpose" of a local rule similar to Local Rule 83.5(1) as "the prevention of fishing expeditions in search of information with which to impeach jury verdicts") (cited by the Government at 1-2); *Economou v. Little*, 850 F. Supp. 849, 853, (N.D. Cal. 1994) (holding that defendants who "requested leave to interview jurors for the purpose of discovering possible grounds for a motion for new trial" were not entitled to a post-verdict into the jury's deliberations) (cited by the HFS Parties at 2).

3

participate in the interviews and does not seek to overturn an adverse verdict.

Likewise, the privacy concerns articulated in *Daniel v. Jones*, 39 F. Supp.2d 635 (E.D. Va. 1999) are not triggered by E&Y's request. (Government's Opposition at 3-5.) In *Daniel*, the court denied a motion for leave to interview jurors filed by a physician who received an adverse medical malpractice verdict. *Id.* at 637. The court reasoned that jurors earn "the right to return to their normal lives without fear or concern of attorneys . . . knocking on their door or calling them at home in the evening to question them about the whys and wherefores of their respective verdicts." *Id.* at 637-38. Here, there will be no intrusion upon the jurors because E&Y will not contact any juror who at any stage declines to be interviewed, and will conduct all interactions with jurors in strict compliance with any procedures ordered by the Court designed to protect the jurors' privacy.**3**

The reasoning in *King* and *Daniel* (as well as the other cases cited by the Government) simply does not to apply to a non-party like E&Y that only wants to speak with willing jurors and that has no intention of (indeed, no interest in) disturbing the verdict.

### B.  Limited Juror Interviews Would Not Invade the Jury's Deliberations.

The Government argues (at 6-13) that the types of questions E&Y's proposes:  (i) would necessarily invade the jury's deliberations; and (ii) are prohibited by Fed. R. Evid. 606(b). We disagree.

---

3    *Daniel* is also factually distinguishable from this case. In addition to seeking leave to interview jurors, the physician sought relief from the adverse verdict through a motion for a new trial or, in the alternative, for a reduction of the verdict. Although the physician outwardly based his request for interviews on his purported desire to help resolve a related state court action, the information obtained during the juror interviews could have been used to overturn the verdict. *Id.* at 637. Here, in contrast, there is no risk that E&Y (a non-party) will use the interviews to disturb the jury's verdict.

4

E&Y will not ask any jurors about the deliberations, discussion, or vote that led to their verdict.**4** The Government's expansive definition of "jury deliberations" to include general questions about a juror's perception of the evidence was expressly rejected by the Fifth Circuit in *United States v*. Cleveland, 128 F.3d 267 (5th Cir. 1997), a case cited by the Government (at 2). There, the Fifth Circuit upheld the validity of a district court order that prohibited all post-verdict interviews about jury deliberations without court approval. *Id.* at 270. In concluding that the district court's order did not run afoul of the First Amendment, the Fifth Circuit reasoned:

> [T]he term "deliberations" is imprecise and might be construed by jurors wishing to speak as extending to their individual reactions to the trial proceedings occurring in open court. We disagree. . . As contemplated by *Harrelson*, and as used in [the district court's] order, "deliberations" refers only to the discussions about the case occurring among jurors within the sanctity of the jury room. A juror in this case may be interviewed about his own "general reactions" to the trial proceedings, and he is only prevented from being interviewed about the private debates and discussions which took place in the jury room during the time leading up to the jury's rendering of its verdict.

*Id.* at 270. Here, as in *Cleveland*, the Court should not construe the meaning of "jury deliberations" in such a restrictive way that willing jurors are prohibited from discussing their own thoughts about witnesses, evidence, and arguments presented during the trial proceedings.

The Government's reliance on Fed. R. Evid. 606(b) is misplaced. As the text of Rule 606(b) makes clear, it is an evidentiary rule concerning the admissibility of evidence during an "inquiry into the validity of a verdict or indictment."$^5$ Indeed, the cases cited by the

---

4      The Government attempts to support its position by arguing (at 7) that, based on the Court's jury instructions, jurors are instructed not to reach conclusions prior to deliberations. While it is right to assume that no juror reached a final conclusion on these issues prior to hearing all of the evidence, that assumption does not prove the government's argument. E&Y does not seek to inquire about the jury deliberations, including with respect to witness credibility, or any particular piece of evidence. Rather, E&Y seeks to inquire about the reactions of individual jurors to particular witnesses, issues presented in the criminal trial and methods of presentation. In addition, E&Y seeks to obtain feedback from those jurors interested in discussing the matter regarding how the complex accounting issues that were, in part, at issue in the criminal trial might best be presented to a lay jury.

5      *See, also,* Advisory Committee Notes to Subdivision Fed. R. Evid. 606(b) (recognizing that Rule 606(b) deals with "[w]hether testimony, affidavits or statements of jurors should be received for the purpose of invalidating or supporting a verdict or indictment").

