UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| v. | : | November 4, 2004 |
| WALTER A. FORBES and<br>E. KIRK SHELTON | : | |

**MEMORANDUM OF LAW OF THE UNITED STATES IN SUPPORT OF
ITS REQUEST FOR A "CONSCIOUS AVOIDANCE" INSTRUCTION**

CHRISTOPHER J. CHRISTIE
JOHN J. CARNEY
NORMAN GROSS
JAMES MCMAHON
RICHARD J. SCHECHTER
Special Attorneys
U.S. Department of Justice
450 Main Street, Room 617
Hartford, CT 06103
Tel:  (860) 240-2675
Fax:  (860) 240-3021

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| v. | : | November 4, 2004 |
| | : | |
| WALTER A. FORBES and | : | |
| E. KIRK SHELTON | : | |

**MEMORANDUM OF LAW OF THE UNITED STATES IN SUPPORT OF ITS REQUEST FOR A "CONSCIOUS AVOIDANCE" INSTRUCTION**

The Court has directed the Government to file a written submission supporting its request for a "conscious avoidance" instruction to the jury. This memorandum of law is filed in compliance with that directive.

"Courts in this Circuit **commonly give** the jury a conscious avoidance instruction when a defendant claims to lack some specific aspect of knowledge necessary to conviction but where the evidence may be construed as deliberate ignorance." United States v. Reyes, 302 F.3d 48, 55 (2d Cir. 2002)(emphasis added), citing United States v. Gabriel, 125 F.3d 89, 98 (2d Cir. 1997) and United States v. Rodriguez, 983 F.2d 455, 457 (2d Cir. 1993); see also United States v. Fletcher, 928 F.2d 495, 502 (2d Cir. 1991)("The conscious avoidance charge is **commonly used** in this Circuit where a

defendant claims lack of some specific aspect of knowledge necessary for conviction but where the evidence may be interpreted as deliberate ignorance")(emphasis added); accord United States v. Lanza, 790 F.2d 1015, 1022 (2d Cir. 1986). A conscious avoidance instruction is properly given when (1) the defendant asserts the lack of some specific aspect of knowledge required for conviction, and (2) the appropriate factual predicate for the charge exists. United States v. Svoboda, 347 F.3d 471, 480 (2d Cir. 2003); United States v. Abreu, 342 F.3d 183, 188 (2d Cir. 2003); United States v. Aulicino, 44 F.3d 1102, 1115 (2d Cir. 1995)(collecting cases); United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1195 (2d Cir. 1989). The second prong is satisfied if there is "evidence such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." Svoboda, 347 F.3d at 480.

   Here, neither defendant disputes that the first prong has been satisfied as to him. Both defendants testified and claimed repeatedly that they were ignorant of the fraudulent accounting at CUC and Cendant. After both defendants testified that they were ignorant of the fraudulent

accounting that was perpetrated for years in the company for which they were the two highest ranking executives, even though they both had ready access to the information that would have revealed the fraud and could have directed any of their subordinates who were involved in the fraud to disclose that information to them, a conscious avoidance charge is virtually compelled.  See United States v. Aina-Marshall, 336 F.3d 167, 171 (2d Cir. 2003)(affirming the conscious avoidance instruction and explaining that where the defendant testifies that she possessed contraband but did not know that the material was contraband, "a conscious avoidance charge is appropriate in all but the highly unusual--perhaps non-existent--case").  The defendants could not blame their subordinates for the totality of the fraud while claiming ignorance of any aspect of the fraud without opening the door to a conscious avoidance instruction.  See United States v. Walker, 191 F.3d 326, 337 (2d Cir. 1999)(conscious avoidance instruction was properly given where the defendant argued that his employees were solely responsible for preparing false applications for asylum, and the defendant claimed that he was ignorant of the wrongdoing, but he supervised his employees and occasionally reviewed their completed applications).

       The Government has adduced sufficient evidence to

satisfy the second prong of the conscious avoidance instruction with respect to both defendants. Indeed, each defendant's testimony, standing alone, justifies a conscious avoidance instruction.[1]

With respect to Shelton, his own testimony supports a conscious avoidance instruction as follows:

    1) Shelton testified that he had regularly received "forecasts," described by Corigliano as "cheat sheets," over a period of years but that the documents "kind of disappeared, they stopped coming." Tr. at 11991. Shelton apparently never questioned the sudden absence of these documents or questioned Corigliano directly about the meaning of the "reserve" lines on the cheat sheets he did see.

