

Exhibit A



# CENDANT CORP (CD)

9 WEST 57TH STREET  
NEW YORK, NY 10019  
212. 413.1800  
http://www.cendant.com

# 10-K/A

**YEAR END REPORT ON FORM 10-K/A**  
Filed on 05/13/1999 – Period: 12/31/1998  
File Number 001-10308



www.gsionline.com

Results of Operations

This discussion should be read in conjunction with the information contained in our Consolidated Financial Statements and accompanying Notes thereto included elsewhere herein.

Our operating results and the operating results of certain of our underlying business segments are comprised of business combinations accounted for under the purchase method of accounting. Accordingly, the results of operations of such acquired companies have been included in our consolidated operating results and our applicable business segments from the respective dates of acquisition. See "Liquidity and Capital Resources" for a discussion of our purchase method acquisitions.

The underlying discussions of each segment's operating results focuses on Adjusted EBITDA, which is defined as earnings before non-operating interest, income taxes, depreciation and amortization, adjusted for Other charges which are of a non-recurring or unusual nature, and are not included in assessing segment performance or are not segment-specific. Our management believes such discussion is the most informative representation of how management evaluates performance. We have determined that we have eight reportable operating segments based primarily on the types of services we provide, the consumer base to which marketing efforts are directed and the methods we use to sell services. For additional information, including a description of the services provided in each of our reportable operating segments, see Note 26 to the Consolidated Financial Statements.

Consolidated Results - 1998 vs. 1997

|  | Year Ended December 31, | | |
|---|---|---|---|
| (Dollars in millions) | 1998 | 1997 | % Change |
| Net revenues | $ 5,086.6 | $ 4,051.9 | 26% |
| Operating expenses (1) | 3,528.7 | 2,839.0 | 24% |
| Adjusted EBITDA | 1,557.9 | 1,212.9 | 28% |
| Other charges | | | |
|   Litigation settlement | 351.0 | - | * |
|   Termination of proposed acquisitions | 433.5 | - | * |
|   Executive terminations | 52.5 | - | * |
|   Investigation-related costs | 33.4 | - | * |
|   Merger-related costs and other unusual charges (credits) | (67.2) | 704.1 | * |
|   Financing costs | 35.1 | - | * |
| Depreciation and amortization expense | 314.0 | 229.0 | 37% |
| Interest expense, net | 113.9 | 50.6 | 125% |
| Pre-tax income from continuing operations before minority interest, extraordinary gain and cumulative effect of accounting change | 291.7 | 229.2 | 27% |
| Provision for income taxes | 95.4 | 180.1 | (47%) |
| Minority interest, net of tax | 50.6 | - | * |
| Income from continuing operations before extraordinary gain and cumulative effect of accounting change | 145.7 | 49.1 | * |
| Loss from discontinued operations, net of tax | (10.8) | (9.6) | * |
| Gain on sale of discontinued operations, net of tax | 404.7 | - | * |
| Extraordinary gain, net of tax | - | 26.4 | * |
| Cumulative effect of accounting change, net of tax | - | (283.1) | * |
| Net income (loss) | $ 539.6 | $ (217.2) | * |

----------
(1)  Exclusive of Other charges and depreciation and amortization expense.
*    Not meaningful.

