

Exhibit

D

1 of 2 DOCUMENTS

**UNITED STATES OF AMERICA, Appellee, -v.- PATRICK BENNETT, Defendant-Appellant, MICHAEL A. BENNETT, CHARLES T. GENOVESE, GARY PEIFFER, Defendants.**

No. 02-1379

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**2003 U.S. App. LEXIS 19394**

**September 18, 2003, Decided**

**NOTICE:** [*1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Claim dismissed by United States v. Bennett, 2003 U.S. Dist. LEXIS 16693 (S.D.N.Y., Sept. 24, 2003)
US Supreme Court certiorari denied by Bennett v. United States, 157 L. Ed. 2d 940, 124 S. Ct. 1112, 2004 U.S. LEXIS 494 (U.S., Jan. 12, 2004)

**PRIOR HISTORY:** Appeal from a judgment of the United States District Court for the Southern District of New York. (John S. Martin, Jr., Judge). United States v. Bennett, 252 F.3d 559, 2001 U.S. App. LEXIS 11286 (2d Cir. N.Y., 2001)

**DISPOSITION:** Affirmed.

**LexisNexis(R) Headnotes**

**COUNSEL:** APPEARING FOR APPELLANT: GEORGE W. GALGANO (Kieran J. Sullivan, of counsel), Galgano & Sullivan, White Plains, NY.

APPEARING FOR APPELLEE: ROBERTO FINZI, Assistant United States Attorney (Richard D. Owens and Gary Stein, Assistant United States Attorneys, of counsel, James B. Comey, United States Attorney for the Southern District of New York, on the brief), United States Attorney's Office, Southern District of New York, New York, NY.

**JUDGES:** PRESENT: ELLSWORTH VAN GRAAFEILAND, JOSEPH M. MCLAUGHLIN, JOSE A. CABRANES, Circuit Judges.

**OPINION:**

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and hereby is AFFIRMED.

Defendant Patrick Bennett appeals from a judgment of conviction entered in the District Court on June 6, 2002 on remand, after his initial conviction was affirmed in part, and vacated [*2] and remanded in part, by this Court in two separate opinions filed on May 31, 2001. In a summary order, we affirmed Bennett's conviction, *United States v. Bennett*, 252 F.3d 559, 2001 U.S. App. LEXIS 11286, No. 00-1330 (2d Cir. May 31, 2001), but in a published opinion, we vacated and remanded for resentencing, *United States v. Bennett*, 252 F.3d 559 (2d Cir. 2001). In this appeal, Bennett challenges his revised sentence of 22 years' imprisonment and two forfeiture orders in the amount of $ 109,088,899.11. Bennett also seeks to renew his challenge to his underlying conviction.

I. Background

After two jury trials, Bennett was convicted of numerous counts relating to his interference with an SEC investigation, his use of inflated income statements to borrow money from investors and banks, and his attempts to hide cash by moving it into unaudited accounts. Neither jury could reach a verdict on several

additional counts of mail fraud and securities fraud arising out of an alleged pyramid scheme based on the sale of income from photocopier leases that did not exist.

As a result of the convictions obtained at his second trial, Bennett was sentenced to 30-years' imprisonment, and was ordered to forfeit [*3] $ 109,088,889.11. n1 The 30-year sentence consisted of 20 years' imprisonment, plus an upward departure of 10 years based on the refusal of Bennett's wife to surrender certain properties allegedly purchased with the proceeds of Bennett's criminal activity. On appeal, we affirmed Bennett's convictions, but vacated his sentence on the ground that the District Court improperly punished Bennett because *his wife* would "not relinquish her statutory right to contest the forfeiture of properties in her name." *Bennett*, 252 F.3d at 564. We instructed the District Court as follows:

> On remand, Judge Martin will be entitled to consider whether, apart from Mrs. Bennett's refusal to surrender the properties, the Defendant's own acts of concealment or any other appropriate factors warrant a departure above the twenty-year sentence he stated would have been imposed had the properties been surrendered.

