UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Action No. |
| Plaintiff, | : | 3:02 CR 00264 (AWT) |
| - against - | : | |
| WALTER A. FORBES and E. KIRK SHELTON | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CENDANT CORPORATION'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT E. KIRK SHELTON'S MOTION
FOR STAY OF SENTENCE PROVIDING FOR RESTITUTION

Cendant Corporation ("Cendant"), the victim of the crimes committed by defendant E. Kirk Shelton ("Shelton" or "Defendant"), respectfully submits this Memorandum of Law in Opposition to Shelton's October 4, 2005 Motion for Stay of Sentencing Providing for Restitution (the "Stay Motion").

Introduction

On January 4, 2005, a jury convicted Shelton on each of the twelve counts of his indictment. Thereafter, on August 12, 2005, this Court, after finding that he perjured himself at trial and sentencing him to 10 years in prison, ordered Shelton to pay restitution in the

amount of $3.275 billion to Cendant -- the victim of his criminal fraud -- in order to compensate Cendant for the damages it suffered as a result of Shelton's crimes. (See Restitution Order (Doc. I.D. 1638)) (the "Restitution Order"). The Restitution Order also specifically required Shelton to "make a lump sum payment of $15 million by no later than October 24, 2005," the proceeds of which were to be held by the Clerk of the Court "until such time as the defendant no longer has any right to appeal from the judgment in this case." (Restitution Order at 1.) Since Shelton testified at his trial that he had a net worth of $30 million (see Shelton Crim. Trial Transcript 12625:5-20), he has the ability to meet the $15 million "lump sum" requirement without any hardship.

On October 7, 2005, Shelton, through his counsel, purported to satisfy his $15 million "lump sum" payment obligation by depositing with the Clerk: (i) assignments of three life insurance policies valued by Shelton at $3,583,473; (ii) an assignment of 98,075 shares of Cendant stock valued by Shelton at $1,902,655; and (iii) $9,513,872 in cash. Shelton made that deposit, which fails to comply with the Restitution Order, only after he attempted to frustrate any enforcement of the Restitution Order by Cendant by filing the Stay Motion.

The Stay Motion is nothing more than a pretense to avoid, potentially forever, paying restitution to the victim of his crimes. Entering a stay would in effect prevent any further payment in satisfaction of the Restitution Order until Shelton has exhausted his appellate remedies without affording any protection to the victim against further dissipation of his assets. The record is clear that this convicted Defendant has already taken steps to conceal and transfer assets for the sole purpose of frustrating his creditors. Entering a stay, and allowing Shelton to control and manipulate his assets without any oversight by the Court, will not only

frustrate the spirit of the Restitution Order, but the public policy behind the federal statutes pursuant to which it was entered.

As set forth below, the Court should deny the Stay Motion for at least four reasons: (1) Shelton has failed to comply with the Restitution Order directing him to deposit a lump sum of $15 million with the Clerk of the Court by October 24, 2005, and any stay of the Restitution Order merely will reward Shelton for failing to abide by this Court's directive; (2) Shelton has failed to show good cause for the entry of a stay; (3) a stay would render the Restitution Order meaningless and would be contrary to both the restitution statute and the public policy that supports restitution to crime victims; and (4) a stay would irreparably harm the victim, Cendant, by allowing Shelton to continue to transfer and dissipate his assets.

<u>Argument</u>

I.  Shelton's Willful Failure to Deposit a Lump Sum of $15 Million As Required By the Restitution Order Should Preclude Issuance of any Stay

The Restitution Order explicitly directs Shelton to make a "lump sum" payment of $15 million to the Court Clerk on or before October 24, 2005.  There can be no dispute as to the Court's meaning of "lump sum" -- it is a single, complete payment that is <u>no less</u> than $15 million in value.  The assets Shelton deposited with the Clerk are worth less than $15 million and he is in direct violation of the Restitution Order, as shown below.  His conscious failure to abide by the terms of the Restitution Order should not only preclude any stay of enforcement but should be met with severe sanctions.

