UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 3:02 CR 264 (AWT) |
| | : | |
| v. | : | |
| | : | |
| E. KIRK SHELTON. | : | December 16, 2005 |

**DEFENDANT'S REPLY MEMORANDUM TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR PERMISSION TO TRAVEL**

The Government's objections to Mr. Shelton's motion for permission to travel to Vail, Colorado with his family during the Holiday season are without merit.

**(1) Mr. Shelton's purpose in requesting permission to travel to Colorado is to spend the Holiday week with his family and friends.**

First, Mr. Shelton's request to travel to Colorado, as stated in his initial motion, is two-fold: (1) to spend the Christmas Holiday with his wife and two children at the condominium in Vail; and, (2) to visit the Davis family, long-time friends who are recovering from serious injuries sustained during a plane crash in June.[1] Contrary to the Government's assertion, Mr. Shelton is not "seek[ing] to use the injury of Mr. and Mrs. Davis as the stated reason" to travel to Colorado. Instead, as indicated in the email from Mr. Davis (attached as Exhibit A to the Motion For Permission To Travel dated

---

[1] In his Motion For Permission To Travel dated December 7, 2005, Mr. Shelton requested "permission to travel to Vail, Colorado on Wednesday, December 21, 2005 and returning to Darien, Connecticut on Thursday, December 29, 2005 for the Christmas holiday. Mr. Shelton would be traveling with his wife and two sons and staying at Mrs. Shelton's condominium….". He also indicated that "This Motion is being filed in part so that the Shelton family may visit long-time family friends, Ronald and Lucy Davis, who were in a serious plane crash on June 13, 2005 in the Arizona desert."

December 7, 2005), "We hope the Shelton family can come to Colorado this holiday season and visit with our family. It would be great therapy for us and our recovery."[2]

The Government's claim that Mr. Shelton should be spending his "present time" prosecuting the appeal rather than traveling to Colorado is unreasonable. Mr. Shelton has hired legal counsel to pursue his appeal in the Court of Appeals for the Second Circuit. Mr. Shelton has met with his appellate counsel and provided assistance whenever requested. Certainly, if appellate counsel needs his assistance during December 21-29, 2005, Mr. Shelton will be able to communicate with his counsel via telephone, fax, and email.[3]

### (2) The cost of Mr. Shelton's airfare will not result in Mr. Shelton exceeding his monthly budget.

The cost of Mr. Shelton's airline ticket would be $1,306.90.[4] This amount would be included in Mr. Shelton's expenses for December and would not result in Mr. Shelton exceeding the Court's order regarding monthly expenditure. However, if this Court accepts the Government's argument on this point, then Mrs. Shelton would pay for her husband's ticket from her funds.

---

[2] The Government expressed skepticism to Mr. Shelton's statement in the motion that "it was believed that neither Mr. and Mrs. Davis would survive." See Defendant's Motion For Permission To Travel, at 1; Government's Opposition, at 1. However, Mr. Davis wrote in his email that "[w]e ere [sic] not expected to live." See Exhibit A, Defendant's Motion For Permission To Travel.

[3] The Government complains that Mr. Shelton has not yet filed his appellate brief and "has obtained repeated adjournments." See Government's Opposition, at 1, n. 1. Mr. Shelton's appellate counsel has filed two motions for extension of time, which is not unreasonable given the length of trial and the complexity of the issues. Furthermore, despite its present complaint, the Government did not object to either of Mr. Shelton's motions for extension of time filed in the Court of Appeals.

[4] The tickets were purchased on Mrs. Shelton's American Express Card and paid for from their joint account. Mrs. Shelton reimbursed the joint account for her ticket and the children's trust reimbursed Mr. and Mrs. Shelton's joint account for the children's tickets.

### (3) Mr. Shelton's recent bank transfers have been proper and were fully disclosed to Probation.

Mr. Shelton sold his share of SCIP Partners[5] in order to comply with the Court's Restitution Order. The details of this transaction, including the loan agreement and other pertinent documents, have been provided to Mr. Maxwell, Deputy Chief, United States Probation. Mr. Maxwell recently provided the details of the transaction to the Government.

The steps of this transaction are provided below:

1. SCIP Partners was appraised by Empire Valuations on August 24, 2005. Mr. Shelton's share was appraised at $9,827,000.

2. Mr. Shelton called Mr. Maxwell during the week of September 12th, and received permission to sell his share at the appraised value.

3. On September 19, 2005, the Shelton Children Irrevocable Trust borrowed $9,827,000, via wire transfer, from Ceniarth Wales Interests, L.P. The loan was secured by the Trust's interest in SCIP Partners.

