UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal Action No. |
| | : | |
| Plaintiff, | : | 3:02 CR 00264 (AWT) |
| | : | |
| v. | : | |
| | : | |
| WALTER A. FORBES and | : | |
| E. KIRK SHELTON, | : | |
| | : | |
| Defendants. | : | DECEMBER 28, 2005 |

**CENDANT CORPORATION'S REPLY MEMORANDUM IN FURTHER SUPPORT
OF ITS MOTION FOR AN ORDER COMPELLING DEFENDANT
TO COMPLY WITH THE COURT'S AUGUST 12, 2005 RESTITUTION ORDER**

Cendant Corporation ("Cendant") respectfully submits this Reply Memorandum in Further Support of its Motion for an Order Compelling Defendant to Comply with the Court's August 12, 2005 Restitution Order.[1]

---

[1] Capitalized terms used herein have the meanings ascribed to them in Cendant's moving brief (Cendant Corporation's Motion for an Order Compelling Defendant E. Kirk Shelton to Comply with the Court's August 12, 2005 Restitution Order, dated November 15, 2005 "Cendant Mem."). Citations to "Shelton Mem." refer to Shelton's Memorandum of Law in Opposition to Motion for an Order Compelling Defendant E. Kirk Shelton to Comply with the Court's August 12, 2005 Restitution Order, dated December 14, 2005. Citations to "App." are to the Appendix accompanying Cendant's motion and the Cendant Mem.

## Introduction

On November 15, 2005, Cendant filed this motion to compel in order to cure Defendant E. Kirk Shelton's ("Shelton") failure to comply with the Court's August 12, 2005 Restitution Order's ("Restitution Order") unambiguous terms. Instead of responding to Cendant's motion with an argument that at least poses as meritorious, the essence of Shelton's opposition is to ignore the problem by attempting to make the motivation and honesty of Cendant the issue. But the fact remains that Shelton, who has kept himself busy over the past few months transferring his assets as revealed recently by the government, has failed to abide by the terms of the Restitution Order and his diversions cannot obscure the clear and uncomplicated facts underlying this matter.[2]

Shelton offers nothing but falsehoods and tortured logic to support his specious claim that he is in compliance with this Court's order that he deposit $15 million in a "lump sum." Having been convicted of fraud through accounting manipulations and found to be a perjurer, Shelton resorts to familiar habits in opposing this motion. According to Shelton, the plain meaning of a "lump sum" means something other than its plain meaning -- i.e., something less than an exact and fixed $15 million. To reach this conclusion, Shelton mischaracterizes the Restitution Order, mischaracterizes Cendant's motion and mischaracterizes his employment

---

[2]   The United States Government submitted a Memorandum in Opposition to Defendant Shelton's Motion for Permission to Travel to Vail, Colorado for the Christmas Holiday, dated December 8, 2005 ("Government Mem."). In that document, the United States referred to "recent bank transfers" on behalf of Shelton and further stated that "The United States has recently learned that Shelton has engaged in what appear to be suspicious bank transactions…." Id., at p. 2.

agreement in hopes that he will draw attention away from his unsupported arguments. But, as explained below and in Cendant's moving brief, Shelton is wrong on each account and he should be compelled to comply with the terms of the Restitution Order.

**Argument**

I.  **SHELTON HAS FAILED TO COMPLY WITH THE RESTITUTION ORDER**

    A.  **The Insurance Policies Are Worth Less Than Shelton Claims (*Responding to Shelton Mem. at Pages 2-3)***

Shelton offers two arguments in response to Cendant's contention that the three split-dollar life insurance policies initially purchased for Shelton by Cendant are worth less than the $3,583,473 value ascribed to them by Shelton.[3] (See Cendant Mem. at 4-7). First, Shelton claims that Cendant forfeited any interest in the policies by failing to continue paying the premiums after Shelton was discharged from the company for cause.[4] (Shelton Mem. at 2). Second, Shelton claims that Cendant's failure to object to the inclusion of the policies as a component of the lump sum payment, which was approved by both the Probation Department

---

[3] Shelton's argument that Cendant's motion is nothing more than a surreply to his Motion to Stay the Restitution Order should be ignored. The rules permit Cendant to move before this Court for affirmative relief. That is precisely what Cendant has done here.

