**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| Plaintiff, | 3:02 CR 00264 (AWT) |
| - against - | |
| WALTER A. FORBES and E. KIRK SHELTON | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CENDANT CORPORATION'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTIONS FOR AN ORDER IN AID OF EXECUTION AND LIMITED RELEASE OF DEFENDANT'S PRE-SENTENCE REPORT AND QUARTERLY FINANCIAL PROGRESS REPORTS**

Cendant respectfully submits this Reply Memorandum in Further Support of its Motions for an Order in Aid of Execution (Document # 1711) and Limited Release of Defendant Shelton's Pre-Sentence Report and Quarterly Financial Progress Reports (Document # 1713).[1]

**Argument**

**I.   CENDANT IS ENTITLED TO AN ORDER IN AID OF EXECUTION**

Despite having five months to answer Cendant's Aid of Execution motion, the only argument Shelton offers is nothing more than a gross mischaracterization of the plain meaning

---

[1] Capitalized terms used herein have the meanings ascribed to them in Cendant's moving briefs. Citations to "Shelton Mem." refer to Shelton's opposition brief dated February 13th, 2006 (Document #2097).

of the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3664 (the "MVRA"), i.e., that Cendant must first obtain an abstract of judgment from the clerk and attempt to execute on that judgment prior to seeking court intervention. (Shelton Mem., p. 4) This tactic is consistent with the conduct of the man whom this Court determined perjured himself at his trial. As discussed below, Shelton's latest attempt to victimize Cendant again by procedural delay, dissipating its assets and violating the Restitution Order must be rejected and an Order in Aid of Execution must be entered if the Restitution Order is to have any meaning.

### A.     Cendant's Motion is "Procedurally Proper"

After Shelton's conviction, this Court ordered him to make restitution to Cendant, a victim of Shelton's crimes, pursuant to 18 U.S.C. §§ 3663, 3663A and 3664. Ignoring the meaning of all of these laws, Shelton's opposition seizes on one provision, 18 U.S.C. § 3664(m)(1)(B), which states, in part, that "[a]t the request of a victim named in a restitution order, the clerk of the court shall issue an abstract of judgment." Id. (emphasis added) (Shelton Mem., p. 3). On its face, the statute does not require (it simply allows) a victim to obtain an abstract of judgment, which will serve as a lien on any real property of the defendant located in the state of the judgment (here, Connecticut). Cendant is not choosing to do so here.[2] In what can fairly be described as no less than a total distortion of the MVRA, Shelton argues that doing so is a necessary prerequisite to Cendant seeking to enforce the Restitution Order.

---

[2]   Interestingly, Shelton suggests that this process, i.e., obtaining a lien on any real property owned by a defendant within the state, is mandatory for a victim prior to seeking an order in aid of execution (Shelton Mem., p. 4) even though Shelton owns no real property within the state, having conveniently transferred all his interest in any Connecticut real property to his wife while he was committing the fraud that led to his conviction. Cendant has, however, filed a lis pendens on the Connecticut home.

Rather than waste time following the entry of the Restitution Order, Cendant applied immediately to this Court for an Order in Aid of Execution to enforce the Restitution Order, which is itself a valid judgment. In doing so, Cendant followed United States v. Gall, Crim. No. 3:95CR98 (AHN), 1998 U.S. Dist. LEXIS 13489 (D. Conn. July 7, 1998)(attached hereto as Tab A), a precedent cited in Cendant's moving papers but largely ignored in Shelton's opposition brief.

In Gall, the defendant was convicted of insurance and tax fraud, and ordered to make restitution in the amount of approximately $13 million to the various companies that were the victims of his criminal conduct. The victims moved the Court (Nevas, J.) for an order directing the defendant to transfer his shares of three corporations to them. See id. 1998 U.S. Dist. LEXIS 13489, at *1-2. As in this case, the defendant in Gall opposed the motion on the ground that it was premature and prejudicial. See id. at *2. The Court, however, rejected the opposition. Judge Nevas correctly held that "[p]ursuant to Connecticut law, where a judgment is unsatisfied, a judgment creditor may apply for an order in aid of execution," Id. at *3, and found that the restitution order was a judgment and the victims were therefore entitled to the order sought. See id. As in Gall, Cendant, a victim forced to pay $3.2 billion in damages because of Shelton's crimes, seeks an Order in Aid of Execution for this Court's validly-entered Restitution Order so it can enforce it before Shelton conceals or dissipates his assets, as the record shows he has done and intends to continue to do.

