Exhibit A

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1998 WL 226196 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
UNITED STATES OF AMERICA
v.
Rosario GANGI, et al., Defendants.
No. 97 CR. 1215(DC).

May 4, 1998.

Mary Jo White, United States Attorney for the Southern District of New York, by Celeste L. Koeleveld, Douglas M. Lankler, Jason Sabot, Assistant United States Attorneys, New York City, for the United States.
George Freeman, Assistant General Counsel, New York City, for the New York Times Company.
Mayer, Brown & Platt, by James J. McGuire, New York City, for defendant Gordon Hall.
Morrison & Foerster LLP, by Howard E. Heiss, Jamie A. Levitt, New York City, for defendants Lawrence Schneider and Arnold Schneider.
Thomas J. Marlowe, Thomas M. Connelly, Phoenix, Arizona, for defendant Joseph Kirkham.
Joseph Tacopina, New York City, for defendant Rosario Gangi.
Daniel A. Conti, Hempstead, New York, for defendant Daniel Guma.
Murray & McCann, by Francis J. Murray, Rockville Centre, New York, for defendant Irwin Schneider.
Brian Hansbury, for defendant Montevecchi.
Frank A. Lopez, for defendant Cerasani.
Jeffrey Lichtman, for defendant Iodice.
Saul Roffe, for defendant Lyons.
James DiPietro, for defendant Scarpaci.
Akin, Gump, Strauss, Hauer & Feld, L.L.P., by John M. Dowd, Leslie M. Turner, Washington, D.C., for Ivan K. Mathew.
Mathew J. Marx, for defendant Frank Lino.
Michael L. Macklowitz, for defendant Salvatorre Taddeo.
Barry Turner, for defendant Michael Motsykulashvili.
Murray & McCann, by Francis J. Murray, for defendant Irwin Schneider.
Phil Defonte, Larry J. Silverman, for Defendant Joseph Sorrentino
Ralph P. Cafaro, for defendant Eugene Lombardo.
Vincent Gelardi & Douglas Grover, for defendant Robert Schwickrath.

**MEMORANDUM DECISION AND ORDER**

CHIN, J.
*1 By letter dated April 13, 1998, the Government moves for an order approving its proposed redactions to the Prosecution Memorandum, which are limited to material related to ongoing investigations and the identities of confidential witnesses, and a protective order restricting dissemination and use of the document to " defendants and their counsel solely for purposes of this action." (Proposed Order at 1).

None of the defendants objects to either the nature of the proposed redactions or the protective order, although Howard Heiss, Esq., counsel for Arnold Schneider and Lawrence Schneider insists that the process by which defendants' counsel would certify compliance with the protective order should be simplified. The New York Times Company (the " Times"), however, does object to the proposed protective order. The Times argues that because the Prosecution Memorandum was publicly filed, albeit inadvertently, and widely distributed, it is entitled to not only view the redacted document, but publish its contents.

For the reasons that follow, the Government's motion is granted and the Times's objection is overruled.

**DISCUSSION**

***A. The Redactions***

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 2
Not Reported in F.Supp., 1998 WL 226196 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

I have reviewed the Government's proposed redactions, and I am satisfied that they are limited to ongoing investigations and the identities of confidential witnesses. I find that the need to protect the integrity of these investigations and the identities of these individuals outweighs any interest in disclosure of such information to defendants at this time. *See United States v. Amodeo,* 44 F.3d 141, 147 (2d Cir.1995). Accordingly, all defense counsel are entitled to a copy of the Prosecution Memorandum subject to these limited redactions.

The unredacted copies of the Prosecution Memorandum currently in the Court's possession will either be destroyed or returned to the Government.

**B.** *The Protective Order*

The remaining question is whether the Government has demonstrated that a protective order is warranted. I hold that the Government has met its burden.

The Government seeks to limit access to the Prosecution Memorandum to defendants, their counsel, legal support staff, advisors, and expert witnesses, all of whom must certify to the Court that they will comply with the terms of the protective order. According to the Government's proposed order, the document would be used "solely for the purposes of this action."

