UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal Action No. |
| Plaintiff, | : | 3:02 CR 00264 (AWT) |
| v. | : | |
| WALTER A. FORBES and E. KIRK SHELTON, | : | |
| Defendants. | : | APRIL 12, 2006 |

MEMORANDUM OF CENDANT CORPORATION IN FURTHER SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH THE RESTITUTION ORDER AND IN FURTHER OPPOSITION TO DEFENDANT E. KIRK SHELTON'S MOTION FOR STAY OF SENTENCE PROVIDING FOR RESTITUTION

Cendant Corporation ("Cendant") respectfully submits this Memorandum in further support of Cendant's Motion to Compel Compliance with the Restitution Order and in further opposition to Defendant E. Kirk Shelton's ("Shelton") Motion for Stay of Sentence providing for Restitution.[1]

---

[1] The arguments set forth in this Memorandum of Law are in addition to those made by Cendant in support of Cendant's Motion to Compel Shelton's compliance with the Restitution Order, Cendant's Motion for Order in Aid of Execution and Motion for Limited Release of Defendant Shelton's Pre-Sentence Report and Quarterly Financial Progress Reports and in opposition to Shelton's Motion for Stay of Sentencing Providing for Restitution.

INTRODUCTION

On August 12, 2005, this Court ordered Shelton to pay restitution in the amount of $3.275 billion to Cendant -- the victim of his criminal fraud -- in order to compensate Cendant for the damages it suffered as a result of Shelton's crimes. A true and accurate copy of the Restitution Order is attached in the accompanying Appendix at Tab A (hereinafter, "App. Tab ___"). The Restitution Order specifically required Shelton to "make a lump sum payment of $15 million by no later than October 24, 2005," the proceeds of which were to be held by the Clerk of the Court "until such time as the defendant no longer has any right to appeal from the judgment in this case." (Id.) Since Shelton testified at his trial that he had a net worth of $30 million (see App. Tab B at 12623:20-25),[2] but informed the probation office in April 2005 that his existing assets had declined to approximately $21 million (see App. C),[3] he had the unquestionable ability in October 2005 to deposit with the Court Clerk $15 million of unencumbered assets in satisfaction of the Restitution Order's "lump sum" requirement.

As this Court noted on February 17, 2006, Shelton inexplicably failed to comply with the Restitution Order and deposit the $15 million "lump sum" as required. (See App. Tab D at 5:13-16 ("And just so it's clear how I view things, I don't think there's an issue as to whether the defendant has complied with the order. He hasn't complied with the order,

---

2 The excerpt of Shelton's trial testimony is attached as App. Tab B.

3 Shelton's list of current assets as used in the April 31, 2005 Presentence Report is attached as App. Tab C (KS 000003).

period.").)[4] Rather than comply, Shelton resorted to deception in meeting his obligation, depositing with the Clerk assignments of his interests in the cash surrender value of three split-dollar life insurance policies purchased for him by Cendant. Shelton represented that his aggregate ownership interest in the policies was $3,583,473 despite knowledge of his ongoing dispute with Cendant over whether he currently owns the policies. While failing to advise the Court of this dispute, Shelton himself has conceded in this proceeding that, regardless of who owns the policies, Cendant retains an interest in the cash surrender value of each policy which, according to Shelton, reduces his interest in the policies by approximately $1 million and produces an undisputed shortfall in the same amount in his "lump sum" payment. (See App. Tab D at 7:7-13 ("And had I been told at the time that there was some dispute about who had what interest in the policies, I would have said that was unacceptable. And to the extent that the policies that have been deposited are not in amounts that constitute his interest, the restitution order requirement of the $15 million lump sum payment has not been complied with.").)

