UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal Action No. |
| | : | |
| Plaintiff, | : | 3:02 CR 00264 (AWT) |
| | : | |
| v. | : | |
| | : | |
| WALTER A. FORBES and | : | |
| E. KIRK SHELTON, | : | |
| | : | |
| Defendants. | : | APRIL 26, 2006 |

**CENDANT CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION
TO ROBIN D. JACKSON'S MOTION FOR PROTECTIVE ORDER**

Cendant Corporation ("Cendant"), the victim of the crimes committed by Defendant E. Kirk Shelton ("Defendant" or "Shelton"), respectfully submits this memorandum of law in opposition to the Motion for Protective Order Re: Deposition and Subpoena of Robin D. Jackson, Trustee (the "Jackson Motion") filed by non-party Robin D. Jackson, Trustee (the "Trustee" or "Jackson").

As set forth more fully below, this Court should deny the Motion and thereby permit Cendant to attend and to participate in the deposition of Jackson and to obtain any and all information given to the United States Government as document requests associated with the deposition. This result best addresses the intent of the applicable laws and the directives of this Court.

I.      BACKGROUND.

As this Court well knows, it ordered the Defendant to pay restitution in the amount of $3.27 billion to Cendant. (See, Restitution Order (Doc. I.D. 1638) ("Restitution Order")). Since this time, numerous motions have been filed, including a Motion For Aid In Execution (Docket I.D. 1711) filed by Cendant on September 20, 2005 and a Motion To Amend Restitution Order To Stay $3.275 Billion (Docket I.D. 1786) (the "Proposed Stay") filed by Shelton. Faced with competing motions, this Court held a hearing on February 17, 2006 (the "Hearing"), in which the United States Government (the "Government"), Cendant, and Shelton participated through counsel. At that time, Shelton's finances, his monthly budget, and the Proposed Stay were all discussed.

Based upon the instructions given at the Hearing, the Government and Cendant are seeking information surrounding the $7.5 million Shelton Children Irrevocable Trust (the "Trust") created in 1999 while Shelton was meeting with the Government surrounding his fraudulent crimes. As such, the Government caused a subpoena to be served on Jackson, requesting documentation regarding, among other things, the creation of the Trust as well as a deposition of Jackson. That deposition is currently scheduled for May 2, 2006 (originally May 1, 2006) (the "Jackson Deposition").

Jackson filed this Motion For Protective Order on April 20, 2006 ("Jackson's Motion") and an accompanying memorandum ("Jackson's Memo"). In Jackson's Motion and Memo, Jackson attempts to preclude Cendant from both participating in the Jackson Deposition itself and from viewing the documents produced or information obtained by the Government at such deposition. For reasons discussed more fully below, Cendant respectfully submits that precluding Cendant from participating in the Jackson Deposition and from viewing all

associated documents/transcripts contravenes the intent of restitution and the clear directives of this Court, and serves to further delay justice while Shelton continues to shield and dissipate his assets.

II. DISCUSSION: The Court Must Deny Jackson's Motion

    A. Jackson Misapplies The Law Surrounding Restitution.

Jackson argues that Cendant does not have the right to attend the Jackson Deposition. Jackson, however, misinterprets and manipulates the federal restitution statutes that are cited. To begin with, 18 U.S.C. §3771, the Crime Victims' Rights Act ("CVRA"), itself contains provisions that emphasize the fact that the victim of federal crimes, such as those committed by Shelton, is to be afforded deference and consideration. The sections of the CVRA cited in Jackson's Memo do not preclude the victim's participation in depositions related to the enforcement of restitution. Instead, Jackson's Memo conveniently leaves out two significant provisions:

    18 U.S.C. §3771 (a):

        (6) The right to full and timely restitution as provided in law.
        (7) The right to proceedings free from unreasonable delay.

This Court entered the Restitution Order almost nine months ago. To date, Cendant has not received "full and timely restitution." In fact, Shelton has not even complied with the $15 million lump sum payment provision contained in the Restitution Order. This Court noted that alarming fact at the Hearing when it clearly opined that, in regards to the $15 million lump sum payment order: "I don't think there's an issue as to whether the defendant [Shelton] has complied with the order. He hasn't complied with the order, period." (February 17, 2006 Hearing Transcript (attached hereto as Exhibit A)(the "Transcript), p. 5).

Specifically, Cendant has the right, under the CVRA, to enjoy proceedings "free from unreasonable delay." Again, it has been nine months since entry of the Restitution Order. During that period, Shelton and his allies have further hindered and delayed Cendant from being made whole from the crimes committed by Mr. Shelton.[1] Jackson's Motion is a further attempt to delay the proceedings and thwart both the words and the intent of the CVRA.[2]

