UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
|     Plaintiff, : | Criminal No. 3:02 CR 00264 (AWT) |
| v. : | |
| WALTER A. FORBES and : | |
| E. KIRK SHELTON, : | |
|     Defendants. : | MARCH 12, 2007 |

**CENDANT CORPORATION'S REPLY IN FURTHER SUPPORT
OF ITS MOTION TO MODIFY THE COURT'S
AUGUST 12, 2005 RESTITUTION ORDER AND AUGUST 1, 2006 ORDER**

Cendant Corporation ("Cendant") respectfully submits this Reply in further support of its Motion to Modify the Court's August 12, 2005 Restitution Order and August 1, 2006 Order (the "Motion") (Doc. No. 2650) and in response to the Memorandum in Opposition to the Motion ("Opposition Memorandum") filed by E. Kirk Shelton ("Mr. Shelton") (Doc. No. 2658).

## INTRODUCTION

Mr. Shelton's Opposition Memorandum attempts to paint a sad picture of an unfortunate man pursued by a heartless corporation in an effort to obfuscate the only issue presented by the Motion. In a few short pages, Mr. Shelton prefers to outline the litigation he is currently facing without acknowledging that they were caused by the crimes for which he was convicted; mention his last (and long) shot at vacating his conviction through a petition

for certiorari to the United States Supreme Court; and portray himself as a victim of a heartless adversary, namely Cendant, which will stop at nothing until he is financially ruined. Nowhere does Mr. Shelton mention how his crimes caused billions of dollars in damages to his principal victim, Cendant, or that Cendant has yet to recover a penny from him 26 months after his conviction.

Consistent with his demonstrated lack of remorse or acceptance of responsibility for his crimes, Mr. Shelton fails to address in any meaningful manner the substance of the Motion: should Mr. Shelton be ordered to account for the numerous and often large transfers of money he made to his many lawyers and whether there is any unapplied money in the hands or under the control of those lawyers which should be deposited with the Court Registry. (See Motion at 5.) Despite his conviction on all 12 counts with which he was charged and his incarceration, Mr. Shelton still acts as if he, and not Cendant, is the victim here. Mr. Shelton actually asks this Court to rebuke Cendant for seeking to enforce its rights granted to it in the Restitution Order. The prosecution of Mr. Shelton wrought by his criminal acts does not make him a victim and Cendant vindictive.[1]

Mr. Shelton's lame characterizations aside, the Court should note that Cendant advanced approximately $22 million in defense costs to Shelton's lawyers over the last nine years after receiving Mr. Shelton's written undertakings to repay such sums and a May 2004 written representation that he had and would maintain sufficient funds to repay such sums. (See Affidavit of John H. Carley "Carley Aff" attached hereto as Exhibit 1, ¶¶ 3-4 and

---

[1] In error, Cendant filed with the Court an exhibit to its Motion that contained account numbers for certain of Mr. Shelton's financial accounts. That error was immediately corrected by filing a redacted exhibit.

Exhibit A thereto.) As we now know, both representations from Mr. Shelton were totally untrue. As we also now know, almost immediately after the fraud was discovered in 1998, Mr. Shelton began seeking to transfer assets beyond the reach of any potential creditor and had no intention of maintaining assets sufficient to repay the money Cendant advanced for his defense.

Rather, the fact is that Mr. Shelton transferred more than $15 million to many of those same lawyers Cendant was paying. (See Motion Ex. A.) This sum includes $4 million transferred by Mr. Shelton directly to his criminal trial counsel, Thomas P. Puccio, Esq., two days after Mr. Shelton was convicted on January 3, 2005 and conveniently before he reported his assets and liabilities to the probation office despite his obligation to do so. (See id.) This $4 million transfer is even more suspicious because Mr. Puccio received $3.4 million of the $22 million in defense costs Cendant advanced on Mr. Shelton's behalf (see Carley Aff. ¶ 7), directly from Cendant for services rendered through September 2004. After the case went to the jury on November 5, 2004, Mr. Puccio's role in representing Mr. Shelton was substantially reduced.[2] This large transfer to Mr. Puccio two days after the jury's verdict is even harder to understand in the absence of any explanation by Shelton about why it was done or how the funds were spent. Instead, Mr. Shelton offers only the affidavit of Andrew Kanter, one of his lawyers, for the proposition that none of his attorneys, including Mr. Puccio, possess any "retainers" or "pre-paid legal fees." As discussed below, Mr. Kanter's statements, which amount to nothing more than conclusory, inadmissible hearsay, raise even more questions

