# EXHIBIT C

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            No. 3:02CR264(AWT)

      vs.

E. KIRK SHELTON,
                         HARTFORD, CONNECTICUT
              Defendant     JULY 18, 2007

- - - - - - - - - - - - - - - - - x


**TELEPHONIC STATUS CONFERENCE**




BEFORE:

       **HON. ALVIN W. THOMPSON, U.S.D.J**

Corinna F. Thompson, RPR
Official Court Reporter

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

```
 1   APPEARANCES:

 2
         FOR THE GOVERNMENT:
 3
             U.S. DEPARTMENT OF JUSTICE
 4               970 Broad Street, Suite 700
                 Newark, New Jersey 07101
 5           BY: JOHN G. SILBERMANN, SPECIAL ATTORNEY

 6
         FOR THE DEFENDANT:
 7
             THOMAS P. PUCCIO, ESQUIRE
 8               230 Park Avenue
                 New York, NY   10169
 9
             DORNBUSH, SCHAEFFER, STRONGIN & VENAGLIA
10               747 Third Avenue
                 New York, New York  10017
11           BY:  RICHARD J. SCHAEFFER, ESQUIRE
                  ANDREW KANTER, ESQUIRE
12

13      FOR CENDANT CORPORATION:

14          MURTHA CULLINA LLP
                CityPlace I   185 Asylum Street
15              Hartford, Connecticut   06103
            BY:  ROBERT E. KAELIN, ESQUIRE
16               FRANCIS J. BRADY, ESQUIRE

17          STERN & KILCULLEN
                75 Livingston Avenue
18              Roseland, New Jersey   07068
            BY:  EDWARD S. NATHAN, ESQUIRE
19

20      FOR ROBIN JACKSON, Trustee:

21          WITHERS BERGMAN
                157 Church Street
22              New Haven, Connecticut   06510
            BY:  JOHN FARNSWORTH, ESQUIRE
23

24

25
```

```
1                        8:35 AM

2           THE COURT:  Good morning.  This is Judge

3    Thompson.

4           UNIDENTIFIED SPEAKERS:  Good morning, Your

5    Honor.

6           THE COURT:  Could I ask people to identify

7    themselves for the record, please.

8           MR. SILBERMANN:  John Silbermann for the United

9    States, Your Honor.  Good morning.

10          MR. KAELIN:  Robert Kaelin of Murtha Cullina on

11   behalf of Cendant Corporation.

12          MR. BRADY:  Also, Your Honor, Francis Brady on

13   behalf of Cendant.

14          MR. NATHAN:  Ed Nathan on behalf of Cendant.

15          MR. FARNSWORTH:  John Farnsworth from Withers

16   Bergman for Robin Jackson.

17          MR. PUCCIO:  Tom Puccio for Mr. Shelton.  Good

18   morning, Your Honor.

19          THE COURT:  Good morning.

20          MR. SCHAEFFER:  Richard Schaeffer and Andrew

21   Kanter on behalf of Mr. Shelton.  Good morning, Your

22   Honor.

23          THE COURT:  Good morning.

24          Is that everybody?

25          Okay.
```

1           Let me frame for you where I see us as being

2    with motion from Cendant and the supporting motion from

3    the government.

4           When I entered my restitution order, it provided

5    at page 3 that the government, or the victim, or the

6    offender may petition the Court at any time to modify the

7    restitution order as appropriate in view of a change of

8    the economic circumstances of the offender.

9           The order re: motion for stay of order of

10   restitution provided two things that are pertinent to our

11   discussion:

12          One was it provided at page 5 for payment of

13   bills from Mr. Shelton's attorneys that could not be

14   covered by amounts that he had prepaid or by a payment on

15   account to his attorneys.

16          And second, at page 8 it provided that if it

17   appears at any time that the defendant has the ability to

18   make an additional lump sum payment into the Court

19   Registry, the government and/or Cendant Corporation may

20   move for an order requiring him to do so.

21          That is consistent with the language in the

22   statute in Section 3664(k), and I think the language is

23   important and people did not cite it so I'm going to put

24   it on the record.

25          "A restitution order shall provide that the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    defendant shall notify the Court and the Attorney General

2    of any material change in the defendant's economic

3    circumstances that might affect the defendant's ability to

4    pay restitution."

