# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :No. 3:02CR264(AWT)
                                :
            vs.                 :
                                :
E. KIRK SHELTON,                :
                                :HARTFORD, CONNECTICUT
            Defendant           :JANUARY 5, 2005
                                :
- - - - - - - - - - - - - - - - x


BOND HEARING



    BEFORE:

        HON. ALVIN W. THOMPSON, U.S.D.J.



                    Corinna Thompson, RPR
                    Official Court Reporter

Page 2

```
 1   APPEARANCES:
 2
 3      FOR THE GOVERNMENT:
 4         U.S. DEPARTMENT OF JUSTICE
              970 Broad Street, Suite 700
              Newark, New Jersey 07101
 5         BY:  JOHN J. CARNEY, SPECIAL ATTORNEY
              JAMES McMAHON,  SPECIAL ATTORNEY
 6            RICHARD J. SCHECHTER, SPECIAL ATTORNEY
 7
 8      FOR THE DEFENDANT, E. KIRK SHELTON:
 9         THOMAS P. PUCCIO, ESQ.
              230 Park Avenue
10            Suite 301
              New York, New York  10169
11
         MILBANK, TWEED, HADLEY & McCLOY, LLP
12            1 Chase Manhattan Plaza
              New York, New York 10005
13         BY:  SCOTT A. EDELMAN, ESQ.
14         DAY, BERRY & HOWARD
              CityPlace I
15            Hartford, Connecticut  06103
           BY:  GARY COLLINS, ESQ.
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1              10:49 AM
 2         THE COURT:  Good morning.  Please be seated.
 3      I think we're here to talk about some scheduling
 4   matters and to talk about conditions of release.
 5         Let me tell you how I'm approaching conditions
 6   of release.  I read a report on what the conditions in New
 7   Jersey were.  It appears the practice varies from district
 8   to district.  The way I'm approaching this is we're in the
 9   district of Connecticut, we're starting off with our
10   standard conditions and there has to be a reason to
11   deviate from them.
12         I've talked with the probation officers and one
13   of the things that makes this case different from my
14   normal cases is I normally have a case where the case
15   started here, the probation officers are familiar with the
16   defendant and they can tell me, We're comfortable without
17   having this condition or this condition in place.  I don't
18   have that level of comfort yet from talking with the
19   probation officers so there may be a couple of conditions
20   that I put in place until such time as the probation
21   officers tell me they've reached a comfort level from
22   getting to know the defendant than they normally do.
23         We have a standard order.  I understand that
24   counsel met with the probation officer this morning and
25   there are some areas that you all discussed.  Let me just
```

Page 4

```
 1   tell you where I am in my thinking and then you can
 2   address that.
 3         Our normal practice is that the defendant's
 4   travel is restricted to Connecticut.  If the defendant has
 5   counsel outside the district of Connecticut, we expand
 6   that to Connecticut and trips to meet with counsel, in
 7   this case I assume in New York, in New York City.  Other
 8   than that, there would be prior approval obtained from the
 9   probation office.
10         That's 4 C on our standard list.
11         4 E on our standard list is to report to the
12   probation office as directed.
13         4 G on our standard list is to submit to
14   psychological counseling.  I think there was a reference
15   to medication at one point.  I think we want to be sure
16   that if that's desirable, that that's being done.
17         4 I on our standard list is to refrain from
18   possessing a firearm, destructive device or other
19   dangerous weapons.  I think that's in place from New
20   Jersey.
21         J is to refrain from excessive use of alcohol or
22   any use or possession or use of a narcotic drug and other
23   controlled substances defined in 21 U.S.C. Section 802
24   unless prescribed by a licensed million practitioner.
25         K is to surrendering his passport.  I believe
```

Page 5

```
 1   that's been done, but I want to be clear that that remains
 2   in effect.
 3         I believe there's also a condition, which is L
 4   on our list, which is to obtain no passport or other
 5   travel document.  That's in effect.  That will remain in
 6   effect.
 7         M is to submit to electronic monitoring in
 8   accordance with the requirements set by the Pretrial
 9   Services officer, and in this case the defendant would be
10   responsible for paying for electronic monitoring.
11         This is a condition where once -- I've told the
12   probation officers, once they get to a sufficient comfort
13   level with the defendant, if they do, that it could be
14   eliminated, but for now it would be in place.
15         Then there's the question of bond.  I will tell
16   you that I never would have imposed the bond that was
17   imposed in this case.  It's a recognizance bond and the
18   amount to me seems low.
19         I'm going to require a surety bond and I'm going
20   to require for now at least that it be secured with two
21   properties, I believe, I talked about with the probation
22   officers.  What were the locations?
23         MS. CERULLO:  Your Honor, the one in
24   Connecticut, in Darien, Connecticut and Colorado.
25         THE COURT:  In Vail, Colorado.  So those forms
```