5

Government, which concern the admissibility of post-verdict statements by jurors, explain that the purpose of Rule 606(b) is "to preclude a juror from impeaching his own verdict with evidence of his subjective motivations." *Wright v. United* States, 559 F. Supp. 1139, 1151 (E.D.N.Y. 1983). Here, of course, Rule 606(b) is not implicated because E&Y does not seek to admit juror statements as evidence as part of an inquiry into the validity of a verdict.

Finally, the Government, relying upon a lengthy piece of *dicta* in *United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997) (a case where the Second Circuit considered whether a district court improperly dismissed a juror during deliberations), contends (at 13) that E&Y's request, if granted, will invade jury deliberations because any discussion with a juror "that touched upon the juror's [sic] deliberations would likely reveal the thoughts of all jurors, including those who elected not to be interviewed." This argument, however, fails because E&Y will ask jurors about their own reactions to witnesses, evidence, and arguments, and will not ask any questions regarding the jury's deliberations, discussions, or votes.

### C. Any Inquiry By Cendant Would Also Be Governed By the Court's Procedures and Limitations.

The Government argues (at 14) that granting E&Y's request to conduct juror interviews will leave the jurors "inundated" with similar requests from other civil lawyers. In this regard, the Court has received requests from Cendant and the HFS Parties,[6] the only other parties to the civil litigation that are taking a lead role.

Notably, the Government has not been notified of any similar requests from the other parties to the civil cases and no application from these other parties has been made to this Court. This is not surprising as the civil litigation is principally a dispute between E&Y and Cendant.

---

[6] The HFS parties are Cendant executives and board members, most notably Henry Silverman, the CEO of Cendant and the executive ultimately responsible for the direction of Cendant's litigation posture and strategies.

6

While there are a number of other parties to the civil litigation, it is E&Y and Cendant who have played the lead roles in that case. Most importantly, however, this Court can condition any permission to conduct juror interviews on the same restrictions agreed to here by E&Y. Thus, any concerns regarding excessive intrusion into the lives of the jurors are beside the point; only those jurors who affirmatively agree to be interviewed would be contacted by any party.

As detailed above, E&Y has no stake in this criminal prosecution and thus no interest in upsetting the verdict and, more fundamentally, will not ask any questions regarding the jury's deliberations. Questioning by any other party, Cendant included, should be premised on an identical restriction.

The Government also contends (at 15) that Defendants Forbes and Shelton, as named parties to the civil action, would be able to conduct juror interviews with the purpose of seeking information that, if convicted, could be used to overturn the jury's verdict. Forbes and Shelton, however, have not asked for juror interviews in either their capacity as civil litigants or criminal defendants. The Court can consider requests from Forbes and Shelton, if those requests are ever made, based on the facts before the Court at that time.

### D. The Court Could Set Its Own Level of Supervision.

The Government contends (at 16) that the Court would have to expend substantial resources to supervise E&Y's (and potentially Cendant's and the HFS Parties') juror interviews. There is no requirement that the Court supervise juror interviews. The resources expended by the Court will thus largely depend upon the Court's desired level of involvement in presiding over or monitoring such interviews.

### E. E&Y Has Standing To Seek Juror Interviews Pursuant to Local Rule 83.5(1).

The HFS Parties contend (at 1) that E&Y does not have standing to seek juror interviews because Local Rule 83.5(1) applies only to a "party" or an "attorney, employee, representative or

7

agent of any party or attorney." The argument fails for two reasons. First, interviews conducted by E&Y's counsel or their agents would fall under the rubric of interviews by an "attorney" or "agent of an attorney." In addition, the Second Circuit has recognized that Local Rule 83.5(1) "extends the court's supervisory authority to any post-verdict interviews of jurors." *Thomas,* 116 F.3d at 620 (noting that Local Rule 12(e)(1), predecessor to Local Rule 83.5(1), prohibits jurors from responding to "any inquiry as to the deliberations or vote of the jury or of any individual juror, except upon leave of Court"). Accordingly, because Local Rule 83.5(1) requires E&Y to obtain leave of Court before conducting post-verdict interviews of jurors, E&Y has standing to obtain that permission from the Court.

## CONCLUSION

For the reasons set forth above and in E&Y's opening brief, E&Y respectfully requests that the Court grant its motion for leave of Court to permit juror interviews following the conclusion of the ongoing criminal trial of Walter A. Forbes and E. Kirk Shelton.