    2) Shelton testified that he received a two page schedule, Government Exhibit 160, at the March 6 meeting. The first page of the schedule shows $165 million being added to revenue accounts only throughout 1998. The second page shows both increases to revenue and cost saves totaling $165 million throughout 1998. Despite the suggestion from the document alone that these monthly adjustments are arbitrary, Shelton apparently never inquired further into the reason for the difference between the treatment of the $165 million on the two pages of Exhibit 160.

    3) Page 2 of Government Exhibit 160 shows increases to revenue of approximately $38 million relating to Interval in 1998. Government Exhibits 382 and 382a show increases relating to Interval in approximately similar amounts in the same period. Shelton testified that Corigliano told him in a five minute pre-meeting meeting on March 6, 1998 that Interval-related adjustments represented $80 million to $90 million of the $165 million. Shelton apparently never questioned the significant difference between these amounts.

---

[1] In addition to the information set forth herein, the Government relies on the entire record established at trial to support the conscious avoidance charge.

   4) Shelton created Government Exhibit 606, a graph of the earnings of CUC, which showed earnings that were approximately $100 million lower than the earnings reported on CUC's Form 10K for that period.

   5)  Shelton admitted that he received Government Exhibit 506, a January 14, 1998 email in which Pember refers to anticipated "'reserve' adjustments."  Shelton did not ask about these reserve adjustments in his reply.

   6) Shelton did not dispute that he received (but claimed, in any event, that he did not read) a January 20, 1998 email (Government Exhibit 519) that was sent to him by Pember.  Shelton admitted that a fragment of the second page of Exhibit 519 was on his hard drive.  The email referred, among other things, to wide variances between forecasted and actual results for some of CMS' largest divisions.  The email also provided facially transparent "explanations" for the variances.  Shelton never questioned Pember about the contents of this email.

   7)  Shelton participated with Corigliano, Monaco and Scott Forbes on a conference call regarding the wide variances in Government Exhibit 519 a day or two after he received it. Shelton never questioned Corigliano or Pember about the reasons for the wide variances.

   8) Shelton testified that he was unaware that the Ideon <u>merger</u> <u>reserve</u> was increased by approximately $20 million.  Corigliano testified that the increase was undertaken to advance the fraudulent scheme.

   9)  Shelton testified that he believed that Corigliano was referring to a software return reserve, and not a merger reserve, when Corigliano discussed the $20 million increase referenced in the above paragraph.

   In addition, the following evidence also supports a conscious avoidance charge as to Shelton:

   10)  Government Exhibit 160 shows <u>decreases</u> in revenue for the fourth quarter of 1998.  Shelton apparently never questioned the reason for scheduled decreases in revenue.

   11)   When Shelton was questioned by former HFS

personnel about wide discrepancies between the 1997 results for NUMA and NAOG and those divisions' budgeted results for 1998, Pember told him quietly that the differences were due to the use of merger reserves. Shelton did not question Pember's answer.

       12) Shelton received budget documents in December 1997 and January 1998 containing financial data which did not correspond to the financial data that Shelton knew had been given to officials of HFS at the same time.

       13) Shelton received financial packages from the operating divisions which, when these divisions' financial results were combined, were inconsistent with the information contained in CUC's quarterly reports on Form 10Q after those reports were filed. Shelton admitted that he had read the 10Qs, but denied any knowledge that they were inconsistent with the division's financial packages.

      With respect to Forbes, his own testimony supports the challenged conscious avoidance instruction:

       1) Forbes, like Shelton, was present during meetings at which the "cheat sheets" were discussed by other members of the conspiracy. Forbes never questioned the increases to earnings that were designated "reserves" on these documents.

       2) A comparison of the cheat sheets with the financial results reported on CUC's annual reports filed with the SEC on Form 10K, and with CUC's quarterly reports filed with the SEC on Form 10Q, would have informed Forbes of a high probability that the financial results on the annual and quarterly reports were fraudulently inflated. Forbes testified that he did not carefully read, or read at all, the financial statements in those annual and quarterly reports, even though he was the Chief Executive Office when those reports were filed and those reports were filed over his own signature.

       3) Forbes testified that he never saw a document at CUC that suggested that accounting fraud was taking place at the company, even though he attended meetings at which the cheat sheets were discussed.

       4) Forbes claimed that he was ignorant of the

increase of the Ideon merger reserve from $100 million to $127 million.  Corigliano testified that Forbes had approved of the increase and that the increase was undertaken to advance the fraudulent scheme.

      5) Forbes admittedly never asked any of the CUC accounting personnel who were admittedly involved in fraudulently inflating the Cendant merger reserve why the CUC share of the reserve was so large, both in sheer size, and relative to the HFS share of the reserve, even though a member of CUC's Board of Directors had questioned Forbes about the size of an earlier merger reserve during a Board meeting.