Exhibit B



# CENDANT CORP (CD)

9 WEST 57TH STREET  
NEW YORK, NY 10019  
212.413.1800  
http://www.cendant.com

# 10-K

**CENDANT CORPORATION**  
Filed on 03/01/2005 – Period: 12/31/2004  
File Number 001-10308



**Table of Contents**

## ITEM 6. SELECTED FINANCIAL DATA

| | At or For the Year Ended December 31, | | | | |
|---|---|---|---|---|---|
| | 2004 | 2003 | 2002 | 2001 | 2000 |
| | (In millions, except per share data) | | | | |
| **Results of Operations** | | | | | |
| Net revenues | $ 19,785 | $ 18,015 | $ 14,025 | $ 8,612 | $ 4,257 |
| Income from continuing operations | $ 1,820 | $ 1,430 | $ 1,009 | $ 330 | $ 564 |
| Income (loss) from discontinued operations, net of tax | 262 | 35 | (163) | 93 | 94 |
| Cumulative effect of accounting changes, net of tax | — | (293) | — | (38) | (56) |
| Net income | $ 2,082 | $ 1,172 | $ 846 | $ 385 | $ 602 |
| **Per Share Data** | | | | | |
| Income from continuing operations: | | | | | |
| Basic | $ 1.77 | $ 1.41 | $ 0.99 | $ 0.36 | $ 0.79 |
| Diluted | 1.71 | 1.35 | 0.95 | 0.35 | 0.76 |
| Income (loss) from discontinued operations: | | | | | |
| Basic | $ 0.25 | $ 0.03 | $ (0.16) | $ 0.11 | $ 0.13 |
| Diluted | 0.25 | 0.03 | (0.15) | 0.10 | 0.13 |
| Cumulative effect of accounting changes: | | | | | |
| Basic | $ — | $ (0.29) | $ — | $ (0.05) | $ (0.08) |
| Diluted | — | (0.27) | — | (0.04) | (0.08) |
| Net income: | | | | | |
| Basic | $ 2.02 | $ 1.15 | $ 0.83 | $ 0.42 | $ 0.84 |
| Diluted | 1.96 | 1.11 | 0.80 | 0.41 | 0.81 |
| Cash dividends declared | $ 0.32 | $ — | $ — | $ — | $ — |
| **Financial Position** | | | | | |
| Total assets | $ 42,555 | $ 39,456 | $ 36,017 | $ 33,597 | $ 15,190 |
| Assets under management and mortgage programs | 19,075 | 17,639 | 15,269 | 12,072 | 2,999 |
| Total long-term debt | 4,333 | 6,002 | 6,464 | 6,995 | 1,948 |
| Debt under management and mortgage programs (*) | 15,819 | 14,785 | 12,747 | 9,844 | 2,040 |
| Mandatorily redeemable preferred interest in a subsidiary | — | — | 375 | 375 | 375 |
| Mandatorily redeemable preferred securities issued by subsidiary holding solely senior debentures issued by the Company | — | — | — | — | 1,683 |
| Stockholders' equity | 12,695 | 10,186 | 9,315 | 7,068 | 2,774 |

(*) Includes related-party debt due to Cendant Rental Car Funding (AESOP) LLC. See Note 16 to our Consolidated Financial Statements.

In presenting the financial data above in conformity with generally accepted accounting principles, we are required to make estimates and assumptions that affect the amounts reported. See "Critical Accounting Policies" under Item 7 included elsewhere herein for a detailed discussion of the accounting policies that we believe require subjective and complex judgments that could potentially affect reported results.

During 2003, we consolidated a number of entities pursuant to Financial Accounting Standards Board Interpretation No. 46, "Consolidation of Variable Interest Entities," and/or as a result of amendments to the underlying structures of certain of the facilities we use to securitize assets. See Notes 2, 16 and 17 to the Consolidated Financial Statements for more information.

Exhibit C



# CNN/Money

PRINT

Powered by


## Ex-WorldCom CEO Ebbers guilty
**Faces long prison sentence after being convicted on all nine counts in accounting fraud.**
March 15, 2005: 4:26 PM EST
*By Krysten Crawford, CNN/Money staff writer*

**NEW YORK (CNN/Money)** - Bernard Ebbers, the former CEO of WorldCom, was found guilty Tuesday for his role in the huge accounting scandal that led to the largest bankruptcy in U.S. history.

A federal jury in New York, on its eighth day of deliberations, convicted Ebbers on all nine counts that he helped mastermind an $11 billion accounting fraud at WorldCom, now known as MCI.

Ebbers, 63, had been charged with one count of conspiracy, one count of securities fraud and seven counts of filing false statements with securities regulators. He faces up to 85 years in prison, but sentencing guidelines are expected to result in a shorter term that legal experts say could nonetheless put Ebbers behind bars for the rest of his life.

Sentencing is scheduled for June 13. Ebbers will appeal the verdict, his lawyer said Tuesday afternoon.

"This is the mother lode for the government in its campaign against corporate fraud," said Orin Snyder, a former federal prosecutor who is now a partner in Gibson, Dunn & Crutcher.

WorldCom first disclosed the accounting irregularities that led to Ebbers' prosecution and the investor lawsuit in June 2002. The news catapulted the No. 2 long-distance phone giant into the top tier of companies then reeling from accounting scandals, among them Tyco International, Global Crossing, Adelphia Communications and Enron.

The admission of WorldCom's fuzzy math drove the company into bankruptcy in July 2002, eclipsing the filing of fallen energy giant Enron.



Less than two weeks after WorldCom's downfall, President Bush signed into law one of the toughest corporate governance laws in history. The Sarbanes-Oxley Law, which included a provision making corporate chiefs criminally responsible for false regulatory filings, was a direct response to the corporate chicanery that cost investors billions of dollars and untold workers their jobs.

The crackdown also led to several high-profile prosecutions. Of the former executives now on or facing trial, ex-Enron chairman Kenneth Lay should be the most unnerved by Ebbers' guilty verdict, legal experts said.