*Id.* at 565.

> n1 Bennett was also sentenced to five years' imprisonment, to run concurrently with his 30-year sentence, based on the conduct for which he was convicted in his first trial (primarily obstruction of justice and perjury). Bennett has not appealed that sentence.

[*4]

At resentencing, the District Court determined that a ten-year upward departure was not warranted "knowing what [the Court's] reasoning was at the time, and knowing [that] that reason has been held inappropriate by the Second Circuit." The Court instead imposed a two-year upward departure because "Mr. Bennett was responsible for transferring assets so that they would be very difficult [for] creditors to reach." The District Court thus imposed a total sentence of 22-years' imprisonment.

On appeal, Bennett challenges his revised sentence on the following grounds: (1) that the District Court improperly refused to resentence him *de novo*; (2) that the District Court failed to give reasonable notice of its

intention to depart upwardly; (3) that the District Court's written judgment of conviction impermissibly varied from the oral pronouncement of sentence; and (4) that the District Court's two forfeiture orders were improper. n2 Bennett also makes a renewed challenge to his underlying conviction on grounds that were already rejected by this Court.

> n2 The Preliminary Order of Forfeiture issued at his sentencing in the amount of $ 109,088,889.11 was amended four months later as part of the First Amended Order of Forfeiture, which mandated the sale of certain real property to satisfy the judgment.

[*5]

II. Challenges to the Sentence

Bennett first challenges the District Court's refusal to resentence him *de novo* and, consequently, its failure to (i) apply a more recent version of the Sentencing Guidelines or (ii) consider "the unreliability of the prior facts" relied upon by the Court at his first sentencing. Def.'s Br. at 44. We reject this argument because we believe it is clear, in reading the decision of our Court in Bennett's first appeal, that the scope of the remand was intended to be limited to whether an upward departure was warranted on grounds other than those relied upon by the District Court. The panel never stated that Bennett should be resentenced *de novo*, and in its only discussion of the impending remand, it specified that "on remand, Judge Martin will be entitled to consider whether, apart from Mrs. Bennett's refusal to surrender the properties, the Defendant's own acts . . . warrant a departure above the twenty-year sentence." *Bennett*, 252 F.3d at 565. Reading the opinion in context, it is clear to us that the panel took issue only with the District Court's upward departure, and there is no reason to believe that the panel intended [*6] for the District Court to reopen any aspect of the sentencing other than the upward-departure issue. *See United States v. Quintieri*, 306 F.3d 1217, 1227 (2d Cir. 2002) ("To determine whether a remand is *de novo*, we must look to both the specifics of the dictates of the remand order *as well as the broader spirit of the mandate*." (internal quotation marks omitted) (emphasis added)). We find no error in the District Court's refusal to sentence the defendant *de novo* or to reopen needlessly the loss calculation of the District Court at Bennett's first sentencing.

Bennett also challenges "the failure of the District Court to give reasonable notice of its intention to upwardly depart." Def.'s Br. at 52. We agree with the Government that this argument is entirely frivolous. First, and most notably, the entire purpose of the

resentencing procedure--as mandated by the Court of Appeals--was to consider whether an upward departure was appropriate. *See Bennett*, 252 F.3d at 565. Second, at the parties' first conference following the remand, before the resentencing, the Government stated on the record its view that "the only issue for the court on remand" [*7] was to "evaluate and reconsider what if any upward departure [would be]" appropriate under the range of acceptable factors." [A56] Finally, in a letter the Government submitted to the District Court prior to the resentencing, the Government expressly argued for a departure on the same grounds the court ultimately adopted. Under these circumstances, it cannot be said that the defendant was denied the "opportunity to assure the accurate presentation of reliable sentencing information to the district court." *United States v. Sisti*, 91 F.3d 305, 310 (2d Cir. 1996) (internal quotation marks and citation omitted).