The most significant problem with Shelton's purported "lump sum" payment -- both in terms of its value and deceptive nature -- is his assignment of three life insurance policies initially purchased for Shelton by Cendant.  Shelton listed the combined value of the three

policies at $3,583,473, an amount Shelton seeks to apply toward satisfaction of his $15 million restitution payment. But the true combined value of these three policies is approximately $1.3 million. This is because Cendant paid $2,194,627 in policy premiums over the years. This amount rightfully and in absolute terms belongs to Cendant and Cendant will receive it from the policy proceeds upon Shelton's death or if the policies are surrendered for cash. This amount must therefore be subtracted from the total current net cash surrender value assigned to the policies by Shelton.[1]

Thus, Shelton is attempting to <u>use Cendant's own money</u> -- approximately $2.2 million -- to satisfy his obligation under the Restitution Order to deposit $15 million with the Clerk of the Court to be remitted to Cendant as restitution when his appeal rights are exhausted. This demonstrates that Shelton has violated the terms of the Restitution Order. Not only has he failed to make a lump sum payment of $15 million, but he is effectively attempting to convert more than $2 million of Cendant's money and use it for his own benefit.[2]

---

[1] Attached hereto as Exhibit A is a schedule showing the amount of premiums paid by Cendant to date (and the cash surrender value, net of loans against the policies, as of June 30, 2005).

[2] As part of Shelton's deposit, he also delivered 98,075 shares of Cendant common stock to the Clerk of the Court and claimed that those shares had a value of $1,902,655. But Cendant stock fluctuates in price daily and the deposited stock will never be subject to a fixed valuation. Similarly, the cash surrender value of the three life insurance policies Shelton assigned also is not fixed in amount. The cash surrender value of each policy will fluctuate based on performance of the investments made by the insurer with the policy premium. Thus, Shelton has attempted to place on Cendant the risk of a future decline in the value of Cendant stock and the cash surrender value of the insurance policies. This, too, will violate the terms of the Restitution Order, which requires Shelton to make a "<u>lump sum</u>" payment of $15 million, if the assigned Cendant stock or cash surrender value of the assigned insurance policies fall below the values assigned to them by Shelton on October 7, 2005. Cendant reserves its right to

*(cont'd)*

Against this background, Shelton's Stay Motion plainly should be denied and Shelton should be ordered to augment his lump sum payment by $2,194,627.

II.     Shelton Has Failed to Advance Any Valid Argument in Support of a Stay

Rule 38(e) of the Federal Rules of Criminal Procedure allows a court to stay a restitution order <u>on terms considered appropriate</u>.  To justify his request for a stay, however, Shelton has advanced just one reason why a stay is supposedly appropriate -- he believes he can raise a legitimate issue on appeal and thus his deposit of $15 million with the Clerk's Office is sufficient to ensure that the Restitution Order will be complied with if he is not successful.  (<u>See</u>  Memorandum of Law in Support of Motion for Stay of Sentence Providing for Restitution at 3.)

But even assuming there is any basis for appeal after a jury conviction following his 10 days of testimony denying knowledge of the fraud, Shelton's reasoning is insufficient and provides no justifiable basis on which to stay enforcement of the Restitution Order pending a lengthy appeal in the Second Circuit -- which could take another year or longer without any assurances that his assets will remain intact.  The $15 million Shelton supposedly has deposited thus far (which, as discussed above, does not amount to $15 million) does not even begin to touch the $3.275 billion Shelton owes Cendant for his criminal activities.  Moreover, during the pendency of his appeal, assets that should rightfully be turned over to the Court Clerk in trust for Cendant, or which Cendant should otherwise be allowed to recover in satisfaction of the Restitution Order, may be transferred to others or dissipated in other ways.  Thus, if a stay is issued and Shelton loses his appeal, not only will he be even that much more

---

*(cont'd from previous page)*
    seek relief should any of the assigned assets fall below the value ascribed to them by Shelton on October 7, 2005.

behind in restitution payments to his victim, but he may very well hold significantly less assets than he does now.

III.     Time is of the Essence

Every day enforcement of the Restitution Order is delayed only provides another opportunity for Shelton to squander whatever remaining assets he may have or to take steps to conceal them, rendering the Restitution Order meaningless.  This is not a mere conjecture. Shelton has already taken steps to shield assets from discovery or collection.