4. On September 19, 2005, the Trust wired the $9,827,000 to Mr. Shelton's account at Smith Barney and he executed a sale and transfer of his interest to the Trust. These funds ultimately were used to pay the Restitution Order.

5. On September 23, 2005, Mr. Shelton faxed a letter to Mr. Maxwell in which he confirmed the sale of his share at the appraised value.

6. In September, SCIP Partners began liquidating its assets.

7. On November 16, 2005, SCIP Management Company authorized a $7,700,000 distribution to partners. On November 17, 2005, $7,692,300 was wired from SCIP Partners' account at Merrill Lynch to the Trust account at Smith Barney.

---

[5] SCIP Partners L.P. was a limited partnership with two limited partners, and one general partner as follows:
- SCIP Management Company Inc.  General Partner:  **.**1%
- Kirk Shelton, limited partner:  59.9% ownership
- Shelton Children Irrevocable Trust, limited partner:  40% ownership

-3-

8. Smith Barney was concerned about wiring the funds to repay Ceniarth, so on November 29, 2005, the trust wired $7,500,000 back to SCIP Partners account at Merrill Lynch.

9. On December 1, 2005, SCIP Partners wired those funds from Merrill Lynch to the escrow account at Zukerman Gore & Brandeis, the law firm that handled the loan. Their address is:

   United States Trust Company of New York
   Zukerman Gore & Brandeis, LLP
   For the benefit of the Shelton Children's Irrevocable Trust
   875 Third Avenue
   New York, NY  10022

10. On the same day, December 1st, Zukerman Gore paid the $7,500,000 back to Ceniarth, a partial repayment of the loan.

11. The Trust paid the balance due to Ceniarth on or about December 9, 2005.

Therefore, the Government's concern that Mr. Shelton "may be seeking to dissipate and launder his remaining assets" to prevent the payment of restitution is unfounded. Likewise, its claim that Mr. Shelton "has engaged in what appear to be suspicious bank transactions" is without any factual basis. While the transaction was complicated, it was not "suspicious." In fact, prior to engaging in this transaction, Mr. Shelton alerted Mr. Maxwell and received permission. Furthermore, he has provided all pertinent documents to Mr. Maxwell for his review. Accordingly, Mr. Shelton's recent banking activities were proper and were done to comply with the Court's Restitution Order.[6]

---

[6] The Government's request to schedule a bail revocation hearing in its memorandum of law in opposition to Mr. Shelton's motion for permission to travel is improper. See 18 U.S.C. § 3148. Furthermore, in light of the information provided by Mr. Shelton regarding his recent financial transactions, the Government's request for a bail revocation hearing is without an adequate factual basis.

-5-

For the foregoing reasons, and for the reasons stated in his Motion filed on December 7, 2005, Mr. Shelton respectfully requests that he be given permission to travel with his family for the Christmas Holiday to Vail, Colorado on December 21, 2005 and to return to Darien, Connecticut on December 29, 2005.

**THE DEFENDANT,**
**E. Kirk Shelton**

BY_____
HOPE C. SEELEY
Federal Bar No. ct 4863
SANTOS & SEELEY, P.C.
51 Russ Street
Hartford, CT 06106
Tel: (860) 249-6548
Fax:(860) 724-5533

LAW OFFICES OF THOMAS P. PUCCIO
Thomas P. Puccio, Esq. (CT 22983)
230 Park Avenue, Suite 301
New York, NY 10172
Tel.: (212) 883-6383
Fax: (212) 883-6388

## **CERTIFICATION**

I hereby certify that on December 16, 2005, a copy of the foregoing Reply Memorandum was served on the following parties by email or facsimile <u>and</u> U.S. Mail:

Richard J. Schechter, Esq.
U.S. Attorney's Office
915 Lafayette Blvd., Rm. 309
Bridgeport, CT  06604
Tel: (203) 696-3000
Fax: (203) 579-5550

James McMahon, Esq.
Fraud Section
US Department of Justice
1400 New York Ave., NW, 4th Floor
Washington, DC  20005

Norman Gross, Esq.

United States Attorney's Office
U.S. Courthouse and Federal Building
401 Market Street, 4th Floor
Camden, N.J. 0810-2098
Tel:  (856) 968-4930
Fax: (856) 968-4917

Mr. C. Warren Maxwell
Deputy Chief
United States Probation
157 Church Street, 22nd Floor
New Haven, CT 06510
Tel: (203) 773-2100
Fax: (203) 773-2200

Nicole Owens, USPO
United States Probation Office
United States District Court
915 Lafayette Street
Bridgeport, CT  06604
Tel: (203) 579-5707                              _____
Fax: (203) 579-5571                              HOPE C. SEELEY