[4] Regardless of whether or not Cendant breached the employment agreement, Shelton has previously admitted that Cendant still has at least some interest in the cash surrender value of each policy (see App. Tab H at 2), and, thus, that his $15 million "lump sum" deposit with the Clerk is insufficient. His attempt to retract this admission now should be rejected.

and this Court, forecloses any complaint about their use now.  (See id. at 3).  Shelton is wrong on both counts.

First, the irony of Shelton attempting (unsuccessfully) to avail himself of the protections of his employment agreement should not be overlooked.[5]  There can be no question that the employment contract between Shelton and CUC, including the life insurance provisions, was induced by fraud.  To be sure, at the time Shelton entered into the employment agreement in May 1997, he had already engaged in accounting fraud which he allowed to go undetected for almost another full year, as the jury essentially found earlier in this proceeding.  Surely the CUC board of directors would not have agreed to any employment contract with Shelton had he disclosed his wrongdoing to them prior to signing the agreement.  In short, Shelton cannot shield his violation of the Restitution Order by invoking purported rights from a contract he fraudulently induced Cendant to enter into, a contract which is voidable under well-settled Connecticut law.  See Harold Cohn & Co. v. Harco Int'l, LLC, 72 Conn. App. 43, 49-50 (2002).

In any event, Cendant was perfectly within its rights in ceasing to pay the yearly premiums for Mr. Shelton's insurance policies after his employment with Cendant was terminated for cause based on his role in the accounting fraud for which he was subsequently convicted.  As discussed in Cendant's moving brief (see Cendant Mem. at 6-7), the company was only obligated to continue to make the premium payments for each policy if Shelton did

---

[5]   The Employment Agreement referenced is attached to the Cendant Mem.  See App. Tab G, Meisner Aff. Ex. 4.

4

not breach any of the covenants contained within Section IX of his employment agreement. Section IX(C)(ii) expressly states that during the time of Shelton's employment Shelton will not commit any act that in any way injures Cendant's interests. Shelton's conviction of defrauding Cendant and its shareholders, and this Court's determination that Cendant was the victim of Shelton's crimes, is more than a sufficient basis to conclude that Shelton breached this covenant.

Shelton's only response to this argument is to claim that Section IX of the employment agreement is nothing more than a covenant not to compete. (See Shelton Mem. at 2-3). But a complete reading of Section IX reveals that the non-compete provisions are only part of the covenants made by Shelton in that portion of the agreement. To be sure, Section IX(c)(ii) -- the provision of the employment agreement at issue here -- states in relevant part:

> During the Restricted Period, the Executive will not make any statements or perform any acts intended to or which may have the effect of advancing the interest of any existing or prospective competitors of the Company or any of its affiliates or in any way injuring the interests of the Company or any of its affiliates.

Thus, despite his protestations to the contrary, Shelton's interpretation of this provision renders the phrase "or in any way injuring the interest of the Company or any of its affiliates" mere surplusage in violation of clear principles of contract construction applied by Connecticut courts.[6]  See Connecticut Co. v. Division 425, Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees, 147 Conn. 608, 617 (1960) ("Every provision of the contract

---

[6]    Shelton's employment agreement is to be construed under Connecticut law.

5

must be given effect if it can reasonably be done, because parties ordinarily do not insert meaningless provisions in their agreements."); See also A. M. Larson Co. v. Lawlor Ins. Agency, Inc., 153 Conn. 618, 620 (1966) ("The plaintiff's claimed construction, as adopted by the court, renders the quoted phrase mere surplusage and inoperative in the contract of insurance."); Bell v. Allstate Ins. Co., 38 Conn. Supp. 480, 482 (1982) ("The plaintiff's construction would render the provision '(including payments due members of his/her immediate family)' meaningless and mere surplusage. The proffered construction is therefore unreasonable and inapplicable under the circumstances.").[7]