Despite Shelton's attempt at obfuscation by reciting irrelevant Connecticut state statutory provisions in his opposition brief, Gall refers solely to Conn. Gen. Stat. § 52-356b as authority for issuance of an order in aid of execution where a judgment is unsatisfied. See Gall, 1998 U.S. Dist. LEXIS 13489, at *3. Case law confirms that such an order can be entered

where, as here, a judgment is unsatisfied. See, e.g., In re Allen-Main Assocs. Ltd. P'ship, 233 B.R. 631, 635 (Bankr. D. Conn. 1999) (Conn. Gen. State. § 52-356b permits "a judgment creditor to apply for an order in aid of execution provided only that the judgment is unsatisfied").

There is utterly no support in the law for Shelton's assertion that Cendant must first attempt to execute on his property pursuant to Connecticut state law. (Shelton Mem., p. 4) This argument is a subterfuge designed to delay so Shelton can continue to attempt to conceal or transfer still more of his assets. The undisputed fact is that the Restitution Order is unsatisfied. Not only does Shelton owe Cendant over $3 billion in restitution for his criminal acts, but he has defaulted on his obligation to deposit a $15 million "lump sum" payment with the Court.[3]

Indeed, if accepted by this Court, Shelton's opposition will undermine the purpose of the federal restitution legislation. The MVRA was not enacted to increase the procedural burden on the victim but to streamline the process of obtaining restitution and enforcement. See United States v. Perry, 360 F.3d 519, 538 (6th Cir. 2004). It was created to rectify the small number of restitution orders being issued under the predecessor statutes. See Irene V. Chase, Making the Criminal Pay in Cash: The Ex Post Facto Implications of the Mandatory

---

[3] Shelton's argument that Cendant is barred by Connecticut law from seeking documentary evidence of ownership of certain assets in its Motion for Order in Aid of Execution is equally disingenuous. (Shelton Mem., pp. 7-9) Connecticut law expressly permits motions seeking: "(1) possession of specified personal property that is sought o be levied on; or (2) possession of documentary evidence of title to property of, or a debt owed to, the judgment debtor that is sought to be levied on." Conn. Gen. Stat. § 52-356b(a). Cendant's motion seeks exactly this -- documentary evidence of title to certain personal and real property in the possession of Defendant and owing to Cendant as a part of the $3.275 billion in restitution so as to be able to move against the assets. In fact, in Gall, the victims asked for, and received, precisely the same thing (documentary evidence of shares in corporations that the defendant owned). See Gall, 1998 U.S. Dist. LEXIS 13489, at *2-3.

Victims Restitution Act of 1996, 68 U. Chi. L. Rev. 463, 468-69 (2001); United States v. Kaczynski, 416 F.3d 971, 976-77 (9th Cir. 2005) (restitution orders are awarded to compensate victims, and victims are to be "awarded restitution in a commercially reasonable manner calculated to maximize monetary return" because "[a]nything less would be inadequate").

In short, the MVRA was enacted to assist victims in receiving restitution promptly. There is no support in the text of the MVRA or the case law applying it for Shelton's contention that a victim such as Cendant must first undertake cumbersome and time consuming steps in order to obtain restitution to which it is unquestionably entitled.

**B. Cendant Should be Permitted to Execute on the Restitution Order Immediately**

Equally groundless is Shelton's argument that Cendant should not be permitted to execute on the Restitution Order because he has already complied with the $15 million "lump sum" requirement and that any further execution would somehow be "contrary" to the Restitution Order. (See Shelton Mem., pp. 6-7.)