According to the Government, a protective order would serve two important interests. First, it would protect the privacy and security interests of individuals identified in the Prosecution Memorandum whose names will not be redacted because they are not related to ongoing investigations. These individuals include certain victims, witnesses, and unindicted persons. Second, in the Government's view, a protective order would ensure that defendants and the Government receive a fair trial-one that "is tried in the courtroom, not in the press." (Letter from Gov't to Court dated April 13, 1998, at 3). Because the Prosecution Memorandum contains the Government's legal theories and analyzes some of its evidence, the Government fears that further public dissemination of the document "would encourage premature debate and speculation, and the possible spread of misinformation, about the Government's case long before it has been presented to a jury, and even before the defense has had an opportunity to challenge some of the Government's evidence." (*Id.*)

**1.** *Standards*

\*2 Under Fed.R.Crim.P. 16(d)(1), a court may enter a protective order "deny[ing], restrict[ing], or deferr[ing] disclosure" of discovery-related material upon a "sufficient showing." A finding of sufficient showing "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 8 (1st Cir.1986).

The Supreme Court has made clear that "an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Hence, " continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations." *Id.* at 32.

In considering whether to enter a protective order, a court typically considers: (1) the kind of access traditionally afforded such documents; (2) any damage to the safety, reputation and privacy of third parties that may occur in the event that the contested material is disclosed; and (3) any other considerations regarding the prevention of "abuses, oppression, and injustices." *See Seattle Times,* 467 U.S. at 35.

The traditional access afforded the documents at issue plays a significant role in this analysis. Where documents are "usually filed with the court and are generally available, the weight of the presumption is stronger than where filing of the court is unusual or is generally under seal." *Amodeo,* 71 F.3d at 1050.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                         Page 3
Not Reported in F.Supp., 1998 WL 226196 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

### 2. *Application*

While the common law right of access to judicial records is well-settled, *see Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), the mere inadvertent filing of the Prosecution Memorandum did not transform it into a "judicial document." As the Second Circuit has held, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Amodeo,* 44 F.3d at 145. Rather, a "judicial document" is a document that is "relevant to the performance of the judicial function and useful in the judicial process." *Id.*

Nor has the recent legal skirmishing over defendants' access to the Prosecution Memorandum or this Court's reliance on the document in evaluating defendants' entitlement to it rendered it a judicial document subject to a presumption of public access. Instead,
a request to compel or protect the disclosure of information in the discovery process is not a request for a disposition of substantive rights. Materials submitted to a court for its consideration of a discovery motion are actually one step further removed in public concern from the trial process than the discovery materials themselves, materials that the Supreme Court has said are not subject to the public's right of access.

*Cryovac,* 805 F.2d at 13. Thus, no presumption of access necessarily attaches to the Prosecution Memorandum.

*3 Even assuming arguendo that the Prosecution Memorandum is a judicial document, however, I nevertheless conclude that any presumption of access is rebutted in this instance: the public is traditionally not privy to confidential attorney work product, and in this case there is a demonstrated need to protect the privacy interests of affected third parties and the parties' right to receive a fair trial.

First, the public's interest in being made aware of the contents of the Prosecution Memorandum is relatively low. While the Government's mishandling of the Prosecution Memorandum has led to a waiver of its work product privilege vis-a-vis the defendants, it does not follow that the public is entitled to view the document.

Second, the Prosecution Memorandum is not a document to which public access traditionally has been afforded. Unlike documents that are likely to be introduced at trial or are filed in connection with dispositive motions, [FN1] attorney work product ordinarily is not made part of the public record, or introduced at trial, or relied upon by courts in deciding substantive issues during the course of litigation. *See Cryovac,* 805 F.2d at 13 ("[T]here is no tradition of public access to discovery."). Hence, there is no common law tradition favoring access to these sorts of documents. Although the Prosecution Memorandum was inadvertently filed in the public record, "traditionally, courts have exercised the power to impound their records when circumstances warranted such action." *Id.* (quoting *McCoy v. Providence Journal Co.,* 190 F.2d at 765).