Second, Shelton assigned to the Clerk 98,075 shares of Cendant stock valued by Shelton at $1,902,655, or $19.40 per share, at the time of the deposit. But this Court never contemplated the use of fluctuating assets as part of the "lump sum" payment mandated by the Restitution Order. Nor did Shelton because Shelton's counsel informed the Court that, aside from the insurance policies, the remainder of the $15 million payment would be made "via check or wire transfer." (See App. Tab D at 6:16-18.) Notwithstanding

---

4 A copy of the February 17, 2006 hearing transcript is attached as App. Tab D.

Shelton's representation, the use of an asset such as stock, which fluctuates in value almost every day, is unacceptable. It places the burden of any decline in value on the victim, which is contrary to the objective of the relevant federal restitution statutes and the Restitution Order's "lump sum" requirement. (See id. at 6:18-7:1 ("And I note that some of the -- some of what was deposited was shares of stock in Cendant Corporation and I'm not aware of any mechanism for transferring shares of stock by check or wire transfer. So I think you'll understand why it came as a surprise to me to see that shares were deposited. So for that reason I believe the requirement that the $15 million lump sum payment be made has not been complied with.").)

Since the assigned stock has declined in value by over $230,000 since its deposit, there is an additional shortfall of approximately $230,000 in Shelton's $15 million "lump sum" payment.

As discussed below (and in Cendant's previous briefs filed on November 15, 2005 and December 28, 2005, Shelton should be required to rectify immediately his failure to comply with the Restitution Order by paying into the Clerk's account sufficient cash to bring his total deposit to $15 million.

Additionally, should this Court grant Shelton's motion for a stay of the Restitution Order, it is imperative the status quo, i.e., Shelton's current assets, be frozen so that Cendant's right to meaningful restitution is safeguarded. As part of any stay order, Shelton's current monthly allowance of $45,000 should be reduced substantially and a requirement that all expenditures and asset transfers above his necessary living expenses be approved by the Court after notice to the United States and Cendant. Only with such

safeguards in place will a stay preserve the status quo, prevent Shelton from dissipating his assets (which a review of his spending during the 15 months since his conviction makes plain he is actively doing) and maintain Cendant's interests in Shelton's property. (See App. Tab D at 14:4-7 ("When I step back and look at this big picture, what I think ought to happen is we ought to have the status quo maintained during the appeal in terms of Mr. Shelton's assets.").)

ARGUMENT

I. Shelton Should Be Ordered To Comply With The Restitution Order

A. The Insurance Policies Are Not Worth What Shelton Claims.

In an attempt to comply with the Restitution Order's $15 million "lump sum" payment, Shelton assigned to the Court Clerk three split dollar life insurance policies initially purchased for Shelton by Cendant. Shelton listed the combined value of the three policies at $3,583,473, which he claimed was his current interest in the cash surrender value of the policies. He chose this amount notwithstanding the then-ongoing dispute between him and Cendant over ownership of each policy -- a dispute Shelton failed to disclose to the Court during the July 22, 2005 hearing at which use of the policies was discussed. In addition, Shelton subsequently acknowledged that his interest in the three policies actually is significantly less than the $3.5 million value he elected to assign to

them. (See App. Tab E at 2.)[5] In short, Shelton's $15 million lump sum payment is deficient and he should be ordered to immediately supplement his deposit with the Clerk.

Cendant claims that it has exclusive rights to each of the policies for two reasons. First, Mr. Shelton's employment agreement, under which the policies were supplied to him, was the product of fraud on the part of Mr. Shelton. The employment agreement (and all rights, obligations and interests thereunder) is therefore voidable under well settled Connecticut law. (See Cendant Compel Reply Mem. at 4.) Second, the policies belong exclusively to Cendant under the respective collateral assignment agreements, the Escrow Agreement and the Assignment Agreement because Shelton has breached the covenants contained in Article IX of his employment agreement by injuring the interests of Cendant as his conviction before this Court and the Restitution Order establish. (See Cendant Compel Reply Mem. at 5.) If Cendant's position is correct, Cendant owns the policies and Shelton's "lump sum" payment is short by $3,583,473.[6]

Although Shelton disagrees that Cendant owns the policies, he admits that Cendant does currently have an interest in the cash surrender value of the policies. (See App. Tab E at 2.) Pursuant to each policy's respective collateral assignment agreement, when the policy is surrendered for cash Cendant is entitled to receive back from the proceeds all of

---

5 A copy of Shelton's November 7, 2005 Reply Memorandum in Support of Motion for Stay of Sentence of Restitution is attached at App. Tab E.