The very purpose of the CVRA is, in fact, to "make crime victims full participants in the criminal justice system." Kenna v. United States District Court, 435 F.3d 1011 (9th Cir., 2006). Likewise, denying rights to the victim would be inconsistent with the purpose of the Mandatory Victims' Rights Act ("MVRA"), 18 U.S.C. §§ 3663 et seq., pursuant to which this Court ordered restitution. Circuit courts have emphasized that the MVRA's "intended beneficiaries are the victims, not the victimizers." United States v. Grimes, 173 F. 3d 634, 639 (7th Cir., 1999); See also, United States v. Perry, 360 F.3d 519, 530 (6th Cir., 2004) (MVRA legislative history reveals an "attempt to provide those who suffer the consequences of crime with some means of recouping the personal and financial losses") (internal citations omitted). Jackson's efforts to diminish the ability of Cendant to recoup its financial losses by way of

---

[1]     Although Jackson attempts to state that Cendant has somehow been "sitting on its hands" (Jackson's Memo, p. 8), the reality is that Cendant took action with this Court approximately one month after entry of the Restitution Order by way of the Motion For Aid In Execution (Doc. I.D. 1711) that it filed on September 20, 2005, along with a Motion For the Limited Release Of Presentence Report And Quarterly Financial Progress Reports (Doc. I.D. 1713) filed by Cendant that same day.

[2]     It should also be noted that Jackson applies antiquated legal standards in his motion. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) is cited in Jackson's Memo to attempt to bar Cendant from Jackson's Deposition. (Jackson's Memo, p. 5). While the law stated in that case was, at the time, the applicable law, that case is from 1973. Since then, and specifically with the passage of the CVRA and the MVRA, the law has significantly changed.

denying it access to relevant information would be inconsistent with the federal statutes that mandate restitution.

      B.      <u>The Court's Directions Inform That Cendant Is To Be Allowed Full Access.</u>

Additionally, it is the opinion of Cendant that this Court contemplated the victim being able to ascertain information that would be necessary to both maintain the status quo pending any stay of execution, and to protect its ability to collect on the Restitution Order. This is clear from the Hearing, the most recent time when all the parties appeared before the Court. Jackson's Motion should be seen merely as an attempt to circumvent the process established at that hearing.

      i.      <u>The Court Stated That Cendant Should Be Allowed To Ascertain Financial Information.</u>

At the Hearing, this Court emphasized the fact that the Government *and* Cendant could and should work together to gather information on Shelton's finances. In fact, the Court stressed that: "… the government and Cendant *need* to be given information…." (Transcript, p. 44) (emphasis added). Thus, the Court recognized the necessity of Cendant being informed. Furthermore, the Court stressed that in order for it (the Court itself) to be adequately informed, Cendant had to be given access to information. It contemplated that the Government and Cendant, working together, would gather information on Shelton's finances and inform the Court:

> …and I think to me it seems appropriate that I let the government and Cendant do the work on making sure that I have a correct analysis on that [Shelton's financial situation]…

(Transcript, p.16). If Cendant is not permitted to attend third-party depositions and to have access to financial information obtained as a result of them, it is not possible for Cendant to do the work the Court ordered.

Finally, at the Hearing, this Court gave every indication that Cendant would not be restricted in the slightest in its access to information or in its ability to ensure the maximum amount of the Restitution Order that can be obtained. It stated that: "… it is my intention to allow the parties to do what they need to do to protect their rights." (Transcript, p. 42). Cendant is attempting to follow the Court's directive in ascertaining financial information from Jackson, who appears to have knowledge of at least $7.5 million of Shelton's assets that may rightfully be due to Cendant.[3]

        ii.       <u>The Protective Order Is Merely A Continued Attempt to Delay.</u>

In addition, it is clear that the schedule established at the Hearing contemplated Cendant and the Government first ascertaining information as to Shelton's finances, and then informing the Court. At that point, the Court could make a decision on both the Proposed Stay and the question of an appropriate monthly budget for Shelton (who currently is permitted to spend $45,000.00 a month). The Court made it absolutely clear that, in order to decide on the Proposed Stay, it first had to hear information obtained by Cendant and the Government. It stated succinctly:

> In order to intelligently fashion a stay, I need to have input from
> the government and Cendant and from the defense as to what

---

[3] Although Cendant is aware of the $7.5 million Trust (with Jackson as Trustee), Jackson's Motion also cites to several other questionable locations where Shelton may be hiding assets. It mentions: SCIP Management Company, Inc., SCIP Partners, L.P., and a 2002 Shelton Family Trust. Without access to third-party information, Cendant is unable to either inform the Court as to the status of these entities or to ascertain any actions it can take to recoup their assets that may rightfully belong to Cendant.

> conditions should I put in place….[…….] I can't get the input from the government or Cendant until they get information concerning Mr. Shelton's finances.