---

[2] The bills Mr. Puccio submitted for November and December 2004, while the jury deliberated, totaled $435,000. Cendant did not pay those bills, which in any case are a far cry from the $4 million Shelton transferred to Mr. Puccio on January 3, 2005. (Carley Aff. ¶ 7.)

about these transfers by Mr. Shelton and how the large sums of money transferred were "spent." These questions should be answered. Mr. Shelton should be required to disclose <u>all</u> the details behind each transfer, including how the money was applied or otherwise spent or disbursed, and any money left in the possession or control of any of Mr. Shelton's lawyers should be immediately deposited with the Court Registry for the benefit of Cendant.

## ARGUMENT

Mr. Shelton's Opposition Memorandum fails to offer any viable reason why this Motion should be denied. First, the affidavit of Andrew Kanter, recounting conversations he had with some of Mr. Shelton lawyers (see Kanter Aff. ¶¶ 4, 5), contains inadmissible hearsay and conclusory statements that should be ignored (or stricken) by the Court. See Zubrow v. Solvay Pharmaceuticals, No. 03CV1929, 2006 WL 288381, at *6 (D. Conn. Feb. 7, 2006) (striking portions of party's affidavit containing inadmissible hearsay and conclusory statements); Hollander v. American Cyanamid Co., 999 F. Supp. 252, 255-56 (D. Conn. 1998) (same).

Second, even if considered by the Court, Mr. Kanter's affidavit raises more questions than it answers. Why did Mr. Shelton transfer $4.6 million to Mr. Puccio at <u>the same time</u> that Cendant was paying Mr. Puccio's bills?[3] Why was the bulk of that money ($4 million)

---

[3] Pursuant to Delaware law and Cendant's by-laws, Mr. Shelton was entitled to advancement of legal fees and expenses after signing an undertaking promising to repay such monies if he were ultimately found not to be entitled to indemnification. As stated above, Cendant advanced payment to Mr. Puccio, on behalf of Mr. Shelton, of over $3.4 million <u>prior</u> to the time Mr. Shelton transferred to Mr. Puccio an additional $4 million. (See Carley Aff. ¶ 7.) It is also worth noting that, on May 7, 2004, Mr. Shelton -- through Mr. Kanter's firm -- represented to Cendant in writing that he "continue[d] to possess and will maintain accessible assets sufficient to repay the monies advanced to him" by Cendant for the defense of the civil and criminal cases lodged against him. (See Carley Aff. Ex. A.)

(cont'd)

transferred to Mr. Puccio two days <u>after</u> Mr. Shelton was convicted and Mr. Puccio's role in the criminal proceedings was reduced significantly? What happened to those funds? Similar questions can be asked about the transfers made by Mr. Shelton to Mr. Kanter's firm, Dornbush Schaeffer Strongin & Vanaglia LLP (totaling more than $660,000), Day Berry & Howard (more than $576,000) and Wilmer Cutler & Pickering (more than $1.1 million), most of which were completed at the same time Cendant was advancing Mr. Shelton's defense costs and remitting payment directly to those firms. (<u>See</u> Motion Ex. A.)