5            It then goes on to recite that "the Court or the

6    Court on the motion of any party, including the victim,

7    may adjust the payment schedule or require immediate

8    payment in full as the interest of justice require."

9            I have here motions from Cendant and the

10   government which point to payments made by Mr. Shelton for

11   attorney's fees over a number of years and suggest that

12   there are sums -- well, suggest that, based on what

13   Cendant and the government see, they have -- actually,

14   they don't suggest; they state that what the government

15   and Cendant see, they believe that there are retainers or

16   prepaid legal fees still held by Mr. Shelton's counsel.

17           I have a response on behalf of Mr. Shelton,

18   which I believe states that other than amounts held by I

19   believe it's Mr. Shelton's appellate counsel, there are no

20   balances on the retainers or prepaid legal fees.  And with

21   respect to his appellate counsel, I believe the amount

22   that is held is fairly small and it is much smaller than

23   the amount that he owes to counsel for services already

24   rendered.

25           Is that an accurate statement of where we are,

```
 1   Mr. Kaelin?

 2               MR. KAELIN:  Yes, I think so, Your Honor.

 3               THE COURT:  Mr. Silbermann?

 4               MR. SILBERMANN:  I have not seen the response,

 5   Your Honor, but the government's position I think you

 6   stated accurately, yes.

 7               THE COURT:  And Mr. Kanter?

 8               MR. KANTOR:  Yes, Your Honor, that's correct.

 9               MR. KAELIN:  And Your Honor, you do have our

10   reply to the defendant Kirk Shelton's opposition however,

11   right?

12               THE COURT:  Is that Mr. Kaelin?

13               MR. KAELIN:  Yes.

14               THE COURT:  Yes, I do.

15               MR. SCHAEFFER:  Richard Schaeffer speaking.

16               The government says in its motion for joinder --

17   and I'm quoting from paragraph 4 just a sentence.  "As

18   with Cendant, the government firmly believes that some of

19   these attorneys may be holding substantial amounts of

20   Mr. Shelton's money available to satisfy the restitution

21   order and there must be an accounting of the fees that

22   have been paid."

23               I say that because, just to set the proper

24   context -- and I believe Your Honor's summary was a very

25   accurate one -- this is a belief that somebody may be
```

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1  holding money as compared with statements from lawyers and

2  officers of the court who say that they are holding no

3  money.

4           THE COURT:  I understood that.

5           MR. SCHAEFFER:  Thank you, Your Honor.

6           MR. SILBERMANN:  Your Honor, if I may, I think

7  the way to read both of those -- they are both accurate

8  statements -- but I think --

9           THE COURT:  Is that Mr. Silbermann?

10          MR. SILBERMANN:  Yes, Your Honor.  I'm sorry.

11          I'm concerned as to I think what I see often in

12  some of these cases, in particular Mr. Shelton, is that

13  one firm will hold a very large retainer and will

14  subcontract out to other firms, for example appellate

15  work.  So I know that Mr. Schaeffer's firm had a large

16  retainer and I believe Mr. Schaeffer then subcontracted

17  out other attorneys and paid their fees directly out of

18  that escrow account, out of that attorney's trust account.

19          So I'm curious if any of those subcontracts --

20  just to make sure that all of those subcontracts had to do

21  with representation of Mr. Shelton only and not

22  Mr. Shelton's transferees that are defendants in some of

23  the other so-called transfer cases, because I know those

24  transferees in those other actions before Your Honor are

25  getting their legal fees paid currently, even though all

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    of their accounts that we know of have been frozen.

2         THE COURT:  Let me tell you where I think we

3    should go in light of the representations that have been

4    made.

5         The representations that have been made to me

6    are that there are no fees held.  And I really -- I mean,

7    I would have expected -- the language is fees or --

8    prepaid fees or retainers.  But given that everybody knows

9    what we're really talking about, I'm really interpreting

10   that as there are really no amounts or other assets held

11   on behalf of Mr. Shelton by any of his current or former

12   legal counsel.