1  will have to be completed. And condition O is to execute
2  the papers necessary to secure the bond.
3        The other thing that we have to discuss here is
4  financial reporting. I understand that there was a
5  discussion about whether there should be some limitation
6  on transfers and there was a $5,000 figure.
7        What I think makes sense here is for the
8  probation officer and for me to get a better understanding
9  of the defendant's finances, what makes sense to me is
10  that Mr. Shelton complete the standard financial
11  statement, which I believe is a Form 48, within the next
12  week, and then we have a picture of things. And then I
13  think we can see what makes sense. I suspect
14  Mr. Shelton's finances are more complicated than most of
15  the defendants who are supervised by the Probation Office,
16  and rather than just sort of slap on some conditions that
17  create all sorts of complications needlessly, I think it's
18  helpful to get an understanding of what they are by
19  getting that standard financial statement prepared, and
20  then get a statement every 30 days thereafter. If we
21  become comfortable that we don't need it so frequently,
22  extend the 30 day period.
23        I suspect the government is concerned about
24  transfers of assets. I think we can handle that by simply
25  saying that between now and the time that I've had a

1  chance to review the standard financial statement and the
2  first 30-day financial statement, there will be a cap on
3  transfers of assets, and I would ask Mr. Shelton and his
4  counsel to propose a number to me.
5        Have any ideas? You want to consult with
6  Mr. Shelton? I mean, he knows what his monthly cash
7  outlays are. I don't want to restrict those.
8        (Pause)
9        MR. PUCCIO: You mean exclusively legal fees?
10        THE COURT: I hadn't -- I was thinking in the
11  aggregate, but I'm -- legal fees to his current counsel?
12        MR. PUCCIO: Yes.
13        THE COURT: I would be happy articulating it
14  that way.
15        (Pause)
16        MR. PUCCIO: Your Honor, could I suggest until
17  you have the opportunity to review, which would be within
18  the 30-day period, I'm assuming that, exclusive of legal
19  fees and costs, that Mr. Shelton be permitted to have the
20  ability to spend not more than $250,000. I think it would
21  be significantly less than that, but $250,000, considering
22  the circumstances, sounds to me to be reasonable for the
23  first 30 days. And if Your Honor thinks that somehow
24  should be different --
25        MR. CARNEY: Seems rather large, Your Honor.

1        THE COURT: For you.
2        MR. CARNEY: Or even for Mr. Corigliano. If we
3  go back and look at budgets that have been put in place,
4  that would be multiple, multiple times even what
5  Mr. Corigliano and Ms. Pember got as an allowance under
6  the SEC. And I think without having a little more meat on
7  the bones as to what this is going to--
8        THE COURT: What about $150,000?
9        MR. CARNEY: Better, Your Honor, I suppose. I
10  suppose for the first time the government would accept
11  $150,000.
12        THE COURT: So $150. If there's a need, simply
13  discuss it with the probation officer.
14        MR. CARNEY: Your Honor, I note that Mr. Puccio
15  said exclusive of legal fees.
16        THE COURT: Yes.
17        MR. CARNEY: The government is concerned about
18  having a situation where $29 million is transferred to
19  counsel next week. And I think that if money transfers,
20  Probation at a minimum should be notified as to the
21  transfer so the Court and then the government would have
22  an opportunity to -- if we're seeing some unusually
23  ridiculous amount of money which amounted to hiding money.
24  The government doesn't have to know, but I think Probation
25  has to know.