Dated: November 1, 2004

                                               Respectfully submitted,

                                               _____
                                               Shelley R. Sadin (ct05090)

                                               Zeldes, Needle & Cooper
                                               1000 Lafayette Blvd.
                                               P.O. Box 1740
                                               Bridgeport, Connecticut 06604
                                               (203) 333-9441
                                               Facsimile: (203) 333-1489
                                               Email: ssadin@znclaw.com

                                               Attorneys for Ernst & Young LLP

OF COUNSEL:
Boies Schiller & Flexner LLP
Robin A. Henry
Rosanne C. Baxter
333 Main Street
Armonk, NY 10504
(914) 749-8200

Boies Schiller & Flexner LLP
Harlan A. Levy
Frank C. Moore, III
Boies, Schiller & Flexner LLP
570 Lexington Avenue
New York, NY 10022
(212) 446-2300

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was sent via facsimile and overnight mail, on the 2nd day of November, 2004 to the following counsel of record:

Christopher J. Christie, Esq.
John J. Carney, Esq.
Norman Gross, Esq.
James McMahon, Esq.
Richard J. Schechter, Esq.
Special Attorneys
United States Department of Justice
450 Main Street, Room 617
Hartford, CT  06103

Stanley A. Twardy, Jr.
Day Berry & Howard
One Canterbury Green
Stamford, CT 06901-2047

Thomas P. Puccio
Law Offices of Thomas P. Puccio
230 Park Avenue, Suite 301
New York, New York  10169

Scott A. Edelman, Esq.
Thomas A. Arena, Esq.
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY  10005

Barry S. Simon, Esq.
Brendan V. Sullivan, Jr.
Williams & Connolly
725 12th Street, N.W.
Washington, D.C. 20005-5901

James T. Cowdery, Esq.
Thomas J. Murphy
Cowdery, Ecker & Murphy
750 Main Street, Suite 910
Hartford, CT  06103-4477

Carl Greenberg, Esq.
Budd Larner, P.C.
150 John F. Kennedy Parkway
CN 1000
Short Hills, NJ  07078-0999

Francis J. Brady, Esq.
C. Donald Neville
Murtha Cullina LLP
CityPlace I
Hartford, CT  06103-3469

Herbert J. Stern, Esq.
Stern & Kilcullen
75 Livingston Avenue
Roseland, NJ  07068

James G. Kreissman, Esq.
Simpson Thacher & Bartlett LLP
3330 Hillview Avenue
Palo Alto, CA  94304

And via overnight mail, on this 2nd day of November 2004 to:

Daniel E. Reynolds, Esq.
Helen Gredd
Lauren Freundlich
Lankler, Siffert & Wohl
500 Fifth Avenue, 33rd Floor
New York, NY  10110-3398

Douglas S. Eakeley, Esq.
R. Scott Thompson, Esq.
Lowenstein, Sandler, Kohl, Fisher & Boylan
65 Livingston Avenue
Roseland, NJ  07068-1791

Alfred U. Pavlis, Esq.
Daly & Pavlis
107 John Street
Southport, CT  06490

Alan R. Friedman, Esq.
Gary P. Naftalis, Esq.
Michael Tremonte, Esq.
Kramer, Levin, Naftalis & Frankel
919 Third Avenue
New York, NY  10022-3903

Gregory L. Diskant
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY  10036-6710

Christopher K. Kiplok, Esq.
Derek J.T. Adler, Esq.
William R. Maguire, Esq.
Hughes, Hubbard & Reed
One Battery Park Plaza, 12th Floor
New York, NY  10004-1482

Audrey Strauss
Fried, Frank, Harris, Shriver & Jacobson
One New York Plaza, 25th Floor
New York, NY  10004-1980

Ira B. Grudberg, Esq.
Jacobs, Grudberg, Belt & Dow, PC
350 Orange Street
New Haven, CT  06503-0001

Joel B. Casey
Peter W. Hull
McCarter & English
CityPlace I – 185 Asylum Street, 36th Floor
Hartford, CT  06103-3495

Ethan A. Levin-Epstein
Garrison Levin-Epstein Chimes & Richardson
405 Orange Street
New Haven, CT  06511

Richard C. Tynan
Halloran & Sage
One Goodwin Square
225 Asylum Street
Hartford, CT  06103

Melinda Hardy
United States Securities & Exchange Commission
450 Fifth Street, NW
Washington, DC  20549

Robert Fettweis
Wolf Block Brach Eichler
101 Eisenhower Parkway
Roseland, NJ  07068

Faisal M. Zubairi
Kirkpatrick & Lockhart LLP NJ
One Newark Center
Newark, NJ  07012

Ralph G. Elliot, Esq.
Tyler Cooper & Alcorn
CityPlace 35th Floor
Hartford, CT  06103-3488

Ed Dauber, Esq.
Greenberg Dauber Epstein & Tucker
One Gateway Center
Newark, NJ  07102

Harold James Pickerstein
Pepe & Hazard
30 Jelliff Lane
Southport, CT  06890-1436

      Dated at Bridgeport, Connecticut on this 2nd day of November, 2004.

                                                   _____
                                                   Shelley R. Sadin