      6) Even though Forbes urged Silverman to retain Pember, Forbes made no inquiry of Silverman about why he fired Pember.  Shortly after Silverman fired Pember, however, Forbes sold substantial amounts of his Cendant stock.  Forbes also made no inquiry of Silverman about why he fired Shelton and Corigliano.

      Based on that evidence, the jury could draw a reasonable inference that both defendants were aware of a high probability that the financial results of CUC and Cendant had been fraudulently inflated, but that both defendants had nevertheless consciously avoided confirming that fact.  The sheer magnitude, duration, and numerous transactions comprising the fraud, all of which occurred while the defendants were the two highest ranking executives at the company where the fraud was exclusively conducted, provides substantial support for a conscious avoidance instruction. See United States v. Gurary, 860 F.2d 521, 527 (2d Cir. 1988)(conscious avoidance instruction was properly given in a tax fraud prosecution where the defendants sold fictitious

7

invoices totaling over $136 million during a period of eight years to over 200 purchasers).  The Second Circuit has routinely held that a conscious avoidance instruction was properly given based on evidence which provided even less support for the instruction than that presented here.  See Svoboda, 347 F.3d at 481 (evidence was sufficient to support a conscious avoidance instruction in a prosecution for securities fraud and insider trading, where the defendant tippee knew that his tipper was privy to confidential inside information, and the timing of the tippee's trades (as little as one day before the announcement of a tender offer) and the spectacular success of those trades (up to 400% return) was highly suspicious); Abreu, 342 F.3d at 187 (conscious avoidance instruction was properly given based on evidence that the defendant denied knowledge of the presence of cocaine in a steamer trunk in his bedroom, but admitted that he had accepted the trunk from his son and knew that his son was involved with drugs); Reyes, 302 F.3d at 55-56 (conscious avoidance instruction was properly given where the defendant worked in a business in which stolen automobile airbags were commonly sold, and referred airbag customers to a company that was trafficking in stolen airbags).

        The fact that the Government presented evidence that

both defendants had actual knowledge and willfully participated in the fraud does not preclude a conscious avoidance instruction.  Here, both defendants have forcefully attacked the credibility of the testimony of the cooperating witnesses, who supplied evidence of the defendants' actual knowledge of the fraud.  The jury may elect to credit only some of the prosecution's evidence regarding the defendant's knowledge, and the credited evidence may provide greater support for a finding of conscious avoidance than for a finding of actual knowledge.  United States v. Wert-Ruiz, 228 F.3d 250, 257 (3d Cir. 2000).  Because the Government cannot know in advance how the jury will assess the credibility of the witnesses, it is permitted to claim both that a defendant had actual knowledge of a disputed fact and that the defendant consciously avoided knowledge of that fact.  See United States v. Bautista, 252 F.3d 141, 147-48 (2d Cir. 2001); United States v. Jacobs, 117 F.3d 82, 98 (2d Cir. 1997) ("Even when the government attempts to prove actual knowledge, an instruction on conscious avoidance can still be proper."); United States v. Hopkins, 53 F.3d 533, 542 (2d Cir. 1995) (conscious avoidance instruction was properly given even when the government primarily relies on evidence of actual knowledge); accord United States v. Stewart, 185 F.3d 112, 126 (3d Cir. 1999).

9

## **CONCLUSION**

　　　　The Government respectfully requests that the Court instruct the jury regarding "conscious avoidance."

                                        Respectfully submitted,

                                        CHRISTOPHER J. CHRISTIE
                                        Special Attorney
                                        U.S. Department of Justice


                                        By:   JOHN J. CARNEY
                                        Special Attorney
                                        U.S. Department of Justice
                                        Federal Bar No. 24063


                                        By:   NORMAN GROSS
                                        Special Attorney
                                        U.S. Department of Justice
                                        Federal Bar No. 24933


                                        By:   JAMES MCMAHON
                                        Special Attorney
                                        U.S. Department of Justice
                                        Federal Bar No. 24062


                                        By:   RICHARD J. SCHECHTER
                                        Special Attorney
                                        U.S. Department of Justice
                                        Federal Bar No. 24238

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following via fax delivery:

   Barry S. Simon, Esq.

   Thomas P. Puccio, Esq.

   Scott Edelman, Esq.
   Thomas Arena, Esq.

      I declare under penalty of perjury that the foregoing is true and correct.

_____
DEBRA ELLIOTT
U.S. Department of Justice


Dated:  November 4, 2004
       Hartford, Connecticut