Both Ebbers and Lay have insisted they were unaware of the fraud at their companies. And both faced chief financial officers who agreed to testify against them as part of a plea deal with prosecutors. (See: Ebbers wasn't dumb enough.)

For Ebbers, former CFO Scott Sullivan did a lot of damage during his testimony at trial, despite efforts by defense lawyers to discredit him. Lay, whose trial is set to begin early next year, runs a similar risk with Enron's ex-CFO Andrew Fastow, now a witness for the prosecution.

The two cases differ for other reasons that make it impossible to draw any conclusions about Lay's own prospects at trial. Still, Lay could be thinking today "'Oh shoot. Here's a guy who was similarly situated, who went to trial, the CFO was the main witness against him and he was convicted,'" said one legal expert, who did not want to be quoted because of professional ties to parties in the Ebbers case. "It's a model to be bummed about."

### Ebbers: I knew nothing

Ebbers, a former milkman, basketball coach and Best Western hotel owner before he discovered the telecom business in 1983, wasn't at WorldCom's helm at the time of its final fall from grace. He had resigned as CEO -- a post he held since the mid-1980s -- two months before the bankruptcy scandal.

In March 2004 prosecutors indicted Ebbers for allegedly masterminding the fraud at WorldCom, starting in 2000 when companies were beginning to slash spending on telecom services and equipment.

Prosecutors say Ebbers allowed the accounting fraud because he wanted to protect his personal fortune, which consisted mostly of WorldCom stock. In addition, WorldCom had made loans of $400 million to Ebbers.

The formal charges came on the same day that Sullivan, WorldCom's ex-CFO and Ebbers' chief lieutenant, pleaded guilty to the same charges leveled against Ebbers. Sullivan, 43, agreed to cooperate with prosecutors in the hopes of receiving a lighter sentence.

Sullivan was the government's key witness at Ebbers' trial, which began in mid-January. He was the only witness to link Ebbers directly to the fraud.

Ebbers, who took the stand in his own defense, insisted that he knew nothing of WorldCom's shady accounting and that he left much of the minutiae of running the company to underlings. Ebbers' lawyers say that Sullivan orchestrated the accounting scheme without Ebbers' knowledge.

But the jury clearly didn't buy Ebbers' hands-off defense, said Snyder, the former federal prosecutor, suggesting the "ostrich-with-its-head-in-the-sand" defense might not work for other indicted CEOs, including Lay.

Taking the stand is risky for any defendant and clearly backfired on Ebbers, legal experts said, but that doesn't mean it's always a mistake. Mark Belnick, the former general counsel of Tyco International, testified at his trial last year and was later acquitted. Martha Stewart, the founder of Martha Stewart Living Omnimedia (Research), didn't take the stand and was convicted.

Reid Weingarten, the lawyer who defended Ebbers as well as Belnick, told reporters Tuesday that he would probably put Ebbers on the stand if he had to make the decision again. In vowing to appeal, Weingarten said crucial evidence that would have exonerated Ebbers was kept out of court.

"I expect him to be vindicated in the future, after some of the errors made in the trial are remedied," said Weingarten.

In the WorldCom case, Ebbers and Sullivan aren't the only ones accused of bringing down the company. A handful of former company executives have pleaded guilty to charges of securities fraud and are cooperating with prosecutors.

The verdict comes two days before a trial is set to start in a securities fraud suit by WorldCom investors against more than a dozen investment banks, WorldCom's former auditor and former directors. Settlements with about a dozen banks -- including Citigroup, Bank of America and Deutsche Bank -- have reached a total $4 billion, making it the largest securities class-action settlement ever.

J.P. Morgan, accountant Arthur Andersen and the company's former directors are among the remaining defendants. The suit could break new ground for directors, who have not generally been held accountable in court for wrongdoing in securities fraud cases.

Last month, a tentative $54 million settlement with 10 former WorldCom directors unraveled after a judge refused to approve it. The deal was considered novel because it would have required the ex-directors to pay part of the settlement out of their own pockets.

WorldCom emerged from bankruptcy in 2004 with a cleaner balance sheet and a new name. Based in Ashburn, Va., MCI is now the target of a bidding war between Verizon Communications and Qwest Communications.

Click here for more news on corporate scandals.

Know a lot about the scandals? Click here for our quiz.

Click here for news about Martha Stewart's chat with fans. ∎

**Find this article at:**
http://money.cnn.com/2005/03/15/news/newsmakers/ebbers/?cnn=yes

☐ Check the box to include the list of links referenced in the article.