In addition, Bennett asserts that "the ambiguity of the written judgment of conviction from the oral pronouncement of sentence violated [his] right to due process." Def.'s Br. at 65. Although the written judgment could perhaps be more precise, we reject defendant's claim because the written judgment does not differ in any material way from the oral pronouncement of sentence. At Bennett's original sentencing hearing, the District Court explained that, instead of applying an offense level of 41 based on the money laundering guidelines, it would use an [*8] offense level of 36, based on the fraud guidelines. Defendant takes issue with the written judgment's characterization of the relevant offense level as 41, with a downward departure to an offense level of 36. We find no error in this characterization.

The defendant also asserts that the written judgment improperly expanded the reason for the District Court's two-year upward departure articulated at the resentencing hearing. In fact, however, the written judgment combined the District Court's stated reasons for the two-year departure with the Court's previously articulated reasons for a *separate* five-month departure, which was incorporated as part of the 20-year sentence. Viewed in this context, the written judgment is consistent with Court's orally articulated reasons for departure, and does not give rise to a due process violation.

Finally, Bennett argues that the District Court's Preliminary Order of Forfeiture, entered at his original sentencing, and its First Amended Order of Forfeiture, which was entered four months later (and transferred his interest in certain real property to the United States), were improperly issued. Bennett asserts (1) that both orders are impermissibly [*9] based on his money laundering activities, which is not proper because he was sentenced under the fraud guidelines, (2) that the First Amended Order of Forfeiture impermissibly attempts to

reach his wife's real assets, and (3) that the First Amended Order of Forfeiture improperly authorizes the forfeiture of "substitute" assets because the Government did not first attempt to forfeit the actual fruits of the criminal conduct charged. We find each of these assertions to be either improperly raised or without merit.

III. Renewed Challenge to the Conviction

In addition to challenging his sentencing, Bennett renews in this appeal an attack on his underlying conviction, raising an argument that was expressly addressed and rejected by this Court in his first appeal. Bennett argues at great length that there was no basis for the District Court to have given a "conscious avoidance" jury instruction, and that the instruction ultimately given was defective as a matter of law.

In addressing those precise claims, we stated as follows:

Bennett next argues that Judge Martin erred in giving a conscious avoidance instruction, to which objection was made. The instruction may be given only [*10] if the evidence would permit a rational juror to conclude that the defendant was aware of a high probability of the fact in dispute, and consciously avoided confirming that fact. *United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir. 2000). Although the Government argued exclusively that Bennett had actual knowledge of the pyramid scheme, Bennett himself inadvertently raised the possibility that he had consciously avoided obtaining actual knowledge of fraud. His defense to the fraud charges was that he was too "foolish and negligent" to have appreciated the existence of fraud, even though he admitted being aware of facts that would have indicated a high probability of fraud. Under these circumstances, there was an adequate factual basis for the charge.

Bennett also challenges the wording of the conscious avoidance instruction because Judge Martin did not balance the instruction with language indicating that an "actual belief" that nothing was amiss would be sufficient to negate *mens rea*. Although this was error, *United States v. Sicignano*, 78 F.3d 69 (2d Cir. 1996), Bennett did not object to the wording of the instruction, and Judge Martin's instruction [*11] that "careless, negligent or even foolish" behavior could not

establish the requisite *mens rea* suffices to survive plain error review, *United States v. Feroz*, 848 F.2d 359, 361 (2d Cir. 1998).

*Bennett*, 252 F.3d 559, 2001 U.S. App. LEXIS 11286, No. 00-1330, at 6-7 (unpublished summary order).

Bennett acknowledges that "the doctrine of the law of the case generally requires adherence by an appellate court to its own prior decisions." Def.'s Br. at 26. Indeed, we have noted that "this Court will adhere to its own prior rulings in a given case absent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or [to] prevent manifest injustice." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (internal quotation marks omitted). Bennett asserts that, in this case, reconsideration is required to correct a clear error and to prevent manifest injustice.