Merely eight days after Shelton's first meeting with prosecutors, he created and funded an irrevocable trust with $7.5 million for the education of his two children when it is plain that education costs are not nearly this high.  (See Sentencing Memorandum of the United States at 54 n.21 (Doc. I.D. 1604-1)).  Likewise, Shelton recently transferred $2 million to his attorneys as alleged "prepaid legal fees" and has been given a very comfortable monthly living allowance.  (See id.)  Moreover, Shelton has placed his wife as the owner of the management group SCIP even though she appears to have no involvement in the management of the entity. (See id.)  Given this past history, it is more than foreseeable that Shelton, given the opportunity if the Stay Motion is granted, will shield other assets and thereby diminish the amount collectible by Cendant (his victim) under the valid and enforceable Restitution Order. See United States v. Stewart, 1999 U.S. Dist. LEXIS 10160, at *16 (E.D. Pa. Jun. 25, 1999) (court declined to order a stay in case where defendant was convicted of RICO violation because "time is of the essence" when enforcing restitution orders).

IV.     A Stay Would Not Comport With the Restitution Statutes

The Stay Motion should also be denied because issuance of a stay would be inconsistent with the restitution statutes and their underlying public policy.  This Court entered

the Restitution Order pursuant to 18 U.S.C. §§ 3663, 3663(A) and 3664 (the Victim Witness Protection Act and the Mandatory Victim Restitution Act). The undeniable purpose of those statutes is to benefit the victims of certain crimes and not the criminals, like Shelton. The legislative history and the case law interpreting the statutes all make it clear that the purpose is "to make victims whole, to fully compensate victims for their losses, and to restore victims to their original state of well-being." United States v. Simmonds, 235 F.3d 836, 830 (3d Cir. 2000); Kalani v. United States, 2002 U.S. Dist. LEXIS 21113, at *28 (S.D.N.Y. Oct. 31, 2002). Cendant (and its shareholders) has not been restored to its original undamaged state nor can it be if it is precluded from enforcing the Restitution Order. By allowing Shelton to delay payment and to transfer more assets out of Cendant's reach, the statutes and the public policy behind these laws are rendered meaningless.

In addition, the VWPA and the MVRA seek to compensate victims in an expeditious manner. The Ninth Circuit has recently noted "that the legislative history of the VWPA demonstrates that Congress intended the restitution process to be quick and reasonable." United States v. Gordon, 393 F.3d 1044, 1054 (9th Cir. 2004). Restitution in this case has been anything but quick: Shelton was fired from Cendant for cause in 1998, indicted in 2002 and convicted in 2005. This criminal case has therefore gone on for over seven years and Cendant has yet to recover a penny of the damage it suffered by virtue of Shelton's conduct. Stay of the Restitution Order will only delay things further.[3]

---

[3] Connecticut state law also lends support to denial of the Stay Motion. In fact, the Connecticut Court of Appeals recently discussed Connecticut state courts' long history of applying prejudgment remedies to ensure that a defendant does not dissipate his assets while the case is up on appeal. See Gagne v. Vaccaro, 80 Conn. App. 436, 453

*(cont'd)*

Finally, the purpose of the restitution statutes and restitution orders is not to place additional burdens on the innocent victims. If Shelton is granted a stay and then fraudulently transfers assets, the victim will be faced with an additional burden of having to challenge such transfers and seek out the assets. Thus, a stay would prolong, and potentially altogether defeat, Cendant's abilities to be repaid for its losses in compliance with the Restitution Order. Contrary to the legislative intent, this would place Shelton in a position to benefit when, in fact, "the intended beneficiaries [of restitution] are the victims, not the victimizers." United States v. Grimes, 173 F.3d 634, 639 (7th Cir. 1999). Furthermore, the Second Circuit has held that "the intent and purpose of the MVRA [is] to expand, rather than limit, the restitution remedy." United States v. Ekanem, 383 F.3d 40, 44 (2d Cir. 2004). By staying the Restitution Order, the remedy afforded to Cendant would be greatly limited.