Second, Shelton's argument that Cendant waived any opportunity to object to the inclusion of the insurance policies as a component of the "lump sum" payment because it failed to complain at the time the Probation Department and this Court were considering the issue is specious at best. Cendant was not involved in (or consulted by) the Probation Department's consideration of what assets were appropriate for inclusion in the lump sum payment. Likewise, Cendant was not party to the proceedings before this Court where the insurance policies were approved as part of the lump sum payment. If it had been, the company would have asserted these arguments at that time. In any event, Shelton fails to

---

[7] Shelton's claim that Section IX of the employment agreement is nothing but a covenant not to compete is belied by a plain reading of that section. For example, the very first provision of Section IX (which Shelton also breached) states that Shelton will "furnish information as may be in his possession and fully cooperate with the Company and its affiliates as may be requested in connection with any claim or legal action in which the Company . . . is or may become a party." (See App. Tab G, Meisner Aff. Ex. 4).

6

even suggest that he made the Probation Department and this Court aware of Cendant's preexisting financial interest in the policies at the time he was given permission to include them in the lump sum payment. His failure to be candid with this Court and the Probation Department is not grounds to deny Cendant its right to oppose his conversion of Cendant's property.

### B. The Cendant Stock Is Insufficient *(Responding to Shelton Mem. at Page 3)*

Shelton's only opposition to Cendant's argument that his deposit of Cendant stock was insufficient is to claim that "[t]he Court's order did not preclude the deposit of assets which fluctuate in value." (Shelton Mem. at 3). Shelton is wrong. There can be no dispute as to the Restitution Order's meaning of "lump sum" -- it is a single, complete payment that is no less than $15 million in value. This payment was ordered so that once Shelton's appeals were exhausted, Cendant would immediately receive $15 million of the $3.2 billion in restitution owed to it. Permitting Shelton to deposit assets that fluctuate in value defeats the purpose of the lump sum payment requirement. Accordingly, Shelton should be compelled either to replace this variable asset with one subject to a fixed value or, at the very least, be compelled to supplement his deposit to make up for the loss in value.

### II. Shelton Should be Enjoined from Spending or Transferring Any Assets Beyond Ordinary Living Expenses *(Responding to Shelton Mem. at Page 4)*

In light of the facts set forth in Cendant's moving brief (see Cendant Mem. at 8-10), and the additional suspicious money and asset transfers outlined in the government's

opposition to Shelton's motion for an adjustment in his conditions of bail, the order compelling Shelton to comply with the Restitution Order should also specifically enjoin Shelton from transferring, dissipating or shielding his assets.  (See id.).  If Shelton wishes to incur an expense beyond his ordinary and necessary living costs, he should be required to submit a proposal for such expenditure to the Court (or the Court's designee), on notice to Cendant and the U.S. Attorney, for approval.

## Conclusion

For the foregoing reasons and the reasons set forth in Cendant's moving brief, Cendant's Motion to Compel should be granted and Shelton should be ordered immediately to comply with the terms of the Restitution Order.

Dated: Harford, Connecticut

        MOVANT - CENDANT CORPORATION

        By: /s/C. Donald Neville
            Robert E. Kaelin - ct11631
            rkaelin@murthalaw.com

            C. Donald Neville – ct24001
            dneville@murthalaw.com

            Murtha Cullina LLP
            CityPlace I - 185 Asylum Street
            Hartford, Connecticut 06103-3469
            Telephone:    (860) 240-6000
            Facsimile:    (860) 240-6150
            Its Attorneys

Of Counsel:

Samuel Kadet - ct07880
skadet@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone:    (212) 735-3000
Facsimile:    (212) 735-2000

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Cendant Corporation's Reply Memorandum In Further Support Of Its Motion For An Order Compelling Defendant To Comply With The Court's August 12, 2005 Restitution Order was mailed, first class, postage prepaid on December 28, 2005 to:

<u>Counsel For The U.S. Government</u>
James McMahon, Esq.
Richard J. Schechter, Esq.
Norman Gross, Esq.
United States Attorney's Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07101

<u>Counsel For E. Kirk Shelton</u>
Hope C. Seeley, Esq.
Hubert Santos, Esq.
Santos & Seeley, PC
51 Russ Street
Hartford, CT 06106