First, as explained in detail in Cendant's Motion to Compel Compliance with the Restitution Order (Document #1990), dated November 15th, 2005, Shelton has deliberately failed to comply with his obligation to deposit a "lump sum" of $15 million with the Court (i.e., the insurance policies and Cendant stock assigned to the Clerk are worth significantly less than claimed by Shelton). Shelton's contempt for this Court's Restitution Order is reason enough to reject his argument.

Second, the MVRA provides for immediate and full restitution for a convicted defendant's victim. This is true even if a restitution order, like the one entered by this Court, sets a specific payment schedule. See United States v. Hawkins, 392 F. Supp. 2d 757, 759-60 (W.D. Va. 2005) (granting motion to obtain immediate restitution in full from defendant

already in compliance with court-ordered restitution schedule; schedule was "simply one means of ensuring that restitution will be paid by the defendant").  As the court in <u>Hawkins</u> stated, the essential policy underlying the MVRA -- that victims, such as Cendant, are entitled to full restitution -- "would be undermined if the court-imposed payment schedule created a right in the defendant to pay no more than the ordered installments."  <u>Id.</u> at 759.  "The better view is that a payment schedule simply serves as another collection method for the benefit of the victim rather than as a benefit to the defendant."  <u>Id.</u>; <u>see also</u> <u>United States v. Walker</u>, 353 F.3d 130, 133 (2d Cir. 2003) (the passage of the MVRA diminished the "significance" of payment schedules, since statute provides victims with alternative means of obtaining restitution).

<u>Third</u>, contrary to Shelton's contention, it is clear that "ample security" does not exist "to ensure that the restitution order will be complied with should the Defendant's appeal be unsuccessful."  (Shelton Mem., p. 7.)  As stated in Cendant's Motion to Compel Compliance with the Restitution Order, in Cendant's papers in opposition to Shelton's Stay Motion and in the government's papers filed on February 15, 2006, Shelton has taken every opportunity since the fraud was disclosed, most blatantly in the last six months, to transfer and otherwise dissipate his assets to shield them from Cendant.  Shelton's demonstrably brazen conduct is highlighted by his creation in 1999 -- just eight days after he met with prosecutors for the first time -- of an "educational trust" for his two children worth $7.5 million earned through his criminal activities <u>and</u> his transfer of his interest in a Vail, Colorado condominium to his wife and the same "educational trust" on September 9, 2005, literally days after being sentenced by this Court and entry of the Restitution Order.  Shelton valued this condominium at approximately $1 million, and has thus deliberately transferred at least $500,000 of his assets

for the sole purpose of keeping this asset from Cendant and rendering meaningless this Court's Restitution Order.  This brazen conduct cannot be tolerated, let alone rewarded, and Shelton's assertion of "ample security" to ensure compliance with the Restitution Order is an affront to this Court.  Accordingly, Cendant's Motion in Aid of Execution should be granted.

**II.    CENDANT'S MOTION FOR LIMITED RELEASE OF SHELTON'S PRE-SENTENCE REPORT AND QUARTERLY FINANCIAL PROGRESS REPORTS SHOULD ALSO BE GRANTED**

In light of his actions and misleading representations, Shelton's argument that Cendant is not entitled to limited release of his pre-sentence report and quarterly financial progress reports also fails.  As the Supreme Court has noted, a third party may obtain copies of a pre-sentence report if that party makes "'a compelling demonstration that disclosure of the report is required to meet the ends of justice.'"  United States v. Julian, 486 U.S. 1, 12 (1988); see also United States v. Huckaby, 43 F.3d 135, 138-40 (5th Cir. 1995) (agreeing with lower court that limited disclosure of pre-sentence report furthered the "interests of justice"); United States v. Schlette, 842 F.2d 1574, 1581-84 (finding that newspaper's obtaining pre-sentence report "serves the ends of justice" by satisfying "public interest" in report's contents), amended on other grounds, 854 F.2d 359 (9th Cir. 1988).  Given the undisputed behavior of Shelton, it is hard to imagine a more fitting example to serve the "interests of justice."  Cendant's request for limited release of such documents should be granted.