> FN1. *See, e.g., FTC v. Standard Finance Management Corp.,* 830 F.2d 404, 408-09 (1st Cir.1987) (presuming public's right to access documents filed in connection with judicial approval of consent decree); *United States v. Salerno,* 828 F.2d 958, 960-61 (2d Cir.1987) (finding common law right of access to videotaped deposition testimony); *Wilson v. American Motors Corp.,* 759 F.2d 1568, 1570 (11th Cir.1985) (finding presumptive right of access to trial record); *In re Application of Nat'l Broad. Co.,* 635 F.2d 945, 952 (2d Cir.1980) (presuming common law right of access to videotape evidence). This case does not involve a request to close criminal proceedings, such as voire dire, which would require a more specific and heightened showing of overriding interest and a narrowly-tailored solution. *See United States v. King,* No. 98-1072, 1998 WL 124060 (2d Cir. Mar.12, 1998).

Third, the interests of justice weigh heavily against further public disclosure at this stage of the proceeding. *See United States v. Amodeo,* 71 F.3d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 4

Not Reported in F.Supp., 1998 WL 226196 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

1044, 1050 (1995) ("The privacy interests of third parties ... should weigh heavily in a court's balancing equation."). The approved redactions, of course, minimize any possibility that individuals named in the document will face any physical danger. But because even the redacted version of the Prosecution Memorandum includes hearsay information involving various individuals' alleged criminal involvement, there is some possibility that "[r]eputations [may] be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information." *Id.* at 1048-49. In addition, although the Times contends that any "[a]dditional publicity will be minimal" and that "disclosures will long have been forgotten by the time of trial" (Letter from George Freeman, Esq., to the Court dated April 20, 1998, at 2), it is difficult to predict the effects that public dissemination of the Prosecution Memorandum would have on the rights of the parties as well as others. *See In re Nat'l Broadcasting,* 653 F.2d at 613 ("The public has in the past been excluded [from certain records] ... to protect ... the privacy and reputation of victims of crimes ... and to minimize the danger of an unfair trial by adverse publicity.").

*4 On balance, I find that the relevant factors weigh against public access to the Prosecution Memorandum. Accordingly, the requested protective order, with a few alterations, [FN2] is granted.

> FN2. I have incorporated Mr. Heiss's suggestion that each copy of the redacted Prosecution Memorandum bears the words, "Confidential and Subject to a Protective Order." His objection to individual certification by designated persons as "unnecessary, impractical, and overbroad," however, is overruled. (Letter from Howard Heiss, Esq., to the Court dated April 14, 1998, at 1).

It is hereby ordered that:
1. The redacted version of the Prosecution Memorandum that is to be provided to the defendants in this case pursuant to this Court's April 2, 1998 order:
a. Shall be used only by defendants and their counsel solely for purposes of this action, and shall be marked by counsel as "Confidential and Subject to a Protective Order."
b. Shall not be disclosed in any form by defendants or their counsel except as set forth in paragraph 1(c) below.
c. May be disclosed by defendants or their counsel only to the following persons (hereinafter referred to as "designated persons"):
i. secretarial, clerical, paralegal and student personnel employed full-time or part-time by defendants' attorneys;
ii. independent expert witnesses or advisors retained by defendants in connection with this action; and
iii. such other persons as may be authorized by the Court upon motion by defendants.
2. Defendants and their counsel shall provide a copy of this order to designated persons to whom they disclose confidential information pursuant to paragraph 1(c). Designated persons shall be subject to the terms of this order. An acknowledgment of the terms of this order shall be signed by designated persons and sent to the Court ex parte.
3. If the Prosecution Memorandum or any part thereof is filed with the Court, or if any motions, pleadings or papers filed with the Court will disclose the contents of the Prosecution Memorandum or any part thereof, such filings shall be submitted under seal and kept under seal until further order of the Court. If practicable, redacted versions of motions, pleadings, and papers (with all references to confidential information deleted) shall also be filed without being sealed.
4. Upon the conclusions of this case, the Prosecution Memorandum and any copies thereof that have been disseminated by defendants and their counsel to designated persons shall be returned to the Government or shall be certified to have been destroyed.