6 Cendant, Shelton and Robert Tucker, the Escrow Agent who currently has possession of the policies pursuant to the Escrow Agreement, have agreed to have this dispute over ownership of the three policies adjudicated in Cendant's pending action against Shelton in the District of New Jersey.

the premiums it advanced over the years. Shelton contends that Cendant's interest in the premiums it advanced has been reduced by the dollar amount of cash premiums (plus interest) that Cendant has not paid subsequent to termination of his employment. But even if Shelton is correct and Cendant does not own the policies in their entirety, his interest in the policies is -- and always was -- admittedly less than the $3,583,473 value he ascribed to them when assigning his interest in the policies to the Clerk. To be sure, as of December 31, 2005, Cendant had paid a total of $2,194,627 in premiums on the three policies. As of that same date, loans (plus interest) taken against the policies to pay additional premiums totaled $1,275,570. The difference -- $919,057 -- is Cendant's undisputed interest in the policies as of December 31, 2005. (See February 16, 2006 Declaration of Richard Meisner.)[7]

Because there is a dispute as to the ownership of the policies, Shelton should be compelled to replace the assignments of his interests in the policies with a fixed asset worth $3,583,473 or, at a minimum, supplement his cash deposit with the Clerk by an additional deposit of $919,057.

B. The Cendant Stock Is Insufficient.

Shelton deposited with the Clerk of the Court 98,075 shares of Cendant common stock with a value of $1,902,655, or $19.40 per share, at the time of the deposit. But Cendant stock fluctuates in price daily and the deposited stock will never be subject to a

---

7 The February 16, 2006 Declaration of Richard Meisner was presented to the Court at the February 17, 2006 hearing and subsequently filed, as instructed, with the Clerk's office on February 21, 2006.

fixed valuation. For example, at the close of trading on April 5, 2006, Cendant stock traded at $16.99 per share. As a result, the shares deposited by Shelton currently are worth $1,666,294, or $236,631 less than the value ascribed to them by Shelton on October 7, 2005, when he deposited them with the Clerk. Accordingly, Shelton should be compelled either to replace this variable asset with one subject to a fixed value of $1,902,655 (i.e., cash) or, at the very least, be compelled to supplement his deposit each month to make up for any reduction in value of the deposited shares.

C. The Restitution Order Should Not be Modified.

Shelton should not be excused from complying with the $15 million "lump sum" requirement. As of September 30, 2005, one week before Shelton made the purported $15 million payment to the Clerk, Shelton reported to the probation department that he had assets of more than $15 million (excluding the disputed insurance policies, which Shelton had never reported as an asset). (See App. Tab F.)[8] Shelton then made his payment, depositing with the Clerk approximately $11.5 million in cash and Cendant stock and his purported $3.5 million interest in the three insurance policies. Shelton retained approximately $3.6 million in liquid assets. (See App. Tab G.)[9]

---

8 Shelton's September 2005 monthly report to the probation department is attached as App. Tab F (KS 000012).

9 Shelton's October 2005 monthly report to the probation department is attached hereto as Exhibit G (KS 000010).

Pages 9 – 12 have been filed under seal.

## CONCLUSION

For all of the foregoing reasons, Cendant's Motion to Compel should be granted and Shelton should be ordered immediately to comply with the terms of the Restitution Order.

MOVANT - CENDANT CORPORATION

By: /s/ Robert E. Kaelin
Robert E. Kaelin - ct11631
rkaelin@murthalaw.com
Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone: (860) 240-6000
Facsimile: (860) 240-6150

-- and --

Samuel Kadet - ct07880
skadet@skadden.com
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
Their Attorneys

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent on April 12, 2006 via UPS/Overnight to the following individuals:

Counsel For The U.S. Government

James McMahon, Esq.
Richard J. Schechter, Esq.
Norman Gross, Esq.
John Silbermann, Esq.
United States Attorney's Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07101

Counsel For E. Kirk Shelton

Hope C. Seeley, Esq.
Hubert Santos, Esq.
Santos & Seeley, PC
51 Russ Street
Hartford, CT 06106

Law Offices of Thomas P. Puccio
Thomas P. Puccio, Esq.
230 Park Avenue, Suite 301
New York, NY 10172

/s/ Robert E. Kaelin
Robert E. Kaelin - ct11631