(Transcript, p. 49). Thus, by causing more litigation and potentially suspending the Jackson Deposition, Jackson's Motion also seeks to delay this Court's decision on conditions of a stay and on curtailing Shelton's absurd spending allowance. It should thus be viewed as a delay tactic that obstructs justice by disregarding the procedures set forth and agreed-upon at a public hearing. In the meantime, Shelton's monthly budget remains at $45,000.00 and, as discussed below, he is permitted to spend money otherwise belonging to Cendant, the victim of his crimes, by way of the Restitution Order.

      iii.    <u>Further Delay Will Harm The Victim And Disturb The Status Quo.</u>

This Court also stressed its firm desire to maintain the status quo of Shelton's finances pending any appeal. (<u>See</u>, <u>e.g.</u>, Transcript, p. 14)("we ought to have the status quo maintained"). However, because Jackson's Motion serves to delay Cendant from obtaining necessary financial information, it gives more time for Shelton to dissipate his assets and shield them from becoming subject to enforcement of the Restitution Order. The questionable timing surrounding the creation of the Trust has already been mentioned. This Court is also now aware that Shelton recently transferred his 50% interest in a condominium in Vail, Colorado worth at least $1.4 million.[4] However, it has also been made clear to Cendant that Shelton continues to dissipate his assets and lessen the amount available to pay the victim of his crimes. For example, Shelton's expense reports indicate that he has paid <u>*over $55,000.00*</u>

---

[4] This Court, in fact, when discussing the transfer of Shelton's 50% interest in the condominium located in Vail, Colorado, stated that "I would not have permitted the transfer." (Transcript, p. 11).

in home repairs/help/yard and <u>*over $13,000.00*</u> in property taxes since September, 2005.[5] All this is for a home in Darien, Connecticut which is entirely in his wife's name.  In addition, it has come to Cendant's attention that Mr. Shelton has spent untold millions in pre-paid legal fees.  Given all of this, Cendant has well-founded reason to believe that any delay in proceedings will result in further serious disturbance of "the status quo."

In fact, the Court noted that had Cendant been afforded the opportunity to obtain such financial information and report to the Court sooner, transfer of Shelton's 50% interest in the Vail condominium might not have occurred.  It stated:

> And I make that decision [the decision that the Court needs to be the one who decides on transfers] with input and notice to, and input from the government and the victim, i.e. Cendant, the beneficiary of the restitution order, because I think had that been in place, we would not be in a situation where the government's lien [on the condominium] was filed subsequent to the transfer.

(Transcript, p. 12).  Thus, while Jackson assists Shelton in precluding Cendant from being able to give the Court input as to Shelton's financial information, Shelton is most likely further squandering the remainder of his money that is due and owing to Cendant under a valid restitution order.  This runs contrary to the purpose of restitution and to the Court's succinct directive.

Finally, if Cendant is not afforded the opportunity to take part in third-party depositions and information gathering, it is left essentially powerless.  Shelton, through Jackson, is attempting to ensure this.  This objective can be seen in the events of the past months.  At the Hearing, the Court stated that: "what I was thinking was authorizing the

---

[5]  Shelton has refused to provide Cendant with the most recent monthly expense reports. The amount of money expended on the home is surely *higher* than that listed herein.

government and Cendant to get the information directly from Mr. Shelton." (Transcript, p. 48). Attorneys for Shelton gave every indication that this would occur.  Cendant dutifully, on February 21, 2006, sent document requests to Shelton.  It is undisputed that Shelton, via his attorneys, assured Cendant that its attorneys would receive the majority of such information by way of a letter dated February 28, 2006.  The February 21, 2006 document requests even particularly sought information surrounding creation of the Trust.  However, Cendant has not received any of the requested documents and is thus, absent third-party discovery, left powerless to ascertain information to either inform the Court or ensure maintenance of the status quo.

III.    CONCLUSION

Accordingly, for all the above-stated reasons, Cendant Corporation, as the victim, respectfully requests that this Court deny Jackson's Motion and permit Cendant to both participate in Jackson's Deposition and to obtain any/all information given or obtained in conjunction therewith.

MOVANT- CENDANT CORPORATION

By____/s/ Robert E. Kaelin____
　　Francis J. Brady – ct04296
　　fbrady@murthalaw.com
　　Robert E. Kaelin - ct11631
　　rkaelin@murthalaw.com
Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut  06103-3469
Telephone:  (860) 240-6000
Fax:  (860) 240-6150
Its Attorneys

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to the following individuals on April 26, 2006 as noted below:

Counsel For The U.S. Government

Via Facsimile and U.S. Mail
John G. Silbermann, Esq.
James McMahon, Esq.
Richard J. Schechter, Esq.
Norman Gross, Esq.
United States Attorney's Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07101

Counsel For E. Kirk Shelton
Via Facsimile and U.S. Mail
Hope C. Seeley, Esq.
Hubert Santos, Esq.
Santos & Seeley, PC
51 Russ Street
Hartford, CT 06106

Via Facsimile and U.S. Mail
Law Offices of Thomas P. Puccio
Thomas P. Puccio, Esq.
230 Park Avenue, Suite 301
New York, NY 10172

Richard Schaeffer, Esq.
Andrew Kanter, Esq.
Dornbush Schaeffer Strongin & Venaglia, LLP
747 Third Avenue
New York, NY  10017

Counsel For Robin D. Jackson, Trustee
Via Facsimile and U.S. Mail
Jeremy A. Mellitz, Esq.
Withers Bergman LLP
157 Church Street, P.O. Box 426
New Haven, CT  06510

　　　　　　　/s/ Robert E. Kaelin
Robert E. Kaelin – ct11631