Given the timing and amounts of these transfers by Mr. Shelton, it is entirely appropriate to conclude that they represented some sort of pre-paid legal fees, retainers or other types of deposits that have yet to be depleted or disbursed.[4] And since Mr. Shelton has failed to offer any reason for the transfers, he should be required, at a minimum, to provide the Court an explanation for each transfer, something Mr. Shelton should be more than happy to provide if the transfers were legitimate and the monies were actually spent on legal fees incurred but somehow not covered by the $22 million in defense costs Cendant advanced on his behalf. (<u>See</u> Carley Aff. ¶ 4.) Similarly, Mr. Puccio, Mr. Kanter's firm and each of Mr. Shelton's other lawyers should be required, at a minimum, to detail how the money

---

*(cont'd from previous page)*
Despite this representation, and due to significant fraudulent asset transfers Mr. Shelton has made beginning in 1998 (including significant transfers to his attorneys, family and family-owned businesses), Mr. Shelton now claims he has no money to repay the $22 million he owes to Cendant.

[4] By using the terms "retainer" and "pre-paid legal expenses" in its Motion, Cendant in no way limited the type of money it was seeking to be placed in the Court Registry. Indeed, if any of Mr. Shelton's lawyers hold money on account or investments on behalf of Mr. Shelton, regardless of what they are called and how they are accounted for, those monies and/or investments should be turned over to the Court's Registry for distribution to Cendant.

received directly from Mr. Shelton was spent (i.e., for what services and on what dates) and whether any money remains in the possession or under their control. Only then can this Court be sure that no money is available for Cendant.

Finally, although Mr. Shelton states that he intends to ask the United States Supreme Court for a writ of certiorari and that he is still a party to civil litigation arising out of his crimes and will be deposed later this year, his need to expend the amount of money he previously has spent on legal fees is in the past. Indeed, a petition for a writ of certiorari will require relatively limited expense (and the likelihood that a writ will be issued is extremely low).[5] Thus, his need for criminal representation is essentially concluded.

Likewise, given Mr. Shelton's conviction and the preclusive effect of the final criminal judgment, Mr. Shelton has no defense to any of the civil litigation pending in the District of New Jersey. Thus, aside from retaining counsel for his deposition, any additional fees spent defending those litigations is unnecessary and in all events insubstantial. Mr. Shelton's defense of the civil actions filed in this Court by Cendant and the government will not require the "'enormous'" legal fees Mr. Shelton's opposition contemplates. (See Opposition Memorandum at 1-2.) Each of the cases are focused on specific transfers alleged to be fraudulent and discovery will be limited. Indeed, most of what Mr. Shelton complains about (see id. at 2), does not even apply to him given the stay in place as to him.[6] If Mr. Shelton and

---

[5] The Supreme Court recently denied certiorari to Bernie Ebbers who raised the same issue Shelton can be expected to raise, the conscious avoidance charge. See Justices Turn Down Appeal by Ebbers, N.Y. Times, Mar. 6, 2007, at C2.

[6] The Prejudgment Remedy to which Mr. Shelton refers to (see Opposition Memorandum at 2), applies primarily to Amy Shelton and the Children's Trust, not Kirk Shelton who is more or less a nominal defendant, and which is evident by the fact the primary parties who
(cont'd)

-6-

his co-defendants in the civil suit are truly interested in a prompt resolution of these claims, the ultimate determination of Cendant's claims can come quickly and at limited expense to all concerned. Accordingly, Mr. Shelton should be compelled to account for each of the transfers he made to his lawyers and to turn over to the Court Registry all remaining retainers, pre-paid legal fees and any other money and/or assets held or controlled by any of his lawyers.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Motion in all respects.

MOVANT - CENDANT CORPORATION

By _____
Robert E. Kaelin - ct11631
rkaelin@murthalaw.com

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone:   (860) 240-6000
Facsimile:   (860) 240-6150
Its Attorneys

---

*(cont'd from previous page)*
have been contesting the Prejudgment Remedy are Amy Shelton and the Trustee of the Children's Trust.

CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2007, a copy of foregoing Cendant Corporation's Reply in Further Support of its Motion to Modify the Court's August 12, 2005 Restitution Order and August 1, 2006 Order was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Robert E. Kaelin – ct11631

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103
Telephone:    (860) 240-6000
Facsimile:     (860) 240-6150
Email: rkaelin@murthalaw.com

941334v1