13        I believe it's appropriate that I order

14   Mr. Shelton to -- first of all, that I order him to

15   deposit in the Court Registry within a short period of

16   time, a week plus or so, any assets that are held by his

17   current or former legal counsel.  And I would expect that

18   there would be nothing deposited based on the

19   representations that have been made.

20        Also, given the fact that I can't tell from

21   reading the papers -- well, first of all, Cendant states

22   that its paid amounts to counsel on behalf of Mr. Shelton,

23   but I don't recall seeing to whom or how much.  I saw how

24   much.  I saw the aggregate amount.  I saw it was six law

25   firms, I think.  But I really couldn't match that up with

1   the amounts that are in the chart which I think is

2   Exhibit A to I think it's Cendant's motion.

3          I look at some of the payments, and having sat

4   through a very long trial, I can see how -- well, just

5   giving you an example, Milbank Tweed; I looked at the

6   dates of the payments, I looked at the trial.  I don't

7   know -- I don't know how much money Cendant gave to

8   Milbank Tweed, so I have no context for reaching any

9   conclusions about this at all.  So I'm going to need

10  information.

11         The way I'm going to get that information is:

12         Number one, because I've gotten representations

13  that there are no prepaid legal fees or retainers held by

14  any of Mr. Shelton's current or former counsel, I'm going

15  to order him to deposit anything that I think should be

16  covered by that representation in the Court Registry.

17         And second, I am going to order him to obtain an

18  accounting.

19         I know that Mr. Kanter talked to people and he's

20  signed an affidavit, but I want statements from the people

21  who receive legal fees from Mr. Shelton, because that is

22  very much tied into a provision that I put into my

23  restitution order carving out an ability to pay his legal

24  fees.

25         One second.  I just need to check one other

1    thing.

2                    (Pause)

3            THE COURT:  And I think that addresses the first

4    two paragraphs and the way I plan to address them in terms

5    of the relief that Cendant seeks in its motion.

6            The government seeks one additional type of

7    relief in its motion and we can talk about that later.

8            Who was that that wanted to speak?

9            MR. KAELIN:  Your Honor, that's Attorney Kaelin.

10           I wanted clarification on your second point.

11   When you talk about -- and it would be our request -- an

12   accounting from each of the firms, and the Exhibit A to

13   our motion does identify them.  We've identified who,

14   we've identified when we believed they received the money.

15           Is it more than just an affidavit that says

16   Milbank no longer holds any money on behalf of

17   Mr. Shelton, or rather what we've been requesting -- and

18   we don't think it's onerous -- is the accounting; that is,

19   show us -- if you spent that much, just show us each

20   month's invoice showing that truly that's how the

21   depletion took place, because otherwise our concern is --

22   it's a concern; not that we have any true foundation for

23   it, but that's what we're seeking in aid of execution

24   is -- did someone in fact pay a large amount to a third

25   party or, at the direction of their client, put money

1    somewhere else.

2            THE COURT:  I guess, Mr. Kaelin -- let me ask

3    you this question:

4            If what you're concerned about is any

5    payments -- well, let me rephrase it.

6            It doesn't sound to me as though you're

7    concerned about payments that went to cover services

8    rendered by the firm itself.

9            MR. KAELIN:  That's correct.

10           THE COURT:  It wouldn't seem appropriate to

11   burden people with having to document all of that.

12           MR. KAELIN:  Well, it's a monthly invoice.  I

13   mean, looking at Milbank, for example, they got paid on a

14   monthly basis some very large sums, presumably on a

15   monthly invoice for legal services rendered for 500 and X

16   thousand dollars.

17           As long as we saw each month's invoice that ties

18   to the depletion of the money, I don't think that's that

19   burdensome.

20           MR. PUCCIO:  Your Honor, may I be heard briefly?

21           THE COURT:  Uh-huh.

22           MR. PUCCIO:  Judge, I think we've come a long

23   way from the standard that I learned to operate in these

24   situations, which is that in order to make applications

25   like this, there has to be -- an application has to be

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1  made in good faith.  It's not a fishing expedition.

2           As far as the attorneys on the phone are

3  concerned, I don't question their good faith for one

4  moment, but this is getting really ridiculous.

5           For instance, without going into a long,

6  involved discussion about this, I was paid substantially

7  by Cendant.  Since they are the client, I assume they have

8  records of how much they paid me.