1        THE COURT: I generally don't get involved in
2  knowing what people pay for legal fees, but I'm assuming
3  that Mr. Shelton isn't going to bestow a windfall on any
4  of these people here.
5        MR. CARNEY: Could we place a limit on it at
6  half a million dollars for this one month period?
7        MR. PUCCIO: Your Honor, I would object. It
8  doesn't seem related to the issue that we're dealing with
9  here. It sounds more in the nature of some kind of
10  restraining kind of proceeding.
11        THE COURT: I don't really like -- I don't like
12  to place restrictions on people's abilities to pay their
13  attorneys. I really don't know what kind of situation
14  Mr. Shelton is in in terms of having to pay the attorneys.
15        MR. CARNEY: To be clear, Your Honor, the
16  government is not saying that you should restrict it, just
17  that it should be reported. What a counsel is paid is not
18  privileged.
19        THE COURT: Actually, it would be reported
20  during -- I believe the standard form does require. As I
21  remember looking at the standard form in the past, I've
22  seen on it amounts, transferred amounts, that says Legal
23  Fees.
24        MR. CARNEY: So in this 30 day period, this kind
25  of trial period, transfers to counsel would be reported to

Page 10

1  Probation?
2       THE COURT:  Well, no.  It would be reported
3  after the fact.
4       MR. CARNEY:  After the fact?
5       THE COURT:  Yes.  The report that follows -- the
6  report that covers the time period during which the
7  transfer is made would include a report of that transfer
8  and what the amount was.
9       MR. CARNEY:  And we get to see that, right, Your
10  Honor?  The government get to see that?
11       THE COURT:  I'm trying to remember.  In the
12  Presentence Report, the financial statements are included.
13  This has been such an extended period of time -- I believe
14  it would be covered, but I can't be certain.  Depends when
15  we hit that stage.
16       MR. PUCCIO:  We are unaware of a Presentence
17  Investigation in which the government gets reports.  If
18  it's provided for, obviously --
19       THE COURT:  The Presentence Report, the
20  government gets a copy.
21       MR. PUCCIO:  When that's done, but that's
22  somewhere down the road.
23       THE COURT:  Correct, correct.
24       MR. CARNEY:  Your Honor, it's been at least our
25  practice, I'm not sure what it is here in the district of

Page 11

1  Connecticut, things submitted to defense counsel to the
2  Probation Office, the government always had access to
3  that.
4       THE COURT:  You'll get whatever it is our
5  practice that the government gets here.  The Probation
6  Office knows better than I what they give.
7  Mr. Maxwell?
8       MR. MAXWELL:  Typically, the financial
9  statement, which would list any transfers of assets, would
10  be disclosed with the Presentence Report at first
11  disclosure, second disclosure, but not -- this, what's
12  being contemplated as an ongoing submission, those would
13  not be just generally released.
14       MR. CARNEY:  Your Honor, in this case where we
15  have a sentencing date of March 24, which I think all the
16  parties realize is probably not going to hold firm, if it
17  was to hold firm, that would seem reasonable.  But since
18  we are in a situation where it's likely to go past, I
19  think the government has the greater right and need to
20  know what's going on.  If it's going to be a six-month
21  period of time, that the government should know.
22       THE COURT:  Usually the probation officers
23  monitor what's going on.  If there's a concern, they
24  report it to me and I schedule a hearing.
25       MR. CARNEY:  Very good, Your Honor.

Page 12

1       Your Honor, the amount of the bond, the Court
2  will get to?
3       THE COURT:  We need to get evaluation of the
4  properties.  Do we have evaluation of the properties?
5       MR. CARNEY:  Mr. Schechter reminded me when
6  Mr. Shelton testified not that long ago he provided a
7  value.
8       MR. SCHECHTER:  Two to $3 million, $2 million on
9  the Connecticut home, could be worth as much as 3 million,
10  if I recall the testimony.  The Vail condo Mr. Shelton
11  placed a $1 million approximate value on that.
12  Collectively, the homes are worth three to $4 million, the
13  two homes.
14       MR. CARNEY:  Your Honor, as Your Honor will
15  recall, Mr. Shelton testified that his net worth was
16  approximately $30 million at trial.
17       THE COURT:  So I'll make it a $4 million bond.
18       MR. CARNEY:  That's fully secured.  What the
19  government would request is $30 million secured only by --
20  that's his net worth, Your Honor.  He's facing 151 to 181
21  months in prison under the Guidelines.  He faces the
22  prospect of losing all his assets, restitution, fines, the
23  company suing him, the SEC suing him.  I think that should
24  be in place.  Not having him put up any extra money, Your
25  Honor.