We discern no "cogent or compelling reason to deviate," from our earlier ruling. In his first appeal,

Bennett raised a non-frivolous objection to the reading of a conscious avoidance instruction, and to the particular instruction [*12] that was given. We determined that the jury instruction had a proper basis and that, although Bennett had identified an "error" in the jury instruction, that error could not be considered "plain error." *Bennett*, No. 00-1330, at 6. Nothing about that reasoned determination strikes us as clearly erroneous or manifestly unjust. In the interest of finality, and in the interest of discouraging similar inappropriate challenges by future litigants, we decline to entertain Bennett's invitation to relitigate his conviction, which has already been affirmed. *See White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967) ("The 'law of the case' rule is based on the salutary and sound public policy that litigation should come to an end.").

\* \* \*

We have considered all of the defendant's arguments and have found each of them to be without merit. Accordingly, the judgment of the District Court is hereby AFFIRMED.

Exhibit

E

## Biggest Scam Ever: $700 Million Bucks

*Businessman convicted of nation's biggest pyramid scheme*

In what prosecutors called the biggest pyramid scheme in U.S. history, a businessman was convicted of cheating 22,000 investors across the country out of $700 million.

Patrick Bennett and his wife sobbed after a federal jury found him guilty Thursday of 42 counts, including securities fraud and laundering more than $1 billion. The jury did not reach a verdict on 11 counts, including the most serious charge of conspiracy.

Bennett, 46, was held on no bail and faces at least 20 years in prison at his Sept. 13 sentencing.

"Clearly this trial has showed that Patrick R. Bennett is a total amoral individual who engaged in any criminal conduct that benefits him in any way," U.S. District Judge John Martin Jr. said.

Martin said the evidence showed Bennett "has absolutely no respect for any law of any kind."

Prosecutors said the Bennett Funding Group enticed people in 46 states to invest in office equipment leases that did not exist.

Bennett pocketed more than $13 million for himself, buying a racetrack near Syracuse and spending lavishly on gambling ventures, including $19 million for a gambling barge. He put the rest of the money into a variety of business ventures, some of which went bankrupt.

Defense lawyers maintained Bennett was overwhelmed by a mountain of confusing financing and was not running a massive pyramid scheme in which early investors are paid with money from newer investors.

Bennett's case spanned two trials. In the first, a jury convicted Bennett of perjury and obstructing a federal investigation of his company, but could not reach a verdict on the rest of the charges.

He admitted he lied to the Securities and Exchange Commission after the agency began investigating his company in 1993. Prosecutors said those lies stalled the SEC until 1996, causing investors to lose hundreds of millions of dollars.

"This scheme was particularly egregious because it victimized thousands of investors who believed the investments were among the most secure available in our securities markets," U.S. Attorney Mary Jo White said.

Bennett's brother, Michael Bennett, and seven other people have pleaded guilty to criminal charges in the case.

article # 32/77

Exhibit
F

# CNNMoney



Powered by Clickability

**Bennett gets 30 years** April 28, 2000: 6:22 p.m. ET

**Federal judge also orders executive convicted of giant Ponzi scheme to pay $109M**

NEW YORK (CNNfn) - A federal judge Friday sentenced former Bennett Funding Group executive Patrick Bennett to 30 years in prison after a jury convicted him of 42 counts of money laundering and fraud that wiped out investors' life savings.

United States District Judge John Martin Jr. in New York also ordered Bennett, 47, who was convicted on June 10, 1999 of defrauding more than 10,000 people through the Syracuse, N.Y. firm his parents founded in 1980, in a giant Ponzi scheme, to pay $109 million in fines back to investors. Many of those investors, retirees and others, lost all their savings in the scheme.

Bennett, the former chief financial officer and board member of the company, has been in federal custody since his conviction following a four-week trial, Mary Jo White, the U.S. Attorney for the Southern District of New York said. The jury found him guilty of two counts of securities fraud, five counts of bank fraud, 30 counts of money laundering and five counts of engaging in financial transactions in criminally derived funds.