V.  If Granted, Any Stay Should Be Conditioned on Enjoining Shelton from Spending or Transferring Any Assets Beyond Ordinary Living Expenses Without Express Approval of the Court After Notice to the Victim, Cendant

If the Court is inclined to grant the Stay Motion, the stay order should specifically bar Shelton from transferring, dissipating or shielding his assets and should limit his living expenses to those incurred by a reasonable person. For example, Shelton's living expenses should not be permitted to include such luxury items as country club or golf club membership fees or dues; car payments on more than one vehicle for himself and one vehicle for his wife;

---

*(cont'd from previous page)*
(2003); see also Brookfield v. Greenridge, Inc., 35 Conn. Supp. 49, 51 (1977) ("It is necessary to protect a plaintiff who has won at the trial level, when the final disposition of the case awaits appellate proceedings, as it is to protect that same plaintiff before trial."). Thus, in Connecticut state court it would be highly unlikely for a defendant who has been ordered to make restitution to receive a stay of that order when he has been convicted of 12 serious criminal offenses and demonstrated a willingness to transfer assets away from his creditors.

vacations or other trips not related to the prosecution of his appeal; and the maintenance of non-medical household personnel (including, but not limited to, maid, personal assistant, secretary, etc.).  If Shelton wishes to incur an expense beyond his ordinary and necessary living costs, he should be required to submit a proposal for such expenditure to the Court (or the Court's designee), on notice to Cendant and the U.S. Attorney, for approval.

In addition, any such stay must also include, or be conditioned upon, a tolling of any and all statute of limitations regarding claims that Cendant has, or may have, to set aside transfers of assets that Cendant believes may have been fraudulently transferred to others.  Otherwise, the stay could have the unexpected effect of hindering the ability to bring such claims.

As the Court is aware, Cendant currently has two motions pending before the court: (1) Motion for Order in Aid of Execution; and (2) Cendant Corporation's Motion for the Limited Release of Defendant E. Kirk Shelton's Pre-Sentence Report and Quarterly Financial Progress Reports.  If the Court decides to grant the motion for stay, it should still adjudicate Cendant's two motions.  Such limitations and restrictions are necessary to protect Cendant's legitimate and established interest in Shelton's assets while his appeal is pending.

<u>Conclusion</u>

For all of the foregoing reasons, the Stay Motion should be denied and Shelton should be ordered immediately to comply with the terms of the Restitution Order.

Dated: Harford, Connecticut
October 24, 2005

                      MOVANT - CENDANT CORPORATION

                      By: __/s/ Robert E. Kaelin_____
                          Robert E. Kaelin - ct11631
                          rkaelin@murthalaw.com

                          Murtha Cullina LLP
                          CityPlace I - 185 Asylum Street
                          Hartford, Connecticut 06103-3469
                          Telephone:   (860) 240-6000
                          Facsimile:    (860) 240-6150
                          Its Attorneys

Of Counsel:
Samuel Kadet - ct07880
skadet@skadden.com
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone:   (212) 735-3000
Facsimile:    (212) 735-2000

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Memorandum of Law in Opposition was sent via facsimile and mailed first-class, postage prepaid on this _____ day of October, 2005 to:

<u>Counsel For The U.S. Government</u>
James McMahon, Esq.
Richard J. Schechter, Esq.
Norman Gross, Esq.
United States Attorney's Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07101

<u>Counsel For E. Kirk Shelton</u>
Hope C. Seeley, Esq.
Hubert Santos, Esq.
Santos & Seeley, PC
51 Russ Street
Hartford, CT 06106

Law Offices of Thomas P. Puccio
Thomas P. Puccio, Esq.
230 Park Avenue, Suite 301
New York, NY 10172

Day, Berry & Howard LLP
Stanley A. Twardy, Jr., Esq.
Gary H. Collins, Esq.
CityPlace 1, 185 Asylum Street
Hartford, CT 06103

MilBank, Tweed, Hadley & McCloy, LLP
Scott A. Edelman, Esq.
Thomas A. Arena, Esq.
1 Chase Manhattan Plaza
New York, NY 10005-1413

/s/ Robert E. Kaelin
Robert E. Kaelin