Law Offices of Thomas P. Puccio
Thomas P. Puccio, Esq.
230 Park Avenue, Suite 301
New York, NY 10172

Day, Berry & Howard LLP
Stanley A. Twardy, Jr., Esq.
Gary H. Collins, Esq.
CityPlace 1, 185 Asylum Street
Hartford, CT 06103

MilBank, Tweed, Hadley & McCloy, LLP
Scott A. Edelman, Esq.
Thomas A. Arena, Esq.
1 Chase Manhattan Plaza
New York, NY 10005-1413

Barry S. Simon
Williams & Connolly
725 12th St., N.W.
Washington, DC 20005-5901

Brendan V. Sullivan, Jr.
Margaret A. Keeley
Robert M. Cary
Williams & Connolly
725 12th St., N.W.
Washington, DC 20005-5901

James T. Cowdery
Thomas J. Murphy
Cowdery, Ecker & Murphy
750 Main St., Suite 910
Hartford, CT 06103-4477

Alfred U. Pavlis
Daly & Pavlis
107 John St.
Southport, CT 06490

Scott A. Edelman
Edward A. Stelzer
Kylie Davidson
Thomas A. Arena
Milbank, Tweed, Hadley & McCloy-NYC
One Chase Manhattan Plaza
New York, NY 10005

Daniel E. Reynolds
Lankler, Siffert & Wohl
500 Fifth Ave., 33rd Fl.
New York, NY 10110-3398

Helen Gredd
Lauren Freundlich
Lankler, Siffert & Wohl
500 Fifth Ave., 33rd Fl.
New York, NY 10110-3398

Douglas S. Eakeley
R. Scott Thompson
Lowenstein, Sandler, Kohl, Fisher & Boylan
65 Livingston Avenue
Roseland, NJ 07068-1791

Joel H. Thompson
Shelley R. Sadin
Zeldes, Needle & Cooper
1000 Lafayette Blvd., PO Box 1740
Bridgeport, CT 06601-1740

Alan R. Friedman
Gary P. Naftalis
Michael Tremonte
Kramer, Levin, Naftalis & Frankel
919 Third Ave.
New York, NY 10022-3903

Christopher K. Kiplok
Derek J.T. Adler
William R. Maguire
Hughes, Hubbard & Reed
One Battery Park Plaza, 12th Floor
New York, NY 10004-1482

Joel B. Casey
Peter W. Hull
McCarter & English
Cityplace I - 185 Asylum St.
36th Fl.
Hartford, CT 06103-3495

Richard C. Tynan
Halloran & Sage
One Goodwin Sq., 225 Asylum St.
Hartford, CT 06103

Robert Fettweis
Wolf Block Brach Eichler
101 Eisenhower Pkwy.
Roseland, NJ 07068

Ralph G. Elliot
Tyler Cooper & Alcorn
Cityplace-35Th Floor
Hartford, CT 06103-3488

Harold James Pickerstein
Pepe & Hazard
30 Jelliff Lane
Southport, CT 06890-1436

Peter W. Tomlinson
Saul B. Shapiro
Gregory L. Diskant
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710

Audrey Strauss
Fried, Frank, Harris, Shriver & Jacobson
One New York Plaza, 25th Floor
New York, NY 10004-1980

Ira B. Grudberg
Jacobs, Grudberg, Belt & Dow, P.C.
350 Orange St., Po Box 606
New Haven, CT 06503-0001

Ethan A. Levin-Epstein
Garrison Leven-Epstein Chimes & Richardson
405 Orange Street
New Haven, CT 06511

Melinda Hardy
U.S. Securities & Exchange Commission
450 Fifth Street, NW
Washington, DC 20549

Faisal M. Zubairi
Kirkpatrick & Lockhart LLP – NJ
One Newark Center
Newark, NJ 07102

Ed Dauber
Greenberg Dauber Epstein & Tucker
One Gateway Center
Newark, NY 07102

Christopher J. Christie
James McMahon
John J. Carney
Ralph J. Marra, Jr.
Richard J. Schechter
US Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 07102

/s/<u>C. Donald Neville</u>
C. Donald Neville – ct24001