In recommending the passage of the MVRA, the statute under which this Court found that Cendant is entitled to restitution, the Senate Committee on the Judiciary stated that "justice cannot be considered served until full restitution is made" to each victim.  See S. Rep. No. 104-179, at 20 (1995), reprinted in 1996 U.S.C.C.A.N. 924, 933 (emphasis added); see also H.R. Conf. Rep. No. 104-518, at 111-12 (1996), reprinted in 1996 U.S.C.C.A.N. 944, 944-45 ("The managers intend that [S. Rep. No. 104-179] should serve as the legislative

history for the [MVRA]."). In order to obtain full restitution -- the "justice" Congress specifically contemplated in enacting the MVRA -- Cendant merely wishes to determine the size and location of Shelton's assets and track them to prevent further transfer or dissipation.

The most efficient and simplest way to achieve this statutory goal is to grant Cendant <u>limited access</u> to the portion of the pre-sentence report cataloguing Shelton's assets and each quarterly financial update Shelton files with the probation department. The reports contain -- in a discrete section -- a relatively short and presumably complete list of Shelton's assets and what he has done with those assets over each ensuing three-month period. This precise information will provide to Cendant the ability to execute the Restitution Order without having to expend time and money to get the same information. To deny this application would hardly serve the "interests of justice" or the full restitution Congress intended a victim to have.[4]

---

[4] Shelton's argument that release of the pre-sentence report is unnecessary because "[a]dequate controls are already in place to ensure compliance with the restitution order after resolution of Mr. Shelton's appeal, if necessary," (Shelton Mem, p. 8) is belied by his efforts to transfer, conceal and dissipate his assets. As noted above, Shelton has taken every opportunity to hide his assets since as early as 1992. Not permitting Cendant access to a presumably comprehensive list of Shelton's assets will only unnecessarily delay Cendant's efforts to seek full restitution and afford Shelton the ability to continue hiding them.

## Conclusion

For the foregoing reasons and the reasons set forth in Cendant's moving papers, Cendant's Motions for an Order in Aid of Execution and Limited Release of Defendant's Pre-Sentence Report and Quarterly Financial Progress Reports should be granted.

Dated: Harford, Connecticut
February 16, 2006

            MOVANT - CENDANT CORPORATION

            By: ____/s/ Robert E. Kaelin_____
                 Robert E. Kaelin - ct11631
                 rkaelin@murthalaw.com

            Murtha Cullina LLP
            CityPlace I - 185 Asylum Street
            Hartford, Connecticut 06103-3469
            Telephone:    (860) 240-6000
            Facsimile:    (860) 240-6150
            Its Attorneys

Of Counsel:

Samuel Kadet - ct07880
skadet@skadden.com
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone:    (212) 735-3000
Facsimile:    (212) 735-2000

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to the following individuals, on February 16, 2006 as noted below:

Counsel For The U.S. Government

Via E-Mail, Facsimile and U.S. Mail
James McMahon, Esq.
Richard J. Schechter, Esq.
Norman Gross, Esq.
United States Attorney's Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07101

Counsel For E. Kirk Shelton
Via E-Mail, Facsimile and U.S. Mail
Hope C. Seeley, Esq.
Hubert Santos, Esq.
Santos & Seeley, PC
51 Russ Street
Hartford, CT 06106

Via E-Mail, Facsimile and U.S. Mail
Law Offices of Thomas P. Puccio
Thomas P. Puccio, Esq.
230 Park Avenue, Suite 301
New York, NY 10172

Via Hand Delivery
Day, Berry & Howard LLP
Stanley A. Twardy, Jr., Esq.
Gary H. Collins, Esq.
CityPlace 1, 185 Asylum Street
Hartford, CT 06103

Via E-Mail, Facsimile and U.S. Mail
MilBank, Tweed, Hadley & McCloy, LLP
Scott A. Edelman, Esq.
Thomas A. Arena, Esq.
1 Chase Manhattan Plaza
New York, NY 10005-1413

      /s/ Robert E. Kaelin
    Robert E. Kaelin