## CONCLUSION

The Government's motion is granted. The Prosecution Memorandum shall be produced to defendants, with the approved redactions and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 226196 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 5

subject to the conditions of the protective order imposed above, within one week of this order.

SO ORDERED.

S.D.N.Y.,1998.
U.S. v. Gangi
Not Reported in F.Supp., 1998 WL 226196 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:97cr01215 (Docket) (Nov. 25, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit

B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal Action No. |
| Plaintiff, | : | 3:02 CR 00264 (AWT) |
| v. | : | |
| WALTER A. FORBES and<br>E. KIRK SHELTON, | : | |
| Defendants. | : | MARCH ___, 2006 |

CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER
REGARDING CONFIDENTIAL MATERIAL

WHEREAS, on January 4, 2005, E. Kirk Shelton (Mr. Shelton) was convicted in the United States District Court for the District of Connecticut (the "Court"); and

WHEREAS, on August 3, 2005, the Court imposed a Restitution Order requiring that Mr. Shelton pay restitution to Cendant Corporation ("Cendant") in the amount of $3.275 billion; and

WHEREAS, on August 16, 2005, Mr. Shelton filed a Notice of Appeal with respect to his conviction and sentence, including the Restitution Order, to the United State Court of Appeals for the Second Circuit (the "Appeal"); and such Appeal is presently pending; and

WHEREAS, the United States of America ("United States") and Cendant, in connection with the Restitution Order, have made applications to the Court for discovery from Mr. Shelton of information regarding his assets, liabilities and financial transactions engaged in by him; and

WHEREAS, Mr. Shelton has sought a stay from the Court with respect to providing such information to the United States and Cendant; and

WHEREAS, on February 17, 2006, the Court directed Mr. Shelton to provide discovery regarding his assets, liabilities and financial transactions engaged in by him.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the United States, Cendant, and Mr. Shelton (all of the above-listed persons and entities are collectively referred to herein as the "Parties to the Protective Order"), through their respective counsel, as follows:

1. This Confidentiality Stipulation and Protective Order (the "Stipulation") shall govern the handling of all documents, testimony and discovery responses, including all copies, excerpts and summaries thereof (collectively "Material"), provided by Mr. Shelton in any proceedings in this action after the verdict in the above captioned matter (the "Proceedings"), including, without limitation, documents produced in response to the February 21, 2006 United States of America/Cendant Corporation's Request for Production of Documents. All such materials subject to this Protective Order shall be designated "Confidential" (the "Confidential Material").

2. The Confidential Material designated as "Confidential" also will render "Confidential" any copies, excerpts, summaries, or other documents reflecting or referring to the substance or contents of such Material.

3. Subject to the provisions of paragraph 4, Confidential Material may be disclosed, only to the following persons:

    a. Counsel of record for the Parties to the Protective Order, and attorneys, paralegal, clerical, and other staff employed by such counsel who are assisting in the conduct of these Proceedings;

       b.    In-house counsel and attorneys, paralegals, clerical, and other staff employed by such counsel for the Parties to the Protective Order who are assisting in the conduct of these Proceedings;

       c.    Consulting and testifying experts retained by the Parties to the Protective Order to the extent that those parties in good faith deem necessary to provide assistance in connection with the conduct of these Proceedings;

       d.    The Court and court personnel;

       e.    Court reporters and their employees used in connection with conduct of these Proceedings.