9           There came a point in time, Your Honor, I

10  believe it was after August of 2004 while the trial was

11  still in progress, that Cendant no longer was paying the

12  bills.

13           THE COURT:  My understanding -- my impression,

14  if I'm remembering correctly, is it may have been through

15  September 30th?

16           MR. PUCCIO:  No.  They paid through

17  August 30th.  The check may have arrived after that.  So

18  for the months of September, October, November and

19  December, as per my standing instructions -- and this is

20  while the litigation was ongoing -- I sent my bills as

21  usual to Mr. Carley, the general counsel of Cendant, and I

22  continued to do so, Judge, through May, my bills of May of

23  the following year.  And then I frankly told my assistant

24  after they had ignored at that point nine bills,

25  approaching a couple million dollars in legal fees, they

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1  weren't paying it.  I told my assistant just to stop

2  sending the bills.  Of course, we maintained bills all the

3  way until Mr. Shelton surrendered.  As Your Honor may

4  recall, it was work that continued to be done all the way

5  through that, even up to -- the government was making

6  application actually up to the day he surrendered.

7          So there are substantial -- as Your Honor can

8  imagine, in addition to my fees, there are a number of

9  other law firms that received money from that retainer

10 that's referred to in the papers that the parties have

11 submitted.  That's long since been exhausted.

12         My firm is owed substantial sums at this point.

13 Milbank is owed substantial sums at this point.

14 Mr. Schaeffer's firm.  We continue to work on the case.

15 Mr. Schaeffer is really handling the labor here, but I'm

16 involved as recently as a couple of weeks ago on issues

17 relating to Mr. Shelton being deposed at the institution

18 where he's incarcerated and legal issues implicated by

19 that.  This goes on and on and on.

20         I really think the way matters, in my experience

21 and normally are handled, is counsel for the government

22 and for Cendant would contact the lawyers and ask them

23 what the situation is rather than involving the Court.

24         You have an affidavit from Mr. Kanter.  I guess

25 it's an easy enough thing to get affidavits from all the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

```
 1   lawyers.  But an accounting is clearly, I would

 2   respectfully submit, Your Honor, is clearly uncalled for

 3   here.  At this point it's insulting, considering, by the

 4   way, that their own client hasn't told them about nine

 5   months of my bills --

 6            (Pause)

 7            THE COURT:  They are doing replacement of brick

 8   work.

 9            MR. PUCCIO:  The only point I'm trying to

10   make -- and I'm sure it's embarrassing for counsel for

11   Cendant -- submit a set of papers like they submitted and

12   their client not to tell them there were almost a couple

13   million dollars of legal fee bills from my firm that they

14   were aware of that clearly would have been deducted from

15   that $4 million escrow payment, whatever you want to call

16   it, is really very sad performance on the client's part.

17            So I would suggest --

18            THE COURT:  Let me -- I appreciate what you're

19   saying, Mr. Puccio.

20            I think there's been nothing in this case that's

21   been simple.

22            MR. PUCCIO:  I'll second that, Your Honor.

23            THE COURT:  And that's an understatement.  But I

24   have -- I will feel more comfortable, given the way things

25   have unfolded, if I do get some sort of an accounting.
```

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    I'm not interested in every payment that went to cover

2    services rendered by Milbank Tweed.  We'll take Milbank as

3    an example.  But if there are disbursements to other

4    firms, I would want to know that, because that --

5              MR. PUCCIO:  When you say, Your Honor,

6    disbursements --

7              THE COURT:  To another firm.  Because -- what I

8    allowed in my order was payment of Mr. Shelton's legal

9    expenses.

10             MR. PUCCIO:  Right.

11             THE COURT:  That's what I allowed.  And to the

12   extent there's payment that didn't go to pay Mr. Shelton's

13   legal expenses, I want to know that.

14             MR. PUCCIO:  Judge, I can assure you that that

15   did not happen.

16             THE COURT:  Well, that's fine.  And I think --

17             MR. PUCCIO:  There's no way that that happened.

18   Shelton's money was used to pay his legal cause.  There's

19   no question about that.