Page 13

1       THE COURT:  I understand what you're saying.
2  Let me just talk with the probation officers.
3       MR. CARNEY:  We would ask that it also be
4  cosigned by the wife, Your Honor.
5       (Pause)
6       THE COURT:  I think it would be most consistent
7  with our practices here to make the surety bond in the
8  amount of $20 million, have it cosigned by Mrs. Shelton
9  and have it secured by the two real properties that we've
10  discussed.
11       I think that finishes up the discussion of the
12  conditions.  Were you all consulting with about something?
13       MR. PUCCIO:  We just want to --
14       THE COURT:  Let me mention something to counsel
15  at the sidebar very quickly.
16       (Discussion at sidebar off the record.)
17       THE COURT:  The courtroom deputy will be working
18  on the language for the conditions along with the
19  probation officers.  And I think we're going to address
20  right now the request for the extension of time in which
21  to file.
22       MR. PUCCIO:  Right.  I would request 60 days to
23  file post-trial motions.
24       THE COURT:  I'll grant that motion, but what
25  I'll ask counsel to do is work out a timetable for

Page 14

1  everything that we'll be doing, the government's response
2  and how that ties into a date for sentencing and give me a
3  proposal in terms of a revised scheduling order. If you
4  can agree on it, give me a joint proposal; if not, set
5  forth your respective suggestion.
6      MR. PUCCIO: Your Honor, I would also just for
7  the record purposes, I believe that you reserved on
8  certain motions during the end of the government's case
9  and the entire case, and I'm assuming that those motions
10 have been denied at some point?
11     THE COURT: The defense motions?
12     MR. PUCCIO: Yes.
13     THE COURT: I reserved?
14     MR. PUCCIO: I'm going from recollection.
15     THE COURT: If I reserved, then they are denied.
16     MR. PUCCIO: If you did reserve, then they are
17 denied. I wanted to make sure the record was clear on
18 that.
19     THE COURT: Yes.
20     MR. PUCCIO: The one other only other point I
21 have, Your Honor, is I'm wondering whether considering one
22 of the properties that's being put up is Ms. Shelton's
23 property solely, and that's being put up on bond; whether
24 it's necessary to have her sign a $20 million bond? She's
25 not a party to this case.

Page 15

1      THE COURT: I understand she's not, but I think
2  it's appropriate at least for now.
3      Why don't I let you all work on the paperwork
4  and then if there are issues, let me know.
5      I don't expect that we'll have to reconvene.
6      MR. PUCCIO: No reason.
7      THE COURT: I'll have the papers done and I'll
8  sign them some time today.
9      MR. PUCCIO: Judge, one other thing I'd like to
10 put on the record before you leave. I'm not sure
11 Probation is aware of it, but Mr. Shelton does have a
12 relationship with somebody within the Bridgeport office
13 who he has been in communication with for a substantial
14 period of time who perhaps can be contacted to vouch for
15 the fact that he has been extremely attentive to whatever
16 obligations he has had.
17     THE COURT: The probation officers have been in
18 touch with -- her first name is Nicole?
19     MS. CERULLO: Nicole Owens, Your Honor.
20     THE COURT: Owens. They have been in touch with
21 Ms. Owens.
22     MR. PUCCIO: Thank you.
23     THE COURT: I don't know whether the supervision
24 which change or not. That's up to the Probation Office.
25     MS. CERULLO: The supervision will continue down

Page 16

1  at the Bridgeport office, Your Honor.
2      THE COURT: Anything else?
3      Thank you very much. We'll recess.
4      (Whereupon, a recess followed)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 17

1
2
3      C E R T I F I C A T E
4
5
6  UNITED STATES v. WALTER A FORBES & E. KIRK SHELTON
7           3:02CR264(AWT)
8
9
10     I Corinna F. Thompson, RPR, Official Court
11 Reporter for the United States District Court for the
12 District of Connecticut, do hereby certify that the
13 foregoing pages are a true and accurate transcription of
14 my shorthand notes taken in the aforementioned matter to
15 the best of my skill and ability.
16
17
18
19
          _____
20
          CORINNA F. THOMPSON, RPR
21        Official Court Reporter
          450 Main Street, Room #225
22        Hartford, Connecticut 06103
          (860) 547-0580
23
24
25