Bennett and his wife Gwen, have two children.

In an earlier trial, a jury convicted Bennett of two counts of conspiracy to commit obstruction of justice and perjury, four counts of perjury and one count of obstruction of justice.

Judge Martin had offered to sentence Bennett to 20 years if agreed to turn over certain assets including a 100-acre horse farm in Oneida, N.Y., but when he failed to do that, Martin sentenced him to 30 years.

But that's still a far cry from the life sentence Martin could have imposed.

There is no possibility for parole in the federal court system. Bennett's lawyer, Michael Pinnisi, said his client would appeal the decision.

"Today's sentence is one of, if not the, longest sentence imposed in a white-collar case and appropriately reflects the magnitude of Bennett's crimes, and the devastating impact these crimes have had on victim-investors," White said.

During the trials, prosecutors persuaded the juries that Bennett illegally raised capital for his office equipment financing company by soliciting $600 million from investors for bogus sales of equipment leases, White said.

Bennett kept the scheme going for six years, from 1990 to 1996, by raising money from new investors to repay earlier investors.

The jury agreed with evidence that Bennett concealed the scheme by laundering more than $1 billion in cash he illegally obtained from investors through accounts held in the name of the Bennett Management & Development Corp.

He was also convicted of several fraudulent accounting and transaction practices.

Bennett had filed for bankruptcy protection on March 29, 1996, the day he was arrested.

At his first trial, Bennett lied under oath about an investigation into his company by the U.S. Securities and Exchange Commission between 1994 and 1996. ■

**Find this article at:**
http://money.cnn.com/2000/04/28/investing/bennett

☐  Check the box to include the list of links referenced in the article.

Exh
G

## Patrick Bennett Jailed, Appeal Likely

Justice was a long time coming, but when it arrived it acted swiftly against
Patrick R. Bennett.

Immediately after Bennett was convicted of an enormous fraud scheme,
U.S. District Court Judge John S. Martin revoked the Syracuse
businessman's $500,000 bail, sent him to jail to await sentencing on Sept.
13, and ordered him to forfeit $109 million.

A federal jury convicted the 46-year-old Bennett, former chief financial
officer of the Bennett Funding Group, Inc., of 42 counts of securities fraud,
bank fraud, and money laundering. The verdict Thursday came after six
years of investigation and two trials.

Whether the case is actually over, though, is not certain.

While the the government could ask a third jury to decide if Bennett is guilty
or innocent of the 11 securities and mail fraud charges that remain, his
defense lawyers have said they intend to ask the judge to set aside the
verdict.

"We think there are some significant legal issues for appeal," attorney Mark
Gombiner said.

Bennett's defense lawyers are public defenders, appointed by the court and
paid for by taxpayers. They held out no hope that the government would
ever recover the entire $109 million judgment against their client.

"The court has already passed judgment that he's indigent," defense lawyer
Ian Yankwitt said.

The bankruptcy now includes 10 companies, over $1 billion in debts and
21,000 creditors. It is beginning to wind down, and bankruptcy Trustee
Richard C. Breeden predicts creditors may receive about 47 cents for every
dollar they invested with the companies.

Breeden said the guilty verdict was significant for investors.

"The sight of him in manacles was something they very definitely wanted to
see," Breeden said. "It's important for creditors to know that the person who
most directly brought this harm to them is behind bars."

Prosecutors had accused Bennett of using Bennett Funding Group to entice
investors in 46 states to invest in leases for office equipment that sometimes
had been bought with cash or did not exist.

Bennett then pocketed more than $13 million for himself, buying Vernon
Downs racetrack near Syracuse, prosecutors said. They alleged he also
spent lavishly on gambling ventures, including $19 million for a gambling
barge.

Bennett had admitted that he lied to the Securities and Exchange

Commission after the watchdog agency began investigating the company in
1993.

The lies, prosecutors said, stalled the SEC until March 1996, causing
investors to lose hundreds of millions of dollars.