4.    Each person described in paragraph 3 above, other than the counsel to the Parties to this Protective Order (including their partners and employees), to whom any Confidential Material is disclosed, shall first be provided with a copy of this Protective Order and advised that such Confidential Material is being disclosed pursuant to and subject to the terms of the this Protective Order and that Confidential Materials may not be disclosed other than pursuant to the terms hereof. It shall be the responsibility of counsel providing such disclosure to provide to each person to whom Confidential Material is disclosed a copy of this Protective Order. Prior to disclosing Confidential Material to any person described in paragraph 3 above, counsel shall cause each such person to execute a Certificate in the form attached as Exhibit A hereto. Counsel shall be responsible for holding executed certificates.

5.    All documents and things that are produced in these Proceedings shall bear a stamp stating "Confidential - Subject to Protective Order" on each page of any such document or on a sticker affixed to any such tangible thing. It shall be the responsibility of Mr. Shelton as the Producing Person to cause all Confidential Material to be stamped by the time such Confidential Material is produced. Notwithstanding the above, all of the documents produced by Mr. Shelton on February 20, 2006 and

designated KS000001 through KS000129 shall be deemed to have been designated by Mr. Shelton as "Confidential" and constitute Confidential Material.

6. Any Party, or any person or entity authorized to receive Confidential Material pursuant to paragraph 3, above, who receives Confidential Material in the course of these Proceedings shall take reasonable steps to maintain the confidentiality and security of such Confidential Material.

7. Any and all applications to the Court relating to this Stipulation and/or Confidential Material will be filed Under Seal.

8. If, as a result of the Appeal, or otherwise, the Restitution Order is no longer in effect all Confidential Material will be returned to Mr. Shelton.

9. The Parties to this Protective Order acknowledge and agree that the Court directed Mr. Shelton to provide the information which is the subject of this Protective Order solely in connection with the Restitution Order and that such information is to be used solely in connection with the Restitution Order. Without limiting the generality of the foregoing, the United States agrees that it will not use, or attempt to use, any of the material or information provided by Mr. Shelton hereunder in connection with the Appeal or at any retrial of Mr. Shelton.

10. The terms of this Protective Order may be amended only: (i) by an agreement in writing executed by all parties hereto and approved by the Court, or (ii) upon application by any party to the Court for good cause shown and as ordered by the Court.

11. This Agreement may be executed in original or by facsimile in several counterparts, and as so executed shall constitute one agreement, binding on all of the

parties hereto, notwithstanding that all the parties are not signatory to the original or to the same counterpart.

Agreed to on Behalf of Cendant:

CENDANT CORPORATION

By: _____
    Robert E. Kaelin - ct11661
    Murtha Cullina LLP
    CityPlace I - 185 Asylum Street
    Hartford, Connecticut 06103-3469


UNITED STATES OF AMERICA

By: _____
    John G. Silbermann
    Special Attorney
    United States Department of Justice
    970 Broad Street, Suite 700
    Newark, New Jersey 07101
    ID# PHV0901

Agreed to on Behalf of E. Kirk Shelton

| LAW OFFICES OF THOMAS P. PUCCIO | SANTOS & SEELEY, P.C. |
|---|---|
| By: _____<br>  Thomas P. Puccio<br>  230 Park Avenue, Suite 301<br>  New York, New York 10169<br>  Tel.: (212) 883-6383<br>  Fax: (212) 883-6388 | By: _____<br>  Hope C. Seeley<br>  51 Russ Street<br>  Hartford, Connecticut 06106<br>  Tel.: (860) 249-6548<br>  Fax: (860) 724-5533 |

SO ORDERED:

March _____, 2006

_____
Honorable Alvin W. Thompson
United States District Judge

5

Exhibit A To Protective Order
<u>Acknowledgment</u>

I, _____, do hereby certify that I have been provided with a copy of the Confidentiality Stipulation and Protective Order Regarding Confidential Material ("Protective Order") in the matter captioned <u>United States of America v. Forbes and Shelton</u>, 3:02 CR 00264 (AWT), that I have reviewed said Protective Order, and that I agree to be bound by the terms and conditions set forth therein and consent to the exercise of jurisdiction of the United States District Court for the District of Connecticut in connection with any proceedings relating to the Protective Order.