20             THE COURT:  I just want some -- I want assurance

21   on that because, as there have been a couple of other

22   issues where a -- in part it's because Mr. Shelton's

23   finances are so complex, and in part it's because he

24   structures things in a way that is unusual because his

25   finances are so complex -- I want to have things

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    documented so that I feel comfortable with respect to the

2    language I put in the restitution order and I'm

3    comfortable I don't need to do anything.

4         MR. PUCCIO:  Judge, would it be -- Cendant in my

5    case, my recollection is, by the way, that Shelton --

6    sorry.  Strike that, Your Honor -- that Cendant refused to

7    pay Milbank.  They made a decision they are only going to

8    pay my firm.  So Mr. Shelton paid Milbank directly.  It's

9    very onerous.  I'm speaking for Milbank.  For them to go

10   back -- they are owed money right now.  They still send me

11   letters about money they are owed.  So there is nothing

12   there.

13        Would it be sufficient to submit an affidavit

14   saying -- I can -- obviously his appellate counsel was

15   paid out of that.

16        THE COURT:  I know how much work the appellate

17   counsel put in.

18        MR. PUCCIO:  A tremendous amount of work.

19        So Your Honor, I would suggest to you that we

20   obtain from the various parties here affidavits saying, I

21   received money from Mr. Shelton for legal fees, it was all

22   expended in his behalf, and we're holding no retainer.

23   But to go into accountings of all of this, it seems to me,

24   exact numbers and everything, is onerous.  Not impossible,

25   but onerous.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

```
 1            THE COURT:  What I will do is I will give you
 2    the opportunity to work with counsel for the government
 3    and Cendant to see if you can craft an affidavit that you
 4    would find acceptable.  And if not, then you all can each
 5    send in, by tomorrow morning, what you would like that
 6    part of the order to say with respect to the accounting
 7    and I will craft something based on your submissions.
 8            MR. PUCCIO:  Okay.
 9            MR. SILBERMANN:  Your Honor, this is John
10    Silbermann.  Attorney Kaelin and myself are both on
11    vacation right now.
12            I have to say, Your Honor, I think you were
13    right on the money with your ruling before Mr. Puccio
14    spoke just a minute ago.  I am very concerned -- you know,
15    if it turns out that it's not the case, then that's great.
16    But I think that the Court is cognizant, as all of us are
17    on the plaintiffs' side of things, that attorneys, so many
18    law firms and attorneys have been retained and appeared on
19    behalf of Mr. Shelton and all of his various entities, his
20    trusts, his business, the SCIP Partners, SCIP Management,
21    his transferees, his wife, what have you.  I have been
22    told personally by counsel for some of those individuals
23    and entities that, yes, they are having their fees paid
24    currently and no, it is not from the client themselves; it
25    is from, quote/unquote, friends and family, friends of you
```

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    name it.  It's got to be Mr. Shelton, but friends of

2    Mrs. Shelton that can afford to pay her legal fees right

3    now, which are substantial because their filings are

4    substantial, cannot just be someone whose unrelated to

5    Mr. Shelton.

6              THE COURT:  But that does not mean it's the law

7    firms who --

8              MR. SILBERMANN:  Oh, I agree, Your Honor.  I

9    want to rule out that possibility.  I can tell you for the

10   record -- and Mr. Schaeffer will agree -- that the

11   Schaeffer firm had an escrow account that had some

12   significant balance all the way through calendar '05 I

13   believe because they had been issuing 1099 interest stubs

14   every tax year to show the interest earned on the

15   principal that they had been holding through 12/31/05.

16             We have not yet seen the 1099 interest

17   statements that would be issued from the bank holding the

18   escrow for the Schaeffer firm for '06, but we have

19   12/31/05.  So if there's interest paid on substantial

20   figures, that means that the principal has to be

21   substantial.