Witness: _____

_____

Dated: _____

Exhibit C

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2004 WL 1418201 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
STERLING NATIONAL BANK,
Plaintiff-Judgment Creditor,
v.
A-1 HOTELS INTERNATIONAL, INC., Jacob Laufer, Norman Goldstein, Mattie Goldstein, and 78th Road Realty Corporation, Defendants.
STERLING NATIONAL BANK, Petitioner,
v.
BENEDICT PROPERTIES, LLC, Daniel Benedict, and Values Holdings, LLC, Respondents.
No. 00 Civ. 7352(GEL).

June 23, 2004.

Mortin J. Turchin, Turchin & Hoffman, P.C., New York, NY, for Petitioner.
Irving Bizar, Ballon Stoll Bader & Nadler, P.C., New York, NY, for Respondents.
Roger Bennet Adler, New York, NY, for Defendant Norman Goldstein.

OPINION AND ORDER

LYNCH, J.
*1 In connection with proceedings to enforce a judgment in this action, respondents Benedict Properties, LLC, Daniel Benedict, and Values Holdings, LLC (collectively, "Benedict"), issued subpoenas for the depositions of defendants Norman Goldstein and Mattie Goldstein. Norman Goldstein appeared, but asserted his Fifth Amendment privilege against self-incrimination in response to virtually all questions. Mattie Goldstein did not appear. Benedict moves for an order holding both in contempt. [FN1] For the reasons that follow, the motion will be denied as to Norman Goldstein, and an order to show cause shall issue as to Mattie Goldstein.

FN1. Petitioner Sterling National Bank joins in Benedict's motion "in so far as [Benedict] seek[s] to compel testimony from the witnesses. Norman Goldstein and Mattie Goldstein, not barred by the appropriate assertion of any applicable privilege." (Turchin Aff. ¶ 2.)

I. *Norman Goldstein*

Benedict has not established that Norman Goldstein's behavior was contumacious. A witness in a civil matter may assert his Fifth Amendment privilege against self-incrimination where he reasonable believes that his testimony could be used against him in a criminal matter, either directly or by leading to other evidence. *Kastigar v. United States,* 406 U.S. 441, 444-45 (1972); *see also Lefkowitz v. Turley,* 414 U.S. 70, 77-78 (1973); *Malloy v. Hogan,* 378 U.S. 1, 11-12 (1964); *Hoffman v. United States,* 341 U.S. 479, 486-87 (1951). Because, at the time of his deposition, Norman Goldstein awaited sentencing on criminal charges that related directly to the subject matter of these civil proceedings, the reasonableness of his assertion of the Fifth Amendment is obvious. *See Mitchell v. United States,* 526 U.S. 314, 325-26 (1999) (Fifth Amendment privilege continues until conviction and sentence have become final); *see also United States v. Domenech,* 476 F.2d 1229, 1231 (2d Cir.1973) (Fifth Amendment privilege continues after guilty plea); *Bank One of Cleveland, N.A. v. Abbe,* 916 F.2d 1067, 1075 (6th Cir.1990) (Fifth Amendment privilege "continues in force until sentencing"; collecting cases).

Even now, after sentence has been imposed, Goldstein's privilege assertion remains reasonable, for he has appealed his conviction and thus remains in jeopardy insofar as any testimony he offers in these proceedings could potentially prejudice him either in connection with his appeal or at a possible retrial. *See Taylor v. Best,* 746 F.2d 220, 222 (4th Cir.1984); *Holser v. United States,* 392 F.2d 292,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2004 WL 1418201 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

293 (5th Cir.1968); *Prentice v. Hsu,* 280 F.Supp. 384, 388 (S.D.N.Y.1968) (recognizing that despite defendant's conviction, "it does not automatically follow that the questions presented ... will not incriminate him," for "[t]he issues raised are not yet moot since appeal may bring about a new trial"); *accord, People v. Chambers,* 585 N.Y.S.2d 84, 85 (2d Dep't 1992); *Ellison v. State,* 528 A.2d 1271, 1278 (Md.1987); *cf. Ottomano v. United States,* 468 F.2d 269, 274 (1st Cir.1972) (sustaining privilege where motion to vacate had been pending, because had it been granted, defendant could have been retried, in which event "any testimony given ... would have been admissible against him"). [FN2] Furthermore, Goldstein's criminal counsel offers an affirmation averring that in his professional opinion, Goldstein's fear that his responses to questions in these civil proceedings could tend to incriminate him is reasonable. [FN3] (Adler Aff. ¶ 5.)