22             THE COURT:  It seems to me you all should be

23   able to work out some form of affidavit that you can find

24   mutually acceptable that would make the burden on the

25   firms as little as possible.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

```
1              You and Mr. Kaelin are on vacation.  Is tomorrow

2    not -- I could have you send it in next week if you

3    prefer.

4              MR. SILBERMANN:  Next week would be fine, Your

5    Honor.

6              THE COURT:  Today is the Wednesday.  Could you

7    have it in by next Wednesday?  Will Mr. Puccio and

8    Mr. Kanter be around?

9              MR. PUCCIO:  Your Honor, we'd be happy to comply

10   with Your Honor's schedule.

11             THE COURT:  I'd like it Wednesday morning,

12   because I'm going to be -- I'll be here next week but not

13   part of the following week.

14             MR. PUCCIO:  We will confer with counsel for

15   Cendant and the government and try to come up with an

16   affidavit.

17             THE COURT:  And any amounts or other assets,

18   just so you know, the date I was picking to have that

19   deposited was going to be -- actually, when I say

20   Wednesday, I'd like to have it Wednesday by 9:00 a.m.

21             MR. KAELIN:  Close of business Tuesday, Your

22   Honor?

23             THE COURT:  Close of business is different for

24   different people.  9:00 a.m. Wednesday morning.

25             MR. KAELIN:  That's the 25th, Your Honor,
```

1    correct?

2              THE COURT:  Yes.

3              MR. KAELIN:  That would be the affidavit

4    submitted or what we would agree to by then?

5              THE COURT:  Either something you've agreed to or

6    your separate submissions.

7              MR. KAELIN:  Your Honor --

8              MR. PUCCIO:  Judge, on that, just a

9    clarification.

10             THE COURT:  With respect to the accounting issue

11   or the request for an accounting in Paragraph 2 of

12   Cendant's motion.

13             MR. PUCCIO:  Your Honor, just a clarification.

14   If we can resolve this with the government -- and I hope

15   we can, although in light of the client here I'm not sure.

16   I don't mean the U.S. government.  I'm not sure that's

17   going to happen.  That would mean that I would have to

18   go -- somebody would have to go around to Mr. Santos --

19   he's not holding any money either, Judge, but he was paid

20   by Mr. Shelton.

21             THE COURT:  Right.

22             MR. PUCCIO:  One would have to go to Mr. Nields

23   in Washington.  There are a lot of people.  This is a big

24   project.

25             MR. BRADY:  Your Honor, this is Francis Brady.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

```
1              THE COURT:  Excuse me.

2              MR. BRADY:  We're paring back here, and if all

3    we're asking, Your Honor is asking counsel to do is to

4    come up with a proposal that if the counsel on the phone

5    can agree, it will presumably be more modest than what

6    Your Honor had intended to order initially.

7              THE COURT:  Mr. Brady --

8              MR. BRADY:  Getting back to Your Honor by

9    9:00 a.m. Wednesday seems to me very appropriate.  Either

10   Mr. Puccio on his side will submit one proposal and

11   Cendant and the government will submit another proposal or

12   a joint proposal.  In any event, it should assist the

13   Court in issuing a definitive order that could bind all

14   counsel.

15             THE COURT:  Just so we're clear, in the

16   context -- one of our witnesses in the case referred to

17   his division or unit of the company as the, I think the

18   nit on the tush of an elephant.  That's what this is.

19   This isn't a significant burden.  In the context of the

20   case, it's not.

21             I would require -- the order I issue would

22   require any amounts to be -- and presumably there are

23   none -- but it would order Mr. Shelton to have amounts

24   deposited by that following Monday.

25             MR. PUCCIO:  Judge, just so we're clear again,
```

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    because Mr. Silbermann was wandering into a discussion

2    about all these other lawyers represent trusts and

3    Mrs. Shelton and all of that.  I mean, they are not on

4    this telephone call and they have nothing to do with the

5    criminal case and I don't know what the arrangements were

6    there.

7              THE COURT:  We're talking about the law firms

8    that are mentioned in the motion.

9              MR. PUCCIO:  All right.  He was mentioning other

10   law firms that have nothing to do with this.

11             MR. SILBERMANN:  Mr. Schaeffer's firm has

12   appeared in those proceedings on behalf of Mr. Shelton.

13             MR. KAELIN:  Half the lawyers are on the phone.

14             THE COURT:  Let me just say -- the other thing I

15   wanted to address, part of the government's, in addition

16   to joining in the points raised -- let me just make one

17   other thing.

18             There's a third request, paragraph for relief in

19   Cendant's motion.  I don't expect to reach that, but if we

20   have funds required deposited, then I will.