FN2. Neither the Supreme Court nor the Second Circuit has explicitly addressed the availability of the Fifth Amendment privilege against self-incrimination to convicted defendants with pending appeals. But the cited decisions of other federal circuits and state courts are consistent with *Mitchell,* 526 U.S. at 326, which held that a defendant may continue to assert his Fifth Amendment privilege against self-incrimination until his judgment of conviction becomes "final." " Finality is variously defined; like many legal terms, its precise meaning depends on context." *Clay v. United States,* 537 U.S. 522, 527 (2003). In the context of petitions for post-conviction relief, " [f]inality attaches when th[e] [Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Id.* Similarly, where, as here, the defendant has been convicted, but that conviction is on appeal, the judgment cannot be deemed final for purposes of the privilege because testimony offered in related civil proceedings has the potential to prejudice him in connection with his appeal and at a potential retrial. Hence, it is not the case that "no adverse consequences can be visited upon the convicted person by reason of further testimony." *Mitchell,* 526 U.S. at 326.

FN3. Benedict asks the Court to disregard Goldstein's belated submission in opposition to the contempt motion because he allegedly did not receive a copy of it until May 25, 2004, although it was due on May 14. While Goldstein's counsel did not, in fact, file the submission until May 25, Benedict's counsel actually replied to it on May 19, indicating that he must have received a copy of it before that date.

*2 Of course, the general reasonableness of a fear of potential self-incrimination does not justify a refusal to answer any and all questions; the appropriateness of assertions of privilege must be determined on a question-by-question basis. *See Estate of Fisher v. Comm'r of Internal Revenue,* 905 F.2d 645, 649 (2d Cir.1990); *see also United States v. Aeilts,* 855 F.Supp. 1114, 1116 (C.D.Cal.1994) ("blanket" assertions of privilege impermissible; rather "[t]he person must claim the privilege on a document-by-document or question-by-question basis"). But Benedict entirely fails to carry its burden of demonstrating that Goldstein's assertion of the privilege was in bad faith, either generally or as to any particular question. Neither in its initial motion nor in its reply does Benedict focus on any question in particular; it simply remarks that "a cursory glance at the transcript ... clearly shows that not every question could have touched on privileged material." (Bizar Reply Aff. ¶ 5.) But it is not the Court's job to parse the transcript, guessing at the basis of assertions of privilege as to each question. Certainly, in the case of a witness under indictment on charges closely related to the subject of the deposition, the presumption must be that his assertion of privilege as to any relevant question is reasonable, at least absent some further showing by the movant. *See Hoffman,* 341 U.S. at 486-87 ("To sustain the privilege, it need only be evident from the implications of the question, in the setting in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 3
Not Reported in F.Supp.2d, 2004 WL 1418201 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

which it is asked, that a responsive answer to the question or an explanation why it cannot be answered might be dangerous because injurious disclosure could result.").

Accordingly, as to Norman Goldstein, the assertion of the privilege is sustained, and the motion for an order of contempt is denied.

### II. *Mattie Goldstein*

Mattie Goldstein presents a different issue. So far as the record indicates, despite being properly served with a subpoena (Bizar Aff. ¶ 4, Ex. A), she simply failed to appear on the date and time specified. (Bizar Aff. ¶ 10; Reply Aff. ¶ 6.) "[A] refusal to appear for an examination ... is in a different category than a refusal to answer questions protected by the Fifth Amendment." *Hudson Tire Mart, Inc. v. Aetna Cas. and Sur. Co.*, 518 F.2d 671, 674 (2d Cir.1975). She has not responded to this motion for an order of contempt. Nor has she offered any explanation, justification or excuse for her failure to appear.