21             Let me just address one other thing, which is

22   the additional part in the government's motion.

23             I think we have Paragraph 6 and 7 of the

24   government's motion and I believe that the applications,

25   Mr. Silbermann, did not comply with all the requirements

1    of the statute?

2            MR. SILBERMANN:  Yes, Your Honor.  I spoke with

3    your law clerk, Jenn Laraia, and I promise when I'm back

4    in the office to have any technical deficiencies cured.

5            THE COURT:  And it may be that with respect to

6    some of the writs, applications for writs, you can work

7    things out.

8            MR. SILBERMANN:  My understanding is there were

9    technical deficiencies.

10           THE COURT:  Yes.  The statute says certain

11   things have to appear and there's a list.

12           To the extent you can work out some of the

13   issues related to some of those applications, that would

14   be good and I'll leave it at that.

15           Okay?

16           MR. PUCCIO:  Judge, before we let you go, so I

17   don't sit here for the next hour trying to figure it out,

18   can you remind me who it was who said it was like a nit on

19   the tush of an elephant?

20           THE COURT:  Was there a witness named Aldrich?

21           MR. PUCCIO:  Exactly.

22           THE COURT:  I think it was Mr. Aldrich.

23           MR. PUCCIO:  That is definitely one I never

24   would have thought of.

25           MR. SCHAEFFER:  Your Honor, just one additional

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    issue.  This is Richard Schaeffer speaking.

2         My firm presently has a receivable from

3    Mr. Shelton of just something under $70,000.  He had

4    actually sent us a check, but it was at a time of the

5    writs of garnishment hit those various bank accounts,

6    including the one the check was written on, as well as

7    unbilled time in excess of $250,000.

8         We intend to file an application with Your Honor

9    seeking payment of our legal fees.  I thought it was

10   appropriate to raise that this morning with Your Honor so

11   that there would be no surprise with respect to it.

12        I also know that the Santos & Seeley firm is

13   owed some money as well.  I do not know how much, but I

14   intend to make that part of the application to Your Honor,

15   which will be filed over the next couple of weeks.

16        THE COURT:  I'll look at it when it comes in and

17   the responses come in.

18        MR. SCHAEFFER:  Thank you, Your Honor.

19        THE COURT:  Anything else?

20        MR. KAELIN:  Your Honor, Attorney Kaelin.  I

21   just wanted to, on behalf of Cendant, address two things

22   because I'm bothered by it.  And I just wanted people to

23   understand that the context in which this motion was filed

24   to begin with was when Cendant realized that it had paid,

25   as alleged in Mr. Carley's affidavit -- which is attached

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1   to the reply, Attorney Puccio -- almost $22 million to six

2   law firms over six years.  And then when we see and get

3   the chart of information from the government through the

4   context of aid of execution, that almost $15 million has

5   now gone out since that point in time, there was grave

6   concerns.  Mr. Carley put in detail in Paragraph 7 how

7   much you were paid and when he stopped paying.  They

8   brought to the Court's attention that they stopped paying.

9         MR. PUCCIO:  The only problem is with that --

10   just so the record is clear -- is that Carley got nine

11   months more bills for me and he knew that I was working

12   even beyond that for over another year.  So it's pretty

13   obvious that the $4 million that you mentioned five times

14   in the papers was expended.  But be that as it may --

15         MR. KAELIN:  It's an accounting.  Cendant is

16   getting capped as the bad guy when it's the victim.