Rule 45(e) of the Federal Rules of Civil Procedure provides that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." Before imposing sanctions on a person charged with civil contempt, due process requires that the person receive notice and an opportunity to be heard. *Shoenberg v. Shapolsky Publishers, Inc.* 971 F.2d 926, 934-35 (2d Cir.1992), *overruled in part on other grounds, Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343 (2d Cir.2000). This motion, of course, gave Mattie Goldstein notice and an opportunity to be heard, and she failed to avail herself of these rights. The Court therefore has the power to issue an order of contempt under Rule 45(e). *See Diamond v. Simon,* No. 89 Civ. 7061, 1994 WL 10622, at *1 (S.D.N.Y. Jan. 10, 1994).

*3 Nevertheless, the Court declines to do so at this juncture. On the one hand, the Advisory Committee Notes to Rule 45 make clear that "[a]lthough the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to sanctions." *See Fisher v. Marubent Cotton Corp.,* 526 F.2d 1338, 1340-41 (8th Cir.1975); *Higginbotham v. KCS Int'l, Inc.,* 202 F.R.D. 444, 455 (D.Md.2001). On the other, the Court recognizes that, as the Advisory Committee Notes to Rule 45 also explain, "because the command of the subpoena is not in fact one uttered by a judicial officer, contempt should be very sparingly applied." *See also Cruz v. Meachum,* 159 F.R.D. 366, 368 (D.Conn.1994) ("A subpoena, obtainable as of course from the Clerk of the Court or issued by an attorney without any court involvement, is not of the same order as one issued by a judicial officer in the resolution of a specific dispute.").

An order of contempt leading to the imposition of sanctions is a drastic remedy. Hence, here, as in *Diamond,* 1994 WL 10622, while "the Court has the power under Rule 45(e) to impose contempt simply upon the basis of [Mattie Goldstein]'s failure to comply" with the subpoena issued by Benedict commanding her appearance for deposition, "the Court will instead ... permit [her] a final opportunity to avoid being held in contempt of court." *Id.* at *1.

Of course, the simplest way for Mattie Goldstein to avoid an order of contempt would be for her to comply with Benedict's subpoena, appear for the deposition, and answer any questions posed by Benedict insofar as they seek information not privileged. [FN4] If the Court is notified that she has appeared for a deposition by July 2, 2004, no order of contempt will be issued. Should she instead persist in defying the subpoena, she is directed to appear and show cause why her failure to appear for a deposition in this matter does not constitute a contempt of court.

   FN4. It is not clear whether Mattie Goldstein has a reasonable basis to assert the Fifth Amendment privilege against self-incrimination in these proceedings. To the extent that she has reasonable grounds to assert the Fifth Amendment privilege, the general principles articulated in the text

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

Not Reported in F.Supp.2d, 2004 WL 1418201 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

in connection with the analysis of Norman Goldstein's circumstances would govern any such assertion.

Accordingly, it is hereby ORDERED that:
1. The motion for an order of contempt as to Norman Goldstein is denied.
2. Mattie Goldstein shall appear before the Court on Friday, July 2, at 10:00 A.M. to show cause why she should not be held in contempt, unless before that time she appears for a deposition pursuant to the subpoena served upon her by Benedict.
3. Benedict is hereby directed to serve a copy of this opinion and order on Mattie Goldstein.

SO ORDERED.

S.D.N.Y.,2004.
Sterling Nat'l. Bank v. A-1 Hotels Intern., Inc.
Not Reported in F.Supp.2d, 2004 WL 1418201 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2000 WL 34510466 (Trial Pleading) Verified Answer With Affirmative Defenses (Dec. 14, 2000)
• 1:00cv07352 (Docket) (Sep. 28, 2000)
• 2000 WL 34510465 (Trial Pleading) Complaint (Sep. 27, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.