17         THE COURT:  Mr. Puccio, let me say one thing.

18         As part of the Presentence Report investigation

19   procedure, Mr. Maxwell got a lot of information from

20   Mr. Shelton.  Not all of it was put into the Presentence

21   Report.

22         And just so you all know, I called Mr. Maxwell

23   in connection with this motion because the Presentence

24   Report refers to $2 million of prepaid legal expenses as

25   an asset, which the defendant objected to being described

```
1   as an asset, but there was a footnote there that said it
2   had been -- and the Presentence Report I believe was dated
3   June 2005 -- there was a footnote that said the amount had
4   been $1.9 million higher, reported as being $1.9 million
5   higher -- in other words, $3.9 million -- back in January
6   of 2005.
7             I asked Mr. Maxwell, because I looked through
8   the schedule of transfers of assets that Mr. Shelton made
9   as part of his financial statement and did not see
10  payments to the law firms that were listed in Exhibit A to
11  Cendant's motion.  That schedule is supposed to list
12  transfers in excess of $500.
13            So I asked Mr. Maxwell whether he was aware of
14  payments for legal expenses during the period 2001 to
15  2004.  In fact, Mr. Shelton had provided him with a chart
16  of estimated expenditures for the period 2001 to 2004
17  which did list substantial amounts for -- well, six
18  figures for the years 2001, 2002, 2003, and seven figures
19  for the year 2004.
20            That was not reflected in Mr. Shelton's schedule
21  that he did, but he didn't list any of the legal fees in
22  that, even the payment to Mr. Puccio, which did appear
23  elsewhere in the Presentence Report.
24            So I think everyone should understand there's a
25  lot of information floating around here.  It is hard to
```

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1    pin it down and figure out exactly, precisely what the

2    picture is.  And I would suggest that people work together

3    to try and do that.

4              MR. PUCCIO:  Your Honor, just one note of

5    clarification.  The sums between 2001 and 2004, I assume

6    you mean those are sums paid by Cendant to --

7              THE COURT:  No.  Those are sums paid by

8    Mr. Shelton, legal and professional fees, 2001 through

9    2004.

10             MR. PUCCIO:  Uh-huh.  And in the millions of

11   dollars?

12             THE COURT:  No, no.  I said six figures for 2001

13   through 2003, seven figures -- precisely, his estimate,

14   $7,000,000 plus in 2004, which amounts to the Milbank

15   Tweed payment.

16             MR. PUCCIO:  Exactly.  I know that he was

17   reporting information on this to Mr. Maxwell.  I don't

18   know all the details.

19             THE COURT:  But Mr. Maxwell had more information

20   than he could get into the Presentence Report.  He's

21   got -- when he went to pull his file, it's substantial,

22   like mine was.  At least -- well, I think we all worked on

23   this case almost full time for a couple of years.  It's a

24   lot of material and people need to keep that in mind.

25             MR. KAELIN:  Your Honor, Attorney Kaelin.

```
 1              One final point.  Again, I just need it on the
 2    record for my client.  Part of this was also the fact that
 3    when Cendant looks that they paid over $21,000,000 and
 4    then sees this additional $15,000,000 for $37,000,000 and
 5    change, coupled with Mr. Carley has to answer to his board
 6    and still has the May 7, 2004 letter by Attorney Schaeffer
 7    which says that Kirk -- it was one of exhibits to our
 8    reply -- has authorized me to represent to Cendant
 9    Corporation that he continues to possess and will maintain
10    acceptable assets sufficient to repay the monies advanced,
11    and then of course they are now told that can't happen,
12    and they see the chart we attached with how many millions
13    going out the door after the date of that letter, which is
14    an impetus for why we said let's get an accounting and see
15    where this money went.
16              So there is no bad faith here, but there's
17    legitimate concern with representations that he would have
18    the money to pay back Cendant, and what they see is
19    millions go out to lawyers and they don't really know why.
20    If it's spent, it's spent, but the accounting is
21    appropriate.
22              THE COURT:  Okay.  So I will hear from you all
23    by next Wednesday, 9:00 a.m.  I'll get your submissions
24    one way or the other and then I'll have an order that will
25    go out within a day or so after that.
```

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

1            Thank you very much.

2                 (Whereupon, a recess followed at 9:14 AM )

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

```
 1

 2

 3                    C E R T I F I C A T E

 4

 5

 6           UNITED STATES v. E. KIRK SHELTON

 7                    3:02CR264(AWT)

 8

 9

10           I, Corinna F. Thompson, RPR, Official Court

11   Reporter for the United States District Court for the

12   District of Connecticut, do hereby certify that the

13   foregoing pages are a true and accurate transcription of

14   my shorthand notes taken in the aforementioned matter to

15   the best of my skill and ability.

16

17

18

19
                          _____
20
                          CORINNA F. THOMPSON, RPR
21                        Official Court Reporter
                          450 Main Street, Room #225
22                        Hartford, Connecticut 06103
                              (860) 547-0580
23

24

25
```